## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

| | |
|---|---|
| In re:<br><br>ROMAN CATHOLIC CHURCH OF THE DIOCESE OF GALLUP, a New Mexico corporation sole,<br><br>                    Debtor. | Chapter 11<br><br>Case No. 13-13676-t11 |

### MOTION FOR ENTRY OF AN ORDER DIRECTING JOINT ADMINISTRATION

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Roman Catholic Church of the Diocese of Gallup, a New Mexico corporation sole ("**RCCDG**") and Bishop of the Roman Catholic Church of the Diocese of Gallup, an Arizona corporation sole (the "**Arizona Entity**"), the debtors and debtors-in-possession (collectively, the "**Debtors**") in the reorganization cases at Case No. 13-13676-t11 and Case No. 13-13677-t11, respectively, (the "**Reorganization Cases**"), hereby file this Motion requesting that the Court enter an order directing joint administration of the Reorganization Cases. As discussed below, joint administration of the Reorganization Cases is appropriate because, among other things: (i) similar issues and common creditors exist in the Reorganization Cases; and (ii) joint administration of the Reorganization Cases will save considerable time and expense because it will, among other things, obviate the need for duplicative notices, applications, and orders.

This Motion is further supported by the following Memorandum of Points and Authorities, the "Declaration of Bishop James S. Wall in Support of Chapter 11 Petition and First Day Motions" (the "**Wall Declaration**") filed concurrently herewith, and the entire record before the Court in these Reorganization Cases.

RESPECTFULLY SUBMITTED this 12th day of November, 2013.

/s/ *Susan G. Boswell*
Susan G. Boswell (AZ Bar No. 004791)
Lori L. Winkelman (AZ Bar No. 021400)
Elizabeth S. Fella (AZ Bar No. 025236)
*Pro Hac Vices Pending*
QUARLES & BRADY LLP
One S. Church Ave., Suite 1700
Tucson, Arizona 85701
(520) 770-8700
Fax: (520) 623-2418
susan.boswell@quarles.com
lori.winkelman@quarles.com
elizabeth.fella@quarles.com

-and-

Thomas D. Walker
WALKER & ASSOCIATES, P.C.
500 Marquette N.W., Suite 650
Albuquerque, New Mexico 87102
(505) 766-9272
Fax: (505) 722-9287
twalker@walkerlawpc.com

*Proposed Counsel for Debtor*

## MEMORANDUM OF POINTS AND AUTHORITIES

**I. JURISDICTION.**

The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper under 28 U.S.C. §§ 1408 and 1409. The statutory basis for the relief requested herein is Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

**II. BACKGROUND.**

On November 12, 2013 (the "**Petition Date**"), RCCDG commenced this Reorganization Case by filing a voluntary Chapter 11 petition. RCCDG is a debtor-in-possession under 11 U.S.C. §§ 1107 and 1108. RCCDG filed the Reorganization Case in order to reorganize its financial affairs pursuant to a plan of reorganization that will, among other things, fairly, justly and equitably compensate those injured by sexual abuse at the hands of workers of the Catholic Church which have or might result in claims against RCCDG while allowing RCCDG to continue its ministry and mission and attempt to finally bring healing to those injured by abuse, to parishioners and to others affected by the past acts of sexual abuse committed by workers of the Catholic Church within the geographic area of the Diocese of Gallup ("**Diocese**").

**The Civil and Ecclesiastical Entities and Organization of the Entities.**

The Debtor in this Reorganization Case is RCCDG which is a New Mexico corporation sole,[1] formed under the laws of the State of New Mexico. The Debtor conducts its business/civil affairs under the laws of New Mexico and the United States and in accordance with the Code of

---

[1] New Mexico no longer has the corporation sole form of incorporation; however, an entity formed as a corporation sole at the time New Mexico provided for that form of incorporation was not required to re-incorporate as a non-profit corporation, but was allowed to continue its existence as a corporation sole which RCCDG has.

Canon Law ("**Canon Law**"), the ecclesiastical law of the Roman Catholic Church.[2] RCCDG acquires and holds property and conducts its civil affairs for the practice of the Roman Catholic religion in the geographic area that has been decreed as the Diocese. The Bishop of the Diocese has responsibility for the Roman Catholic faithful within the geographic territory of the Diocese and carries out his duties in accordance with Canon Law. The Bishop is also the sole member of RCCDG and the Arizona Entity.

According to Canon Law, a diocese is a geographic territory formed to serve the Catholic faithful and through which the mission and ministry of the Roman Catholic Church in the area designated as a diocese is carried out. A diocese is administered by a Bishop who is appointed to serve by the Pope. However, a diocese is not the only Roman Catholic ecclesiastical entity within its geographic territory. Every diocese is divided into distinct parts or parishes which are separate entities under both Canon Law and civil law. There are other Catholic entities, separate from a diocese and parishes that also operate within a diocese such as foundations or schools.[3] The relationship among RCCDG, the Diocese, the Parishes and various other entities within the geographic territory of the Diocese is described in greater detail in the Wall Declaration filed contemporaneously with this "<u>Motion For Entry Of An Order Directing Joint Administration</u>" (the "**Motion**").

The Diocese is the poorest diocese in the United States. There are no large metropolitan areas within the geographic area of the Diocese which includes significantly poor and

---

[2] Although there is another civil entity, the Arizona Entity, all of the civil business of the Diocese is conducted through RCCDG and the Arizona entity does not conduct any business. Moreover, as explained in more detail herein, the ecclesiastical diocese created in 1939 is the Diocese, the territory of which was decreed to include areas in both New Mexico and Arizona.

[3] A school can also be established, owned and operated by a parish or a diocese or can be a separate independent entity under Canon Law and civil law.

underdeveloped areas where there is high unemployment and low income. Approximately sixty percent (60%) of the geographic area served by the Diocese is on Native American reservations. In many of the counties located within the geographic area of the Diocese, approximately forty-three percent (43%) of the people live below the poverty level, and the unemployment rate is approximately forty percent (40%) on the Native American reservations. The Diocese is comprised of more Native Americans than any other diocese in the United States. There are seven distinct tribes within the Diocese: the Acoma, Laguna, Zuni (Pueblo Indians), Jicarilla Apache, White Mountain Apache, Hopi, and Navajo. The remainder of the population of the Diocese is divided among approximately thirty (30) nationalities, with the largest ethnic group being Hispanic.

RCCDG obtains its operating funds from a number of sources. It receives a small portion of the Sunday collections from the Parishes, it receives grants specifically restricted by the grantor for certain programs provided by the Diocese and it receives donations from donors, some of which are restricted for specific purposes as designated by the donor and others which are unrestricted and used by RCCDG to fund its operations and other needs.

There are fifty-four (54) Parishes and thirty-one (31) active Missions within the geographic area of the Diocese. Missions also serve areas within the Diocese. A mission is typically much smaller than a parish. In some cases, a mission may have been a parish at one time but because of a lack of parishioners or other reasons, is no longer a parish and has become a mission. Similarly, a mission may become a parish in the future depending on various circumstances, such as membership.

Notwithstanding the significant poverty and financial challenges of the parishioners and the Parishes, for the most part, Parishes receive sufficient donations and other funding to pay

their operating expenses.[4] However, all of the Parishes require outside support, such as through grants, to sustain their programs and physical plant.[5] In addition, RCCDG provides salary subsidies for priests who serve in twelve (12) of the Parishes of between $250.00 to $350.00 per month. Also, even Parishes that obtain sufficient donations to pay most of their operating expenses do not generate sufficient funds from donations or other sources to provide substantial support to the Diocese. One Parish, St. Anthony located in McNary, Arizona does not have sufficient funds from collections, donations or other sources, to pay its operating expenses; therefore, consistent with its mission and ministry, RCCDG provides direct administrative support and subsidizes some of the expenses of the St. Anthony Parish.

Not every Parish or Mission has a priest, so priests travel and minister among several Parishes or Missions. The services provided by the Diocese support and promote not only the Catholic religion for those within its territory but also support and promote essential services for all people within the geographic area of the Diocese, regardless of religious affiliation. In addition, consistent with its mission and ministry and its obligations under Canon Law, RCCDG provides administrative support for the priests, Parishes and Missions, including procuring and administering insurance programs and grants, providing support services for religious and other programs, recruitment and training of priests and similar services.

---

[4] The plate collections and donations from parishioners at these Parishes are not substantial and the Parishes operate very leanly.

[5] Grants that are provided from third parties for the benefit of the Parishes are restricted by the grantor for the Parishes (and not for RCCDG) but are administered by RCCDG.

6

## Operations of RCCDG, Gallup School and Retreat Center.

As part of its mission and ministry, the Diocese has various functions, divisions and programs, the civil affairs of which are administered by RCCDG, some of which are described below.[6]

Gallup Catholic Schools ("**Gallup School**") operates as a separate entity from RCCDG but is part of RCCDG for civil purposes and part of the Diocese for ecclesiastical purposes.[7] Prior to 2010, the Gallup School was a separate corporation organized under New Mexico law and operated as an independent entity. For a variety of reasons, it was determined that the Gallup School should be owned and operated by RCCDG and on August 4, 2010, the New Mexico Office of the Public Regulation Commission issued a certificate of dissolution for Gallup Catholic School, Inc. and the ownership and operation of the Gallup School became part of RCCDG.

Gallup School is pre-school through eighth (8th) grade and is dedicated to academic excellence integrating the doctrine and traditions of the Catholic Church. The school's mission is to nurture the spiritual, emotional, intellectual, cultural and physical development of its students. Gallup School is celebrating its centennial year this year. Similar to the Diocese, Gallup School provides a Catholic education to the community notwithstanding the financial challenges of its families. Historically, Gallup School has not been self-sustaining and depended upon RCCDG for additional financial support; however, Gallup School will break even this year.

---

[6] The following is not intended to be an exhaustive description of the activities of RCCDG.

[7] The real and personal property of Gallup School is owned by RCCDG, subject to any donor designated restrictions. There are other Catholic schools within the geographic area of the Diocese; however, these schools are either separate independent entities (not associated with a parish) or part of, owned and operated by a parish, and the real and personal property of those independent entities are owned by those entities (subject to any donor designated restrictions).

Sacred Heart Retreat Center ("**Retreat Center**"), located near Gallup, is owned by RCCDG and is part of the ministry of the Diocese. The Retreat Center is a place of hospitality, quiet prayerfulness and desert beauty and serves the spiritual needs of those who come through prayer, retreat, and spiritual and educational programs. The Retreat Center is an integral part of the ministry of the Diocese and is open to spiritual, educational, cultural, business and civic groups. The Retreat Center is located on fifteen (15) acres of rugged land, and there are four (4) small hogans, one (1) large hogan, a bedroom hall, conference rooms and a chapel on the grounds of the Retreat Center.

RCCDG also develops and administers various Diocese-wide programs and ministries such as the Office of Native American Ministry and the Office of Religious Education. The Office of Native American Ministry was established by Bishop Wall in 2012 to assess and meet the spiritual needs of the Native American members of the Diocese. The Office of Religious Education oversees and provides administrative support to all Directors of Religious Education throughout the Diocese and helps set standards for catechism requirements, religious classes and related activities. There are other programs and ministries that are offered and supported by RCCDG and the Diocese that serve the needs of people within the Diocese, a more complete description of which can be found on the Diocese website—www.dioceseofgallup.org.

**Additional Separate Entities That Support The Diocese's Mission.**

Among the other separate and independent entities that operate within the geographic territory of the Diocese are the Southwest Indian Foundation ("**SWIF**"), Catholic Peoples Foundation ("**CPF**") and Catholic Charities of Gallup, Inc. ("**Catholic Charities**"). SWIF is a New Mexico non-profit corporation that was incorporated in 1981. SWIF is governed by a board of directors of which the Bishop is an ex-officio member. SWIF assistance is strictly limited to

Native Americans, and its services include: school grants and individual tuition assistance, homes for battered women and children, home repair and wood stove installation, Christmas food baskets for needy families, alcohol counseling, and emergency assistance in the areas of food, clothing, heating fuel, and temporary shelter.

CPF is a New Mexico non-profit corporation that was incorporated in 1998. CPF administers programs and grants that assist in promoting the mission and ministry of the Catholic Church within the geographic area of the Diocese. CPF is governed by a board of directors of which the Bishop is an ex-officio member.

Catholic Charities is also a New Mexico non-profit corporation that was incorporated in 1974. Catholic Charities is governed by a board of directors, and the Bishop does not serve on its board in any capacity. Catholic Charities administers various programs within the area of the Diocese and provides assistance and service to everyone within the geographic area, in particular the poor and vulnerable.

SWIF, CPF and Catholic Charities are self-supporting and do not receive any financial support from RCCDG.

**The Sex Abuse Crisis and the Need for Reorganization.**

Over the last half of the twentieth century a tragedy that runs contrary to every teaching and tradition of the Roman Catholic Church has unfolded which affected the Diocese: priests and other workers in the Roman Catholic Church took advantage of their positions in the community and in their parishes, missions and schools and sexually abused children. In the Diocese, a small number of priests, primarily in the 1950's and 1960's, committed these crimes which have resulted in claims (and in some cases lawsuits) made by adults based upon acts that they assert occurred decades ago (in some cases more than fifty (50) years prior to bringing the claim or

lawsuit). There are currently thirteen (13) lawsuits filed which are pending in the Coconino County, Arizona Superior Court. In addition, RCCDG has been made aware of at least another eight (8) claims which have not yet resulted in lawsuits but which are being pressed against RCCDG. Most of these claims (both in and out of active litigation) pertain to periods in which RCCDG does not appear to have been insured. Therefore, not only has RCCDG been bearing the entire cost of defense of these claims, but any settlements had to be funded solely out of Diocesan assets. For any claims that pertain to abuse that occurred between October 1, 1965 and December 1, 1977, RCCDG was insured by The Home Insurance Company which was liquidated pursuant to state receivership proceedings in New Hampshire. As a result, the New Mexico Property and Casualty Insurance Guaranty Fund Association (the "**New Mexico Fund**") provides limited coverage for certain claims that occurred within the Home Insurance policy period. For claims arising after December 1, 1977 through the present, RCCDG is insured by Catholic Mutual Relief Society of America Insurance Company ("**Catholic Mutual**"). However, there are very few claims that have been asserted where the abuse occurred within the Catholic Mutual coverage period. RCCDG has not yet determined whether there may be some basis for broader coverage by Catholic Mutual but intends to do so. In addition, there may be other entities against whom RCCDG may have indemnity, contribution or other claims for the abuse acts that have resulted or may result in claims being asserted against RCCDG. Among other reasons for such claims, the priests who are responsible for the majority of the claims came from one or more dioceses or orders to minister in the Diocese. RCCDG is in the process of investigating the viability of such claims. As of the Petition Date, no other entity has acknowledged potential liability or offered to participate in a resolution of any of the abuse claims.

10
Case 13-13676-t11    Doc 9    Filed 11/12/13    Entered 11/12/13 20:48:43 Page 10 of 18

As previously stated, the Diocese is the poorest diocese in the United States. RCCDG is simply not able to continue to shoulder the cost of defending these claims or to respond to any judgment that will likely be entered on some of the pending lawsuits. Moreover, it is clear that the universe of claims has not yet been identified or asserted. Accordingly, RCCDG filed this Reorganization Case to help focus its efforts and limited financial resources to bring healing to those who were abused, parishioners and others affected by the past acts of sexual abuse committed by clergy and others associated with the Diocese or who ministered within the geographic area of the Diocese. It is through the Reorganization Case that the Diocese seeks to finally and comprehensively address the issues resulting from the abuse crisis that has caused great harm to those who have been abused, plunged an already financially-strapped Diocese into a severe financial crisis, and affected the Catholic Church's traditional ministries in the communities within the Diocese. RCCDG seeks to accomplish these goals by reorganizing its financial affairs pursuant to a plan of reorganization that will, among other things, fairly, justly, and equitably compensate those who were damaged because of sexual abuse by clergy, while allowing the Diocese to continue its ministry and mission, including providing counseling and other services to those who have been harmed and serving an underserved area and population with needed services.

## **Plan of Reorganization.**

It is the hope and desire of RCCDG and the Diocese that all constituencies can come together quickly and confirm a plan of reorganization for RCCDG. RCCDG will be challenged just to pay the costs of administration of the Reorganization Case and its normal operating expenses, without regard to funding a plan to compensate those who have been abused; therefore, RCCDG intends to make every effort to bring the Reorganization Case to as early a

conclusion as possible to minimize costs of administration. RCCDG will file a motion for the Court to set a bar date for claims as soon as feasible after the Petition Date. RCCDG also intends to request appointment of an unknown claims representative to represent the interests of claimants who will not have filed claims but for whom a statute of limitations may not yet have run as of the claims bar date or confirmation of a plan of reorganization. RCCDG does not believe that appointment of a minors' representative is necessary in this Reorganization Case because RCCDG is not aware of any abuse that occurred for which any such claimants may still be minors.

It is the desire and intent of RCCDG to work in a collaborative and cooperative manner with all constituencies, and it is in everyone's best interests to move the Reorganization Case expeditiously to conclusion with a minimal amount of litigation. Otherwise, estate assets will be consumed with costs of administration, including professional fees as opposed to being primarily used to compensate those who have been harmed. In that regard, RCCDG would not be opposed to commencing mediation very early in the Reorganization Case as a way to minimize professional fees and move the Reorganization Case to an early successful conclusion.

### III.     **RELIEF REQUESTED AND BASIS FOR RELIEF**.

By this Motion, the Debtors seek entry of an order directing joint administration of these Reorganization Cases for procedural purposes only. The Debtors request that the Court maintain one file and one docket for all of the jointly administered cases under Case No. 13-13676-t11 assigned to Roman Catholic Church of the Diocese of Gallup, a New Mexico corporation sole and that these Reorganization Cases be administered under a consolidated caption as suggested in **Exhibit "A"** attached hereto.

Bankruptcy Rule 1015(b) provides, in pertinent part, that "(i)f . . . two or more petitions are pending in the same court by or against . . . a debtor and an affiliate, the court may order a joint administration of the estates."  Accordingly, the Bankruptcy Code and Bankruptcy Rules authorize the Court to grant the relief requested herein.

As set forth above and in the Wall Declaration, the Debtors submit that the joint administration of these Reorganization Cases is in the best interests of the Debtors' estates, their creditors and all other parties in interest.  RCCDG is the entity under which the Diocese operates. The Arizona Entity has minimal business/civil affairs which are limited to holding certain real property of the Diocese.  Most, if not all of the daily operations of the Diocese are conducted under RCCDG.  In fact, because the Arizona Entity does not have any creditors, the Arizona Entity is using the same Master Mailing List as RCCDG.

Because joint administration of these cases will remove the need to prepare, replicate, file and serve duplicative notices, applications and orders, the Debtors and their estates will save substantial time and expense.  Further, joint administration will relieve the Court of entering duplicative orders and maintaining duplicative files and dockets.  The United States Trustee and other parties in interest will similarly benefit from joint administration of these Reorganization Cases by sparing them the time and effort of reviewing duplicative pleadings and papers.

Joint administration will not adversely affect creditors' rights because this Motion requests only the administrative consolidation of the estates.  This Motion does not seek substantive consolidation.  As such, each creditor may still file its claim against a particular estate.

13
Case 13-13676-t11    Doc 9    Filed 11/12/13    Entered 11/12/13 20:48:43 Page 13 of 18

## IV. NOTICE AND REQUEST FOR EX PARTE RELIEF.

No trustee, examiner or creditors' committee has been appointed in these Reorganization Cases. The Debtors have provided notice of this Motion by facsimile, electronic mail and/or overnight mail to all parties listed on the Certificate of Service attached hereto. The Debtors respectfully submit that no further notice of this Motion is required, and respectfully request that the Court grant the relief requested herein on an immediate, ex parte basis. In the event that a party with standing files any opposition to this Motion, then the Debtors respectfully request that the Court hear this Motion and such opposition at an emergency hearing, and grant the relief requested herein on an emergency basis so that the already cash-strapped Debtors can avoid the duplicative costs that will be incurred by maintaining two separate dockets and serving duplicative pleadings.

## V. CONCLUSION.

WHEREFORE, for the reasons set forth herein and in the Wall Declaration, the Debtors respectfully request that the Court enter an order:

A. Granting this Motion in its entirety

B. Requiring the Debtors to file a consolidated creditor matrix;

C. Administratively consolidating the Debtors' Reorganization Cases for procedural purposes and requiring maintenance of a single docket for both cases, which docket shall be the docket for Case No. 13-13676-t11;

D. Requiring use of a single form of consolidated caption for all future pleadings, papers and other documents filed in the Debtors' Reorganization Cases in the form attached hereto as Exhibit "A"; and

E. Granting such other and further relief as is just and proper.

RESPECTFULLY SUBMITTED this 12th day of November, 2013.

/s/ *Susan G. Boswell*
Susan G. Boswell (AZ Bar No. 004791)
Lori L. Winkelman (AZ Bar No. 021400)
Elizabeth S. Fella (AZ Bar No. 025236)
*Pro Hac Vices Pending*
QUARLES & BRADY LLP
One S. Church Ave., Suite 1700
Tucson, Arizona 85701
(520) 770-8700
Fax: (520) 623-2418
susan.boswell@quarles.com
lori.winkelman@quarles.com
elizabeth.fella@quarles.com

-and-

Thomas D. Walker
WALKER & ASSOCIATES, P.C.
500 Marquette N.W., Suite 650
Albuquerque, New Mexico 87102
(505) 766-9272
Fax: (505) 722-9287
twalker@walkerlawpc.com

*Proposed Counsel for Debtor*

# CERTIFICATE OF SERVICE

Pursuant to F.R.C.P. 5(b)(3), F.R.B.P. 9036 and NM LBR 9036-1(b), I hereby certify that service of the foregoing "Motion For Entry Of An Order Directing Joint Administration" was made on November 12, 2013 via e-mail, U.S. Mail or via the notice transmission facilities of the Bankruptcy Court's case management and electronic filing system on the following parties:

| | |
|---|---|
| U.S. Trustee<br>P.O. Box 608<br>Albuquerque, NM 87103<br>ustpregion20.aq.ecf@usdoj.gov | Thomas D. Walker<br>Walker & Associates, P.C.<br>500 Marquette N.W., Suite 650<br>Albuquerque, NM 87102<br>twalker@walkerlawpc.com<br>*Proposed Co-Counsel for Debtor and Debtor-in-Possession* |
| Robert E. Pastor<br>Montoya, Jimenez & Pastor, P.A.<br>3200 N. Central Ave., Suite 2550<br>Phoenix, AZ 85012<br>repastor@mjpattorneys.com<br>*Attorneys for Tort Claimants* | John Manly<br>Manly & Stewart<br>19100 Von Karman Ave., Suite 800<br>Irvine, CA 92612<br>jmanly@manlystewart.com<br>*Attorneys for Tort Claimants* |
| Richard T. Fass<br>Perdue & Kidd, LLP<br>510 Bering Dr., Suite 550<br>Houston, TX 77057<br>rfass@perdueandkidd.com<br>*Attorneys for Tort Claimants* | Pinnacle Bank of Colorado<br>P.O. Box 147<br>Fort Lupton, CO 80621<br>*Secured Creditor* |
| Ally Bank<br>P.O. Box 380902<br>Bloomington, MN 55438<br>*Secured Creditor* | List of 20 Largest Unsecured Creditors |

/s/ *Susan G. Boswell*
    Susan G. Boswell

# EXHIBIT "A"

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO**

| | |
|---|---|
| In re:<br><br>ROMAN CATHOLIC CHURCH OF THE DIOCESE OF GALLUP, a New Mexico corporation sole,<br><br>                          Debtor. | Chapter 11<br><br>Case No. 13-13676-t11<br><br>**Jointly Administered with:** |
| Jointly Administered with:<br><br>BISHOP OF THE ROMAN CATHOLIC CHURCH OF THE DIOCESE OF GALLUP, an Arizona corporation sole.<br><br>This pleading applies to:<br><br>☒     All Debtors.<br>☐     Specified Debtor. | Case No. 13-13677-t11 |

### [DOCUMENT TITLE]