UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:

ROMAN CATHOLIC CHURCH
OF THE DIOCESE OF GALLUP,                    Case no. 13-13676-t11

    Debtor.

Jointly administered with:

BISHOP OF THE ROMAN CATHOLIC
CHURCH OF THE DIOCESE OF GALLUP,             Case No. 13-13677-t11

    Debtor.

## MEMORANDUM OPINION

This matter came before the Court on the Official Committee of Unsecured Creditors' (the "UCC's") Motion for 2004 Examination of the Roman Catholic Diocese of Corpus Christi, doc. 216 (the "2004 Motion"). The UCC appeared through James Stang and John Manly, the Debtors appeared through Susan Boswell, and the Roman Catholic Diocese of Corpus Christi ("DCC") appeared through Jennie Behles. For the reasons set forth below, the Court will grant the 2004 Motion in part.

### I. FACTS

The Court finds the following facts:[1]

---

[1] In making these findings, the Court took judicial notice of the docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may, sua sponte, take judicial notice of its docket); *In re Mailman Steam Carpet Cleaning Corp.,* 196 F.3d 1, 8 (1st Cir.1999) (citing Fed.R.Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade,* 496 B.R. 520, 524 (Bankr. N.D. Ill. 2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket").

Debtor filed this case under Chapter 11 on November 11, 2014 (the "Petition Date").

The Debtor is the defendant in sexual abuse litigation related to eight claims of childhood sexual abuse perpetrated by Fr. Clement A. Hageman. The Debtor has admitted that there are credible allegations of sexual abuse by Fr. Hageman. Fr. Hageman was ordained in 1930 for the Diocese of Corpus Christi. He entered the Diocese of Gallup and served in various capacities in parishes and missions of the Diocese of Gallup from approximately 1940 until his death in 1975.

The UCC asserts the Debtor has causes of action against DCC arising from its nondisclosure of information regarding Fr. Hageman, including but not limited to claims for contribution, indemnity, negligent nondisclosure, negligent misrepresentation, and fraud.[2] For its part, the Debtor states it would use any funds recovered from DCC to help fund a plan of reorganization.

The UCC's proposed examination pursuant to Fed.R.Bankr.P. 2004 ("Rule 2004") seeks to discover DCC's financial resources to pay claims against it, i.e. ten years of financial statements and detailed information about potential insurance coverage.

---

[2] There is some precedent for asserting such claims. For example, the Diocese of New Ulm (Minnesota) is suing the Diocese of Clogher Ireland and the Servants of the Peraceletes for contribution and indemnity, based on similar theories. *See* Answer of Diocese of New Ulm to Amended Complaint and Third- Party Complaint filed in a Minnesota state court action entitled *John Doe 103 v. Diocese of New Ulm*, Case No. 08-CV-13-498 (attached hereto as Exhibit B). In addition, the Diocese of Fairbanks in *In re Catholic Bishop of Northern Alaska* (Bankr. D. Alaska, Case no. 08-00110-DMD), asserted contribution and indemnity claims against the Society of Jesus, Oregon Province, which provided the Diocese most of its priests and bishops, and stated that it might have claims against the Brothers of St. Francis, the Sisters of Saint Ann and certain orders of religious women. The Court does not know whether there is merit in the Debtor's claims against DCC or the other asserted claims mentioned above.

The proposed examination also seeks financial and insurance information about six allegedly affiliated entities: Catholic Charities and Mother Teresa Shelter; Diocese of Corpus Christi Deposit & Loan Fund, Inc.; Diocesan Telecommunications, Inc.; Diocese of Corpus Christi Perpetual Benefit Endowment Fund, Inc.; and Villa Maria of Corpus Christi, Inc. (together, the "Alleged Affiliates").

## II. DISCUSSION

A. <u>Purpose of Rule 2004 Exam</u>. The primary purpose of an examination under Rule 2004 is to ascertain the extent and location of the estate's assets. *In re Hammond,* 140 B.R. 197, 201 (S.D. Ohio 1992). The examiner must establish good cause for taking the exam. *Id. See also In re Drexall Burnham Lambert Grp.,* 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991).

B. <u>Scope of Rule 2004 Exam</u>. The scope of a Rule 2004 examination can be broad. *See In re Handy Andy Home Improvement Centers, Inc.*, 199 B.R. 376, 378 (Bankr. N.D. Ill. 1996) ("The scope of inquiry under Bankruptcy Rule 2004 is very broad. Great latitude of inquiry is ordinarily permitted. Where there is a showing that the purpose of the examination is to enable a party to probe into matters which may lead to the discovery of assets by examining not only the debtor, but also other witnesses, such inquiry is allowed"); *Hammond,* 140 B.R. at 201, citing *In re GHR Energy Corp.*, 33 B.R. 451, 453 (Bankr. D. Mass. 1983) ("The scope of a Rule 2004 examination is broad. Indeed, some have compared it to a 'fishing expedition.'"); *In re French*, 145 B.R. 991, 992 (Bankr. D.S.D. 1992) ("Bankruptcy Rule 2004 is designed to be a quick 'fishing expedition' into general matters and issues regarding the administration of the bankruptcy case . . . .").

There are limits, however. An examination of a witness as to matters having no relationship to the debtor's affairs or no effect on the administration of his estate is improper. *In*

*re Wilcher,* 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985); *In re Johns Manville Corp.,* 42 B.R. 362, 364 (S.D.N.Y. 1984). Rule 2004 examinations "cannot stray into matters which are not relevant to the basic inquiry." *In re Mittco, Inc.,* 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984). A proposed examination may be denied if the purpose is abuse or harassment. *Hammond*, 140 B.R. at 201, citing *Mittco*, 44 B.R. at 36.

        C.        <u>Rule 2004 is a Pre-litigation Device</u>. Rule 2004 is used as a "pre-litigation device to determine whether there are grounds to bring an action to determine a debtor's right to discharge a particular debt." *In re Corso,* 328 B.R. 375, 383 (E.D.N.Y 2005); *In re Bennett Funding Grp., Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996). *See also In re Brooke Corp*., 2013 WL 3948866, *2 (Bankr. D. Kan. 2013) ("Rule 2004 is properly used by a trustee to reveal the nature and extent of the estate, and as a pre-litigation device to determine if there are grounds to bring an action.") *In re Recoton Corp.*, 307 B.R. 751, 756 (Bankr. N.D.N.Y. 2004) ("The Rule 2004 discovery sought by the Committee is thus *prima facie* consistent with the Rule's … purposes of allowing the Committee to obtain information necessary to determine whether claims beneficial to the estate exist and whether to pursue such claims.")

The UCC is not required to show it would likely prevail in a suit against DCC as a condition to taking discovery under Rule 2004. *See In re Symington,* 209 B.R. 678, 684 (Bankr. D. Md. 1997) (stating that because Rule 2004 examinations are taken pre-litigation they need not be tied to specific factual allegations, and are subject to fewer objections on grounds of relevance).

        D.        <u>Pending Litigation Rule</u>. If an adversary proceeding or contested matter is pending, the discovery rules in the rules of civil procedure should be used, rather than Rule 2004 examinations. *In re Blinder, Robinson & Co.,* 127 B.R. 267, 274 (D. Colo. 1991), citing *In re*

*Valley Forge Plaza Assocs.,* 109 B.R. 669, 674-75 (Bankr. E.D. Pa. 1990). *Cf. In re Sun Med. Mgmt., Inc.,* 104 B.R. 522, 524 (Bankr. M.D. Ga. 1989). *See also In re Wash. Mut., Inc.*, 408 B.R. 45, 53 (Bankr. D. Del. 2009) ("The 'pending proceeding' rule is predicated on there actually being a pending action involving the two parties."); *Brooke Corp.*, 2013 WL 3948866, at *3 ("Where a party requests a Rule 2004 examination and an adversary proceeding or other litigation in another forum is pending between the parties, the relevant inquiry is whether the Rule 2004 examinations will lead to the discovery of evidence related to the pending proceeding or whether the requested examination seeks to discover evidence unrelated to the pending proceeding."). *See generally Wash. Mut.*, 408 B.R. at 51 ("The primary concern of courts is the use of Rule 2004 examinations to circumvent the safeguards and protections of the Federal Rules of Civil Procedure [citation omitted]. Yet aggressive application of the 'pending proceeding' rule may prevent legitimate Rule 2004 examinations on matters wholly unrelated to the pending proceeding, thereby interfering with the trustee's fiduciary duty to maximize estate assets.")

  E. <u>Discovery of Financial Condition</u>. In general, normal civil procedure discovery regarding a defendant's financial condition is not permitted before entry of judgment. *See, e.g., Sierrapine v. Refiner Products Mfg., Inc.,* 275 F.R.D. 604, 609 (E.D. Cal. 2011) (collecting cases); *Sanderson v. Winner*, 507 F.2d 477, 279 (10th Cir. 1974) ("Ordinarily courts do not inquire into the financial responsibility of litigants. We generally eschew the question [of] whether litigants are rich or poor. Instead, we address ourselves to the merits of the litigation."). The rationale is that the defendant's financial condition is not relevant to the parties' claims nor reasonably calculated to lead to the discovery of admissible evidence. *Sierrapine*, 275 F.R.D. at 609. *See generally* Fed.R.Civ.P. 26(b)(1).

The rule is less clear under Rule 2004. The collectability of an estate claim against a third party appears to be a matter "relevant to the case or to the formulation of a plan." Rule 2004(b). It seems especially relevant to the "formulation of a plan" where, as here, the Debtor proposes to use any claim proceeds to fund the plan. Rule 2004 is intended to be broad, and is read broadly rather than narrowly, so the Court concludes that discovery of the financial condition of a party against whom the estate may hold a claim is within the scope of a Rule 2004 examination in proper circumstances. There is nothing in the language of Rule 2004 or the case law construing the rule that indicates otherwise.

F.  **Information About the Alleged Affiliates**. Likewise, the UCC's request that DCC provide information relating to the financial condition of the Alleged Affiliates appears to be within the broad scope of Rule 2004, because it arguably is relevant to the collectability of any estate claims against the Alleged Affiliates, and thus to "the formulation of a plan."

G.  **Court-Imposed Limits on Discovery**. Rule 2004 by its terms gives the Court discretion to limit examination as justice requires. Rule 2004(a) provides that "On motion of any party in interest, the court *may* order the examination of any entity." (emphasis added). Subsection (b) provides in pertinent part:

> The examination of an entity under this rule or of the debtor under § 343 of the Code *may* relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. In a . . . . a reorganization case under chapter 11 of the Code . . . the examination *may* also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan.

(emphasis added). Courts have used this permissive, conditional language to restrict discovery that appears unduly intrusive or burdensome. *See, e.g., In re Drexell Burnham Lambert Grp.,*

-6-
Case 13-13676-t11    Doc 259    Filed 07/08/14    Entered 07/08/14 11:59:47 Page 6 of 9

*Inc.,* 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) (although Rule 2004 examination can be compared to a fishing expedition, "the net, in the discretion of the Court, can be carefully stitched to limit its catch"). Courts may "limit, condition or even forbid the use of Rule 2004" where it is used to "abuse or harass[]. . . ." *Martin v. Schaap Moving Sys., Inc.,* 152 F.3d 919, at *3 (2d Cir. 1998) (unpublished), quoting *In re Mittco, Inc.,* 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984). *See generally In re Georgetown of Kettering,* 17 B.R. 73, 75 (Bankr. S.D. Ohio 1981) (referring to the predecessors of Rule 2004, the court stated: "Obviously, the breadth of the language employed in the Rules is so all encompassing as semantically to include and encourage harassment on every human subject. Nevertheless, abuse of propriety and the judicial process certainly was never contemplated.").

H.  Discussion. Like the court in *Drexell Burnham,* this Court believes that the UCC's Rule 2004 examination request needs to be tailored. First, although it is arguably within the scope of Rule 2004 to discover information of the Alleged Affiliates in the possession of the DCC, the Court thinks it is better practice for the UCC to file Rule 2004 exam motions for each Alleged Affiliate. There is no evidence before the Court that DCC is the alter ego of any or all of the Alleged Affiliates, and now is not the time to delve into that issue. The Court will deny, without prejudice, the Rule 2004 Motion to the extent it seeks discovery about any of the Alleged Affiliates through DCC.

Second, even though it appears that the scope of Rule 2004 is broad enough to encompass discovery of DCC's financial information, the Court is reluctant to open those particular flood gates as wide as the UCC would like under these facts. Rather, the Court believes it reasonable to limit the requests to (i) the financial information allegedly on the DCC's website; and (ii) information about insurance that may cover the estate's potential claims against DCC. The latter

information seems reasonable to discover now because Fed.R.Civ.P. 26(a)(1)(A)(iv)[3] requires disclosure of insurance information.

The Court exercises its discretion in this manner in order to mediate between two reasonable but opposing interests: efficient administration of the bankruptcy estate, on the one hand, and protecting the legitimate confidentiality rights of third parties, on the other hand. The Court believes that this ruling is a reasonable middle ground given the facts of the case.

The Court's ruling is not based on the burdensomeness of the requests. If the target of Rule 2004 discovery believes the request is unduly burdensome, it has the burden of showing that the burden is in fact undue. *See, e.g., Jobin v. Resolution Trust Corp.,* 156 B.R. 834, 838 (D. Colo. 1993) ("the Bank has not indicated that its records would be too voluminous to search or that any other specific problem complicates its disclosure."); *In re Vantage Petroleum Corp.*, 34 B.R. 650, 652 (Bankr. E.D.N.Y. 1983) (motion to quash denied where, among other factors, movants have not shown that such production would be oppressive or burdensome).

### III. CONCLUSION

The Rule 2004 Motion will be granted in part. The order will limit discovery to DCC, not to the Alleged Affiliates, and will limit discovery of DCC's financial condition to the financial information on DCC's web site and information about insurance coverage for claims against DCC.

---

[3] (a) Required Disclosures.
   (1) *Initial Disclosure.*
     (A) *In General.* Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:
. . .
       (iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

The UCC should prepare a form of order granting the Rule 2004 Motion in part, in accordance with the foregoing, and ask counsel for the DCC to approve the order as to form. In the event of any dispute, the Court will hear the matter on short notice.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: July 8, 2014.

Copies to:

Susan G. Boswell
Quarles & Brady LLP
One S. Church Ave., Suite 1700
Tucson, Arizona 85701

Thomas D. Walker
Walker & Associates, P.C.
500 Marquette N.W., Suite 650
Albuquerque, NM 87102

U.S. Trustee
P.O. Box 608
Albuquerque, NM 87103

James I. Stang
Pachulski Stang Ziehl & Jones
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067

Jennie Behles
Behles Law Firm, P.C.
P.O. Box 7070
Albuquerque, NM 87194

-9-
Case 13-13676-t11    Doc 259    Filed 07/08/14    Entered 07/08/14 11:59:47 Page 9 of 9