| | |
|---|---|
| In re:<br><br>ROMAN CATHOLIC CHURCH OF THE DIOCESE OF GALLUP, a New Mexico corporation sole,<br><br>       Debtor.<br><br>Jointly Administered with:<br><br>BISHOP OF THE ROMAN CATHOLIC CHURCH OF THE DIOCESE OF GALLUP, an Arizona corporation sole.<br><br>This pleading applies to:<br><br> ☒ All Debtors.<br> ☐ Specified Debtor. | Chapter 11<br><br>Case No. 13-13676-t11<br><br>**Jointly Administered with:**<br><br>Case No. 13-13677-t11 |

## MOTION TO (I) RETAIN BROKERS; (II) SELL PROPERTY UNDER 11 U.S.C. § 363(b), (f), AND (m); AND (III) APPROVE SALE PROCEDURES

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The Roman Catholic Church of the Diocese of Gallup, a New Mexico corporation sole ("**RCCDG**"), and the Bishop of the Roman Catholic Church of the Diocese of Gallup, an Arizona corporation sole (the "**Arizona Entity**"), the debtors and debtors-in possession (collectively the "**Debtors**") in the above-captioned jointly administered cases (the "**Reorganization Cases**"), by and through their attorneys undersigned, hereby move under 11 U.S.C. §§ 105, 327, 328, 363, and 1109, Fed. R. Bankr. P. 2014(a) and 6004, and NM LBR 6004-1 for an order of this Court approving the Debtors' retention of a broker to sell certain real property pursuant to 11 U.S.C. § 363(b), and approving auction and sale procedures as described more fully herein. The Debtors propose to sell certain real property at an "open outcry" auction sale, or, in certain select cases, a sealed bid auction, to be conducted by Tucson Realty & Trust

Co. ("**TRT**") and its Accelerated Marketing Group (individually "**AMG**" and with TRT, the "**Brokers**"). Immediately after the auction, the Debtors will file a report of the results and request that the Court enter an order approving the sale pursuant to 11 U.S.C. § 363 and grant the protections of 11 U.S.C. § 363(m) to the buyers if requested. The Debtors intend to use the proceeds from the sale to fund payments to the plan of reorganization they will propose (the "**Plan**"), including payment of administrative expenses and other amounts under the Plan.

This Motion is supported by: (i) the following Memorandum of Points and Authorities; (ii) the exhibits to this Motion; (iii) the "Declaration of Bishop James S. Wall in Support of Chapter 11 Petition and First Day Motions" (the "**Wall Declaration**") [Dkt. No. 19], which was filed with the Court on November 12, 2013; (iv) the "Verified Statement and Declaration of Todd Good" (the "**Good Statement**") attached hereto as **Exhibit "1"**; (v) the "Verified Statement and Declaration of Hank Amos" (the "**Amos Statement**," and together with the Good Statement, the "**Verified Statements**") attached hereto as **Exhibit "2"**; and (vi) the entire record before the Court in these Reorganization Cases. This Motion presents a "core proceeding" over which the Court has jurisdiction to enter a final order under 28 U.S.C. §§ 157(b)(2) (A), (N), and (O), and 1334.

RESPECTFULLY SUBMITTED this 18th day of May, 2015.

/s/ *Elizabeth S. Fella*
Susan G. Boswell (AZ Bar No. 004791)
Lori L. Winkelman (AZ Bar No. 021400)
Elizabeth S. Fella (AZ Bar No. 025236)
*Admitted Pro Hac Vice*
QUARLES & BRADY LLP
One S. Church Ave., Suite 1700
Tucson, Arizona 85701
(520) 770-8700
susan.boswell@quarles.com
lori.winkelman@quarles.com
elizabeth.fella@quarles.com

-and-

Thomas D. Walker
WALKER & ASSOCIATES, P.C.
500 Marquette N.W., Suite 650
Albuquerque, New Mexico 87102
(505) 766-9272
twalker@walkerlawpc.com

*Counsel for the Debtors*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. FACTUAL BACKGROUND.

On November 12, 2013 (the "**Petition Date**"), the Debtors commenced these Reorganization Cases by filing voluntary Chapter 11 petitions. The Debtors have remained debtors-in-possession under 11 U.S.C. §§ 1107 and 1108 since the Petition Date. The Debtors filed the Reorganization Cases in order to reorganize their financial affairs pursuant to a plan of reorganization that will, among other things, fairly, justly and equitably compensate the victims of sexual abuse by clergy or others associated with the Debtors while allowing the Debtors to continue their ministry and mission and attempt to finally bring healing to victims, parishioners and others affected by the past acts of sexual abuse committed by clergy and others.

## II. BACKGROUND.

The organization and background of the Debtors, and the relationship among them, the Diocese, the Parishes and various other entities within the geographic territory of the Diocese is described in the Wall Declaration, which is herein incorporated by this reference. Therefore, that history will not be fully repeated here.

Certain parties will be engaging in a court-ordered mediation on June 10 and 11, and the Debtors are hopeful that the mediation will result in a consensual plan. Regardless, however, the Debtors have properties which should be liquidated in order to fund the Plan and for payment of administrative expenses.

The Debtors intend to sell certain real property, more particularly described in the attached **Exhibit "3"**, (the "**Sale Assets**") owned by one or the other of the Debtors: (i) in fee

simple; (ii) for which the pertinent Debtor has both legal and equitable title;[1] and (iii) which neither Debtor is holding in trust for any other Person. The auction disposition of the Sale Assets is without prejudice to the Debtors' position that certain of their assets are integral and necessary to the continued mission and ministry of the Diocese.

In addition, the Debtors, in consultation with the Brokers and the Official Committee of Unsecured Creditors (the "**Committee**") reserve the right to add or delete properties from the list of Sale Assets as the marketing and sale process proceeds. The deletion of properties from the list of Sale Assets over the Committee's objection is subject to Bankruptcy Court approval.

The Debtors have worked extensively with the Committee with respect to the sale of the properties. The Committee has been consulted both with respect to the proposed sale process as well as the list of Sale Assets. As a result, the Committee supports the relief requested in this Motion.

The Sale Assets are real property, and are, for the most part, excess real property not otherwise currently utilized for Diocesan purposes. The Sale Assets consist mostly of unimproved, vacant land in rural areas. The Debtors are not aware of any formal valuations that have been conducted on the Sale Assets.

### III. APPLICATION TO EMPLOY.

Under 11 U.S.C. §§ 327 and 328, with this Court's approval, a disinterested professional may be employed in chapter 11 reorganization cases on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on

---

[1] The Debtors are aware that the Committee disputes certain of the Debtors' assertions regarding property ownership, entity separation, and other issues; however, the Debtors are not seeking any adjudication on those issues at this time. Instead, this Motion is without prejudice to the rights of the parties to argue their respective positions on such issues.

5

a contingent fee basis. *See* 11 U.S.C. §§ 327 and 328. After interviewing various potential brokers and conferring with the Committee, the Debtors respectfully request the Court to appoint TRT and AMG (related entities that work together) on the terms and conditions set forth herein.

As evidenced by the statements in this Application and the Verified Statements, TRT and AMG have previous experience serving as a real estate broker in diocesan reorganization cases, and have appropriate experience and knowledge to perform the duties of the broker in the Reorganization Cases. TRT and AMG were appointed by the Bankruptcy Court for the District of Arizona as the brokers for the Roman Catholic Church of the Diocese of Tucson in Case No. 04-bk-04721-JMM. TRT and AMG also have extensive experience as brokers of real property and in conducting auctions of the type proposed in this case. Consequently, the Debtors wish to have this Court appoint TRT and AMG to market and sell the Sale Assets using the process described further herein.

Subject to the approval of the Bankruptcy Court, as set forth in the Verified Statements, the Debtors, TRT and AMG have agreed that TRT and AMG will be compensated for actual marketing costs relating to the Sale in the total amount of $45,000, and that a commission of 10% of the purchase price of each property (which shall be paid as a buyer's premium, as explained below), will serve as compensation for the services of TRT and AMG.

The services to be provided by TRT and AMG will not unnecessarily duplicate or overlap the efforts of any other professionals retained by the Debtors. The services to be provided by TRT and AMG are separate and different from the services to be provided by the other professionals and each is essential to the Debtors' reorganization efforts. Debtors do not currently owe TRT and AMG any funds.

6

TRT and AMG worked with Debtors' counsel in the reorganization case of the Roman Catholic Church of the Diocese of Tucson.  Except as may be further disclosed in the Verified Statements, and to the best of the Debtors' knowledge, information, and belief, TRT and AMG do not have any other connections with the Debtors in the Reorganization Cases, the creditors of the Debtors' estates and any other parties-in-interest or their respective attorneys and accountants, the United States Trustee or any person employed by the Office of the United States Trustee.  To the best of the Debtors' understanding, the information disclosed in the Verified Statements does not preclude TRT and AMG from being appointed as the Brokers for the Debtors, under applicable law and ethical rules.

Except as otherwise disclosed in the Verified Statements and in accordance with 11 U.S.C. §§ 101(14), 327, and 328, TRT and AMG are "disinterested"; TRT and AMG are not employed by any entity in the Reorganization Cases that has any adverse interest to the Debtors; TRT and AMG do not hold an adverse interest to the Debtors in the Reorganization Cases, and TRT and AMG will not be employed by any other entity that may have an adverse interest to the Debtors or their estates during the course of their employment by the Debtors.  As stated in the Verified Statements, to the extent that any new relevant facts or relationships bearing on the matters described herein during the period of TRT and AMG's retention are discovered or arise, TRT and AMG will use reasonable efforts to file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

The Debtors respectfully request immediate consideration of this Application so that the Debtors can proceed with the auction proposed below.

## IV. PROPOSED AUCTION PROCEDURES.

The proposed auction procedures are set forth at length in **Exhibit "4"** to this Motion, and are summarized below:

    A. **Overview of Auction.**

        1. **Brokers:** TRT and AMG

        2. **Broker's Fee Structure:** 10% of the gross sale price.

        3. **Buyer's Premium:** A buyer's premium equal to 10% of the gross sale price will be paid by buyer to cover the Broker's Fee.[2]

        4. **Cooperating Broker Commission:** Any cooperating third party broker will be paid 2.5% from the Broker's Fee and will not be paid by the Debtors.

        5. **Financing:** All cash, no contingency.

        6. **Type of Sale:** Open outcry and sealed bid auctions.

        7. **APA:** A form of purchase agreement that each purchaser will be required to execute will be provided to the Committee in advance. The APA will be for a sale "as is where is" without any representations or warranties except as to ownership. The APA will further provide that the sale will be free and clear of all liens, claims, interests and encumbrances pursuant to an order of the Bankruptcy Court confirming the sale to a particular buyer after the auction.

    B. **Auction Procedures.**

The Debtors intend to conduct an "open outcry" and "absolute and without reserve" auction for some of the Sale Assets.[3] An "open outcry" auction is one with live bidding. There

---

[2] The Debtors will verify that the Broker will retain the commission prior to paying over the sale proceeds to the Debtors.

are various types of such auctions. "Absolute and without reserve" means that there is no reserve or minimum bid, and that the property is sold to the highest bidder regardless of price. Having an absolute auction without reserve is a significant draw for bidders, because they can justify their time and efforts to inspect, bid and buy knowing there is not a question the property will be sold. The Debtors will work with the Committee and the Brokers to determine if there are particular assets for which a reserve price should be set. Otherwise, the Brokers recommend that the Sale Assets should be sold on an "absolute and without reserve" basis.

Some of the Sale Assets, because of unique issues related to those properties, may be better sold in a "sealed bid" program. In this procedure, sealed bids will be submitted and the Debtors will recommend to the Court the bid to be accepted. The Debtors will consult the Committee and the Brokers to determine which properties should be sold in this format.

Regardless of the type of auction, buyers will be required to conduct any due diligence prior to the sale and any potential bidders' questions will be answered *before* the bidding starts. Some of the basic due diligence will be prepared by the Brokers and provided prior to sale.

The Debtors anticipate that the auction will take most of one day. Because of the anticipated length of the auction, the number of properties to be sold, the diverse geographic locations of properties in two states, and the number of anticipated bidders, the Debtors propose to conduct the auction somewhere other than the Court. In addition, the Debtors will consult with the Brokers as to the exact location of the proposed auction and whether it is advisable to separate the properties by state. The Court can attend the auction and participate in the conduct of the auction if the Court deems that necessary or desirable.

---

[3] In consultation with the Broker and the Committee, the Debtors may determine that a reserve price is necessary.

9

The property will be sold pursuant to 11 U.S.C. § 363(f), free and clear of all liens, claims, interests and encumbrances. However, the Debtors are not aware of any liens, claims, interests or encumbrances on any of the Sale Assets, other than relatively minimal property tax claims or liens that are disclosed on the Debtors' Schedules or in filed Proofs of Claim, which, if undisputed, would be paid from the sale proceeds.

The Debtors anticipate that the auction will occur on a date to be publicized that is approximately sixty to ninety (60-90) days after Court approval of this Motion (the "**Auction Date**").

Within three (3) days (or, if the deadline falls on a weekend or holiday, the first business day following expiration of the three-day period) after the auction has been conducted and the bids awarded, the Debtors will file the results with the Court pursuant to Fed. R. Bankr. P. 6004(f), with a request to confirm the sales free and clear of all liens, claims, interests and encumbrances and if requested, enter an Order finding that each successful bidder is a good faith purchaser entitled to the protections of 11 U.S.C. § 363(m).

### C. The Marketing Program.

Due to the open outcry format, the properties will be heavily marketed for approximately six (6) weeks prior to the event. TRT (through AMG) will be responsible for marketing the property according to the process described below, which is set forth in further detail in Exhibit "4."

The auction will be marketed using all appropriate print, broadcast, consumer, business and trade news media via a program of press releases, informational background kits, interviews, personal follow up, writing and placing option-editorial columns, editorial board visits, and paid distribution services to deliver. The program is to be local and regional in scope, concentrating

10

QB\35083487.1

Case 13-13676-t11    Doc 383    Filed 05/18/15    Entered 05/18/15 11:16:31 Page 10 of 19

on the most influential media in Tucson, Phoenix, and Flagstaff, Arizona, as well as other locations within Arizona that are determined to be appropriate for marketing purposes, and Albuquerque and Santa Fe, New Mexico, as well as other locations within New Mexico that are determined to be appropriate for marketing purposes including regional radio advertising. The advertising campaign will be heavily weighted on the first three (3) weeks, and will end three (3) days prior to the Auction Date. In addition to advertising, there will be a direct and electronic mailing of promotional information to different buyer types, including developers, land improvement companies, environmental agencies, real estate brokerage companies, accountants and lawyers. In addition, TRT will conduct a telemarketing campaign to introduce potential purchasers to the upcoming sale, alert them to scheduled advertising, and to provide information concerning due diligence. The entire telemarketing program is geared so as to establish credibility in the minds of prospective purchasers that the Debtors intend to sell, and that bidders will be bidding against each other, not the Debtors or the auctioneer.

The marketing program will cost approximately $45,000. This cost will be the only cost to the Debtors relating to the sale process.

TRT and AMG are uniquely suited to undertake the sale. Both firms have databases of potential purchasers that they have accumulated over the years. Furthermore, AMG has substantial expertise in conducting auctions and TRT and AMG have expertise in marketing and selling land and rural real estate, including for debtors, financial institutions and other sellers nationwide. TRT and AMG also assisted the Roman Catholic Church of the Diocese of Tucson in auctioning certain rural property similar in nature to certain of the Sale Assets with success in 2005.

11

## V. MOTION TO SELL AND LEGAL AUTHORITY.

Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although Bankruptcy Code § 363 does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets, it is well settled that a debtor's decision to enter into a sale transaction outside the ordinary course of business is analyzed under the business judgment standard. *See, e.g., In re Ernst Home Ctr., Inc.*, 209 B.R. 974, 979 (Bankr. W.D.Wash. 1997), citing *In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986).

"The business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). Decisions made by a debtor's management in the exercise of its business judgment ordinarily should not be second guessed by a reviewing court. *See In re Curlew Valley Assocs.*, 14 B.R. 506, 511 (Bankr. D. Utah 1981).

The Debtors submit that using estate assets to pay for the proposed marketing procedure satisfies the business judgment test. The total cost of $45,000 is likely less than it would cost the Debtors to obtain an appraisal of each parcel in order to market it at a set price. This use of estate assets, therefore, is clearly in the best interests of the Debtors' estates and satisfies the business judgment rule.

Moreover, the Debtors submit that the proposed auction procedure satisfies the business judgment standard. The Debtors have interviewed brokers, appraisers, and others concerning the

Case 13-13676-t11    Doc 383    Filed 05/18/15    Entered 05/18/15 11:16:31 Page 12 of 19

Sale Assets and the best way to maximize their value. Also, the Debtors have worked closely with the Committee on compiling the list of properties to be sold, determining the best group to handle the sales, and the procedures under which the properties are sold. Upon information and belief, the Committee supports the relief requested in this Sale Motion. The Debtors believe that the procedures proposed herein through the assistance and expertise of TRT and AMG are the procedures most clearly designed to encourage bidding and maximize the value of the Sale Assets.

Additionally, the suggested Buyer's Premium Charge will allow TRT and AMG's commission to be paid by the buyer(s), so the costs of sale to be paid by the Debtors under the proposed procedures will be less than they would be in a sale conducted in a conventional manner. Furthermore, the time and expense necessary to sell all of the parcels, including the time spent by the Debtors and their professionals is considerably less through the process proposed, than it would be if the Debtors attempted to individually market each of the Sale Assets (many of which have minimal value that could be almost entirely consumed by such costs).

Finally, RCCDG requests that the sale be free and clear of all liens, claims, and interests. The Court's underlying statutory authority to allow such a sale is derived from to 11 U.S.C. § 363(f), which provides that a bankruptcy estate may sell property of an estate free and clear of any interest in such property of an entity if:

> (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; <u>or</u>

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Under applicable law the bankruptcy estate need only establish that any one of the five conditions set forth in § 363(f) of the Bankruptcy Code is satisfied in order for property of the estate to be sold free and clear. 11 U.S.C. § 363(f); *see also In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988). In this case, RCCDG does not believe that the Sale Assets are subject to any liens, encumbrances, or other interests, other than certain minimal claims or liens that may exist, relating to real property taxes. To the extent any person were to claim a lien, encumbrance, or other interest in any Sale Asset other than a property tax lien or claim identified in the Debtors' Schedules, such lien, claim, or interest would be subject to a *bona fide* dispute by the Debtor. Therefore, to the extent any lien, claim, or interest not disclosed on the Schedules is asserted, the Debtors dispute the existence, legality, and extent of such lien, claim, or interest, and requests that the Court approve the sell of the Sale Assets free and clear of any such lien, claim, or interest.

## VI. <u>CONCLUSION</u>.

The Debtors have determined that it will be necessary for them to sell the Sale Assets in order to generate funds to pay creditors and other costs and expenses of their Reorganization Cases. To that end, the Debtors have spent many months gathering information from various real estate brokers and other professionals, and have considered all that information. After due consideration, the Debtors have determined that the auction procedures developed in conjunction with TRT and AMG as set forth herein are the best way to maximize the value of the Sale Assets. Therefore, the Debtors respectfully request that the Court enter an Order:

14

A. Granting the relief requested by the Debtors in this Motion;

B. Authorizing the employment of TRT and AMG as brokers for the Debtors effective as of the date of filing this Motion;

C. Authorizing the Debtors to pay TRT and AMG the sum of $45,000 or such lesser cost as may be the actual expense of marketing the Sale Assets;

D. Authorizing TRT and AMG to retain a Buyer's Premium from the auction sale that represents 10% of the sale price of each of the Sale Assets;

E. Approving the procedures set forth in this Motion, including Exhibit "4," as necessary and appropriate for conducting the sale of the Sale Assets;

F. Authorizing the Debtors to sell the Sale Assets free and clear of any liens, claims, or interests, to the extent any exist;

G. Requiring the Debtors to submit the results of the auction within three (3) business days of completion of the auction, at which time the Debtors may ask the Court to grant the successful bidders the protections of 11 U.S.C. § 363(m) reserved for good faith purchasers; and

H. Granting such other and further relief as may be necessary under the circumstances.

RESPECTFULLY SUBMITTED this 18th day of May, 2015.

/s/ *Elizabeth S. Fella*
Susan G. Boswell (AZ Bar No. 004791)
Lori L. Winkelman (AZ Bar No. 021400)
Elizabeth S. Fella (AZ Bar No. 025236)
*Admitted Pro Hac Vice*
QUARLES & BRADY LLP
One S. Church Ave., Suite 1700
Tucson, Arizona 85701

15

(520) 770-8700  
Fax: (520) 623-2418  
susan.boswell@quarles.com  
lori.winkelman@quarles.com  
elizabeth.fella@quarles.com  

-and-

Thomas D. Walker  
WALKER & ASSOCIATES, P.C.  
500 Marquette N.W., Suite 650  
Albuquerque, New Mexico 87102  
(505) 766-9272  
Fax: (505) 722-9287  
twalker@walkerlawpc.com  

*Counsel for the Debtors*

16

# CERTIFICATE OF SERVICE

Pursuant to F.R.C.P. 5(b)(3), F.R.B.P. 9036 and NM LBR 9036-1(b), I hereby certify that service of the foregoing "Motion to (I) Retain Brokers; (II) Sell Property Under 11 U.S.C. § 363(b), (f), and (m); and (III) Approve Sale Procedures" was made on May 18, 2015 via e-mail, the notice transmission facilities of the Bankruptcy Court's case management and electronic filing system, and/or via U.S. Mail on the below listed parties.

| | |
|---|---|
| Ronald E. Andazola<br>Leonard Martinez-Metzgar<br>Office of the U.S. Trustee<br>P.O. Box 608<br>Albuquerque, NM 87103<br>ustpregion20.aq.ecf@usdoj.gov<br>ronald.andazola@usdoj.gov<br>leonard.martinez-metzgar@usdoj.gov | Thomas D. Walker<br>Stephanie L. Schaeffer<br>Walker & Associates, P.C.<br>500 Marquette N.W., Suite 650<br>Albuquerque, NM 87102<br>twalker@walkerlawpc.com<br>sschaeffer@walkerlawpc.com<br>*Local Counsel for Debtor*<br>*and Debtor-in-Possession* |
| James I. Stang<br>Gillian N. Brown<br>Pachulski Stang Ziehl & Jones<br>10100 Santa Monica Blvd., 13th Floor<br>Los Angeles, CA 90067<br>jstang@pszjlaw.com<br>gbrown@pszjlaw.com<br>*Counsel for the Official*<br>*Committee of Unsecured Creditors* | Kenneth H. Brown<br>Pachulski Stang Ziehl & Jones<br>150 California Street, 15th Floor<br>San Francisco, CA 94111<br>kbrown@pszjlaw.com<br>*Counsel for the Official*<br>*Committee of Unsecured Creditors* |
| Robert E. Pastor<br>Montoya, Jimenez & Pastor, P.A.<br>3200 N. Central Ave., Suite 2550<br>Phoenix, AZ 85012<br>repastor@mjpattorneys.com<br>*Counsel for Tort Claimants* | John Manly<br>Manly & Stewart<br>19100 Von Karman Ave., Suite 800<br>Irvine, CA 92612<br>jmanly@manlystewart.com<br>*Counsel for Tort Claimants* |
| Richard T. Fass<br>Donald H. Kidd<br>Perdue & Kidd, LLP<br>510 Bering Dr., Suite 550<br>Houston, TX 77057<br>rfass@perdueandkidd.com<br>dkidd@perdueandkidd.com<br>*Counsel for Tort Claimants* | Dennis Jontz<br>Lewis Roca Rothgerber<br>201 Third Street, NW, Ste. 190<br>Albuquerque, NM 87102<br>djontz@lrrlaw.com<br>*Local Counsel for Catholic Peoples Foundation and Parish Steering Committee of Roman Catholic Church of the Diocese of Gallup* |

Robert M. Charles, Jr.
Susan M. Freeman
Justin J. Henderson
Lewis Roca Rothgerber LLP
201 E. Washington St., Suite 1200
Phoenix, AZ 85004
rcharles@lrrlaw.com
sfreeman@lrrlaw.com
jhenderson@lrrlaw.com
*Counsel for Catholic Peoples Foundation and Parish Steering Committee of Roman Catholic Church of the Diocese of Gallup*

Douglas R. Vadnais
Modrall, Sperling, Roehl,
Harris & Sisk, P.A.
P.O. Box 2168
Albuquerque, NM 87103
drv@modrall.com
*Counsel for The Bank of Colorado d/b/a Pinnacle Bank*

Christopher R. Kaup
J. Daryl Dorsey
Tiffany & Bosco
Camelback Esplanade II
2525 E. Camelback Rd., Ste. 300
Phoenix, AZ 85016
crk@tblaw.com
jdd@tblaw.com
*Counsel for Southwest Indian Foundation, Inc.*

George M. Moore
Bonnie B. Gandarilla
Moore Berkson & Gandarilla P.C.
3800 Osuna Rd., NE, Ste. 2
Albuquerque, NM 87109
mbglaw@swcp.com
bbg11usc@swcp.com
*Local Counsel for Southwest Indian Foundation, Inc.*

Charles R. Hughson
Rodey, Dickason, Sloan,
Akin & Robb, P.A.
P.O. Box 1888
Albuquerque, NM 87103
chughson@rodey.com
*Counsel for St. Bonaventure Indian Mission & School*

Steven D. Jerome
Snell & Wilmer, LLP
One Arizona Center
400 E. Van Buren St., Ste. 1900
Phoenix, AZ 85004
sjerome@swlaw.com
*Counsel for The Roman Catholic Church of the Diocese of Phoenix*

Edward A. Mazel
James A. Askew
Daniel A. White
Askew & Mazel, LLC
320 Gold Ave. S.W., Suite 300 A
Albuquerque, NM 87102
edmazel@askewmazelfirm.com
jaskew@askewmazelfirm.com
dwhite@askewmazelfirm.com
*Attorneys for New Mexico Property and Casualty Insurance Guaranty Association*

Randy S. Bartell
Victor R. Ortega
Sharon T. Shaheen
Montgomery & Andrews, P.A.
P.O. Box 2307
Santa Fe, NM 87504
rbartell@montand.com
vortega@montand.com
sshaheen@montand.com
*Counsel for Catholic Mutual Relief Society of America*

Rodney L. Schlagel
James H. Johansen
Butt Thornton & Baehr P.C.
P.O. Box 3170
Albuquerque, NM 87190
rlschlagel@btblaw.com
jhjohansen@btblaw.com
*Counsel for the Roman Catholic Diocese Of Corpus Christi*

David Spector
Everett Cygal
Schiff Hardin LLP
233 S. Wacker Dr., Suite 660
Chicago, IL 60606
dspector@schiffhardin.com
ecygal@schiffhardin.com
*Counsel for Catholic Mutual Relief Society*

| | |
|---|---|
| Alyson M. Fiedler<br>Schiff Hardin LLP<br>666 Fifth Avenue, 17th Floor<br>New York, NY 10103<br>afiedler@schiffhardin.com<br>ldelucia@schiffhardin.com<br>*Counsel for Catholic Mutual Relief Society* | Michael Murphy<br>Young Kim<br>AlixPartners, LLP<br>580 California Street<br>San Francisco, CA 94104<br>mmurphy@alixpartners.com<br>ykim@alixpartners.com<br>*Unknown Claims Representative* |
| Francis H. LoCoco<br>Bruce G. Arnold<br>Whyte Hirschbeck Dudek S.C.<br>555 E. Wells St., Suite 1900<br>Milwaukee, WI 53202<br>flococo@whdlaw.com<br>barnold@whdlaw.com<br>*Counsel for Roman Catholic Diocese of Corpus Christi* | Navajo County Treasurer<br>P.O. Box 1807<br>Holbrook, AZ 86025 |
| Apache County Treasurer<br>75 W. Cleveland St.<br>St. Johns, AZ 85936 | Coconino County Treasurer<br>219 E. Cherry Ave.<br>Flagstaff, AZ 86001 |
| McKinley County Treasurer<br>207 W. Hill St., Suite 101<br>Gallup, NM 87301 | Catron County Treasurer<br>P.O. Box 407<br>Reserve, NM 87830 |
| Cibola County Treasurer<br>515 W. High St.<br>Grants, NM 87020 | Luna County Treasurer<br>P.O. Box 1758<br>Deming, NM 88038 |
| Rio Arriba County Treasurer<br>P.O. Box 548<br>Tierra Amarilla, NM 87575 | Sandoval County Treasurer<br>P.O. Box 40<br>Bernalillo, NM 87004 |
| San Juan County Treasurer<br>100 South Oliver Drive<br>Aztec, NM 87410 | Socorro County Treasurer<br>200 Church St.<br>Socorro, NM 87801 |
| Taos County Treasurer<br>105 Albright Rd.<br>Taos, NM 87571 | Valencia County Treasurer<br>P.O. Box 939<br>Los Lunas, NM 87031 |

        /s/ *Elizabeth S. Fella*
          Elizabeth S. Fella

19

QB\35083487.1

Case 13-13676-t11   Doc 383   Filed 05/18/15   Entered 05/18/15 11:16:31   Page 19 of 19