## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

| | |
|---|---|
| In re: | Chapter 11 |
| ROMAN CATHOLIC CHURCH OF THE DIOCESE OF GALLUP, a New Mexico corporation sole, | Case No. 13-13676-t11 |
| | **Jointly Administered with:** |
| Debtor. | |
| Jointly Administered with: | Case No. 13-13677-t11 |
| BISHOP OF THE ROMAN CATHOLIC CHURCH OF THE DIOCESE OF GALLUP, an Arizona corporation sole. | |
| This pleading applies to: | |
| ☒  All Debtors. | |
| ☐  Specified Debtor. | |

## <u>DEBTORS' FIRST AMENDED AND RESTATED PLAN OF REORGANIZATION DATED MARCH 21, 2016</u>

QB\39723595.1

# TABLE OF CONTENTS

Article 1:  Introduction..........................................................................................................1

Article 2:  Rules Of Interpretation ..........................................................................................1

Article 3:  Definitions ..............................................................................................................3

Article 4:  Plan Objectives .....................................................................................................23

Article 5:  Unclassified Claims ..............................................................................................24

Article 6:  Classification Of Claims .......................................................................................25

Article 7:  Treatment Of Class 1 Claims (Priority Employee Unsecured Claims) .................26

Article 8:  Treatment Of Class 2 Claims (Prepetition Date Secured Tax Claims) ..................26

Article 9:  Treatment Of Class 3 Claims (Secured Claims Of Ally Bank)..............................27

Article 10:  Treatment Of Class 4 Claims (Secured Claim Of Pinnacle Bank).......................28

Article 11:  Treatment Of Class 5 Claims (General Unsecured Convenience Claims)..............29

Article 12:  Treatment Of Class 6 Claims (Phoenix Diocese Unsecured Claims).....................29

Article 13:  Treatment Of Class 7 Claims (General Unsecured Claims)....................................29

Article 14:  Treatment Of Class 8 Claims (Other Tort And Employee Claims)........................30

Article 15:  Treatment Of Class 9 Claims (Tort Claims).........................................................30

Article 16:  Treatment Of Class 10 Claims (Unknown Tort Claims)........................................32

Article 17:  Treatment Of Class 11 Claims (St. Bonaventure Claim) ......................................34

Article 18:  Treatment Of Class 12 Claims (Insurance And Benefit Claims) ...........................34

Article 19:  Treatment Of Class 13 Claims (Penalty Claims)...................................................34

Article 20:  Means Of Implementation Of The Plan.................................................................34

Article 21:  Trust  ...................................................................................................................40

Article 22:  Treatment Of Executory Contracts.......................................................................42

QB\39723595.1

Article 23: Other Post-Effective Date Transactions ................................................................. 43

Article 24: Insurance Matters ........................................................................................................ 44

Article 25: Litigation ....................................................................................................................... 47

Article 26: Liquidation Of Tort Claims And Unknown Tort Claims ....................................... 48

Article 27: Conditions Precedent ................................................................................................. 50

Article 28: Effects Of Confirmation ............................................................................................. 51

Article 29: Modification Of Plan ................................................................................................... 55

Article 30: Retention Of Jurisdiction .......................................................................................... 55

Article 31: Reorganization Of Debtors ....................................................................................... 58

Article 32: General Provisions ...................................................................................................... 59

# ARTICLE 1

## INTRODUCTION

1.1     The Roman Catholic Church of the Diocese of Gallup, a New Mexico corporation sole, and Bishop of the Roman Catholic Church of the Diocese of Gallup, an Arizona corporation sole, the debtors and debtors-in-possession in the above-captioned jointly administered Chapter 11 reorganization cases, propose the following Plan of Reorganization pursuant to the provisions of Chapter 11 of the Bankruptcy Code.  Any term used in an initially capitalized form in the Plan will have the defined meaning ascribed to it in either Bankruptcy Code § 101 or Article 3 hereof.

1.2     ALL CREDITORS ARE ENCOURAGED TO CONSULT THE DISCLOSURE STATEMENT BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. AMONG OTHER INFORMATION, THE DISCLOSURE STATEMENT CONTAINS DISCUSSIONS OF THE DEBTORS, THE HISTORICAL BACKGROUND OF THE REORGANIZATION CASES AND THE PREPETITION PERIOD, THE PROJECTIONS GERMANE TO THE PLAN AND THE PROJECTED POST-CONFIRMATION OPERATIONS OF THE DEBTORS AND THE REORGANIZED DEBTOR, AND A SUMMARY AND ANALYSIS OF THE PLAN.  NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT OR BY THE BANKRUPTCY CODE FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN.

1.3     The Court has scheduled the Confirmation Hearing on _____, 2016.

# ARTICLE 2

## RULES OF INTERPRETATION

2.1     The rules of construction in Bankruptcy Code § 102 apply to the Plan to the extent not inconsistent with any other provision in this Article 2.  All definitions in the Bankruptcy Code and below will be subject to the rules of construction set forth in Bankruptcy Code § 102.  In addition, the use of the words "includes" or "including" is not limiting, and means "including but not limited to" and "including without limitation," "and/or" means either or both, and the words "related to" or "relating to" mean with regard to, by reason of, based on, arising out of, or in any way connected with.

2.2     In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided in the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  If any act under the Plan is required to be performed on a date that is not a Business Day, then the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  Enlargement of any period of time prescribed or allowed by the Plan shall be governed by the provisions of Bankruptcy Rule 9006(b).

1

2.3     A term that is used in the Plan and that is not defined in the Plan has the meaning attributed to that term in the Disclosure Statement, the Confirmation Order, the Trust Agreement, the Bankruptcy Code or the Bankruptcy Rules.

2.4     The definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement or the Trust Agreement.

2.5     The definition of any given term or provision in a Plan Document shall be incorporated by reference in the Plan unless the Plan provides a different definition for such term or provision.  In the event of any conflict between a definition of a term or provision in a Plan Document and the Plan, the definition or provision in the Plan will control unless otherwise provided in the Plan or a Plan Document.

2.6     Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural.  In addition, the singular and plural uses of such defined terms and the conjunctive and disjunctive uses thereof will be fungible and interchangeable (unless the context otherwise requires); and the defined terms will include masculine, feminine, and neuter genders.

2.7     Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms.  Any specific references to promissory notes, deeds of trust or other debt instruments or security documents include any amendments, modifications and extensions thereto, and any reference to an existing document means the document as it has been, or may be, amended or supplemented.

2.8     Unless otherwise indicated, the phrases "pursuant to the Plan," "under the Plan" and the words "herein," "hereunder" and "hereto" and similar words or phrases refer to the Plan in its entirety rather than to only a particular portion of the Plan.  Unless otherwise specified, all references to Articles, articles, Sections, sections, clauses or exhibits are references to the Plan's Articles, articles, Sections, sections, clauses or exhibits.

2.9     Section or Article captions and headings are used only as convenient references, do not affect the Plan's meaning and will not limit or otherwise affect the provisions hereof.

2.10    The Plan includes as exhibits the Participating Party Agreements and the Insurance Settlement Agreements.  The Participating Party Agreements and the Insurance Settlement Agreements contain terms that may not otherwise be defined in the Plan.  For purposes of the interpretation and enforcement of the Participating Party Agreements and Insurance Settlement Agreements, the definitions in each Participating Party Agreement and Insurance Settlement Agreement, if any, control as to that agreement only unless otherwise indicated in such Participating Party Agreement or Insurance Settlement Agreement.

2.11    Nothing contained in the Plan, including any exhibits or attachments thereto, constitutes an admission or denial by any party of liability for, or the allowance, validity,

2

priority, amount, or extent of any Claim, lien, or security interest asserted against the Debtors or against any third party.

# ARTICLE 3

## DEFINITIONS

3.1　**Scope of Definitions.**　For purposes of the Plan, and except as expressly provided otherwise herein or unless the context otherwise requires, all of the defined terms stated in Article 3 will have the meanings hereinafter stated.　The defined terms stated in Article 3 are also substantive terms of the Plan, and Article 3 will be deemed incorporated throughout the rest of the Plan to convey the substantive provisions included in the defined terms.　Unless otherwise specified, all section, article, and exhibit references in the Plan are to the respective section in, article of, or exhibit to the Plan, as the same may be amended, waived, or modified from time to time.

3.2　"**Abuse**" means any (a) act of sexual conduct, misconduct, abuse, or molestation; any other sexually related act, contact, or interaction; indecent assault and/or battery; rape; lascivious behavior; undue familiarity; pedophilia; or ephebophilia; (b) act that causes or allegedly causes sexually-related physical, psychological, or emotional harm, or any other contacts or interactions of a sexual nature, including any such contacts or interactions between a child and an adult, or a non-consenting adult and another adult; (c) assault; battery; corporal punishment; or any other act of physical, psychological, mental, or emotional abuse, humiliation, or intimidation; or (d) fraud, fraud in the inducement, misrepresentation, concealment, unfair practice, or any other tort relating to the acts and/or omissions listed in subparts (a)-(c) of this sentence.　Abuse may occur whether or not this activity involves explicit force, whether or not it involves genital or other physical contact, and whether or not there is physical, psychological, or emotional harm to the Person.

3.3　"**Abuse Claims Reviewer**" means the individual, including any designee of such individual, who will assess Tort Claims and any Unknown Tort Claims in accordance with the Plan and the Allocation Protocols.　Subject to the Allocation Protocols' provisions for replacement of the Abuse Claims Reviewer, the Abuse Claims Reviewer is the Honorable (Retired) William L. Bettinelli.

3.4　"**Administrative Claim**" means (a) every cost or expense of administration of the Reorganization Cases which is allowable pursuant to Bankruptcy Code § 503, including any actual and necessary postpetition expenses of preserving the Estates; (b) any actual and necessary postpetition expenses of operating the Debtors; (c) all Professional Charges approved by the Bankruptcy Court pursuant to interim and final allowances in accordance with Bankruptcy Code §§ 330, 331, 503(b) and the terms of the Plan; (d) every Property Tax Administrative Claim; and (e) all fees and charges assessed against the Estates under Chapter 123 of Title 28, United States Code.

3.5　"**Administrative Claim Bar Date**" means _____ __, 2016, the date established by the Court in the Disclosure Statement Order as the date (**except** as to Administrative Claims for Professional Charges) by which an Administrative Claim (**except**

an Administrative Claim for Professional Charges) must be evidenced by the filing of a Proof of Claim with the Bankruptcy Court.

3.6 "**Allocation Protocols**" means, when referred to collectively, the Tort Claims Allocation Protocol and the Unknown Tort Claims Allocation Protocol that provides for distribution of funds to Tort Claimants and Unknown Tort Claimants pursuant to the terms of the Plan and the Allocation Protocols, copies of which are attached hereto as **Exhibits A** and **B**, respectively, and incorporated herein as part of the Plan for all purposes.

3.7 "**Allowed**" means (i) any Claim against any Debtor which has been listed by such Debtor in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or Contingent and for which no contrary Proof of Claim has been filed, (ii) any timely filed Proof of Claim as to which no objection to allowance has been interposed in accordance with Section 3.30 hereof or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (iii) any Claim expressly allowed by a Final Order or hereunder. Tort Claims are not Allowed Claims except as specifically provided in the Plan.

3.8 "**Arizona Entity**" means the Bishop of the Roman Catholic Church of the Diocese of Gallup, an Arizona corporation sole, in all its civil capacities and a Debtor in the Reorganization Cases.

3.9 "**Arizona Fund**" means the Arizona Property and Casualty Insurance Guaranty Fund.

3.10 "**Arizona Fund Claims**" means every Claim the Debtors have against the Arizona Fund, including, without limitation any Insurance Claims for Insurance Coverage.

3.11 "**Assets**" means each and every item of property and Interest of the Debtors therein, as of the Effective Date, for which the Arizona Entity and/or RCCDG own the legal and equitable title, which is property of the Estates under Bankruptcy Code § 541, whether tangible or intangible, legal or equitable, liquidated or unliquidated, and includes without limitation: (a) all Cash; (b) all Retained Claims; (c) any and all amounts owed to the Debtors, including accounts receivable and contract rights, whether due prior or subsequent to the Petition Date; (d) any other right, Claim, cause of action, or defense, whether arising by statute or common law, and whether arising under the laws of the United States, other countries, or applicable state or local law, including, but not limited to, all Insurance Claims; (e) all of the Debtors' books, records, and privileges; (f) all contracts, agreements, appraisals, permits, licenses, and leases; and (g) any other property of the Debtors whether the Debtors hold a legal or equitable interest or both.

3.12 "**Avoidance Actions**" means all actions pursuant to Bankruptcy Code §§ 544, 547, 548, 549 and 550 and any other actions provided for under applicable law, that allow a debtor, a trustee or a debtor-in-possession to, among other things, avoid certain transfers.

3.13    "**Award**" means the amount payable to a Tort Claimant or an Unknown Tort Claimant as determined in accordance with the terms of the Plan, the Confirmation Order and the applicable Tort Claims Allocation Protocol or the Unknown Tort Claims Allocation Protocol including the Unknown Tort Claims Certificate.

3.14    "**Ballot**" means each of the ballots for each Class of Claims entitled to vote on the Plan sent to all creditors entitled to vote on the Plan, on which such creditors will indicate their vote on their applicable ballot to accept or reject the Plan and which have been approved by the Bankruptcy Court.

3.15    "**Bankruptcy Code**" means Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, including any amendments thereto, which are in effect during the Reorganization Cases.

3.16    "**Bankruptcy Court**" or "**Court**" each means the United States Bankruptcy Court for the District of New Mexico, or such other court of competent jurisdiction which properly exercises jurisdiction over part or all of the Reorganization Cases, to the extent that the reference of part or all of the Reorganization Cases is withdrawn.

3.17    "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure promulgated under Title 28 of the United States Code, § 2075, including any amendments thereto, and the local rules and general orders of the Bankruptcy Court, as applicable to Chapter 11 cases, together with all amendments and modifications thereto.

3.18    "**Bar Date**" means August 11, 2014, the date established by the Court in the Bar Date Order as the date by which a Claim must be evidenced by the filing of a Proof of Claim with the Bankruptcy Court, but excludes the Administrative Claim Bar Date.

3.19    "**Bar Date Order**" means the *Order Fixing Time For Filing Proofs Of Claim, Approving Claim Forms, and Approving Manner and Form of Notice*, entered April 11, 2014 [Docket No. 218].

3.20    "**Bishop**" means the Reverend James S. Wall, or such other individual who may in the future become the acting Diocesan Bishop of the Diocese during the term of the Plan.

3.21    "**Business Day**" means any day except Saturday, Sunday, federal holidays, or a "legal holiday," as that term is defined in the Bankruptcy Rule 9006(a).

3.22    "**Canon Law**" means and refers to the 1983 Code of Canon Law applicable to the Roman Catholic Church. References to Canon Law in the Plan are for discussion purposes only. Nothing in the Plan or any Plan Document shall be construed as making Canon Law binding on any Entity; nor shall Canon Law be construed to govern any provision of the Plan or any Plan Document; provided, however, that the foregoing does not constitute a waiver by the Debtors or the Reorganized Debtor of the right to assert Canon Law or any other applicable non-bankruptcy law as a defense to any action to enforce any provision of the Plan or the Plan Documents.

3.23 "**Cash**" means cash, cash equivalents, bank deposits, and negotiable instruments payable on demand.

3.24 "**Chancery**" means that certain real property located at 711 South Puerco Drive in Gallup, New Mexico, as further described in RCCDG's Schedule A, Item No. 9, at Docket No. 67.

3.25 "**Channeled Claim**" means any Tort Claim, Unknown Tort Claim, Extra-Contractual Claim, and/or Claim against a Protected Party, or any Entity insured by a Settling Insurer or Participating Party (to the extent such Claim against an Entity insured by a Settling Insurer arises from the same injury or damages asserted as a Tort Claim against a Protected Party and relates to a Released Insurance Policy) arising from, in connection with, or related in any way to a Tort Claim or any Released Insurance Policies issued by the Setting Insurers or Participating Party, including any Related Insurance Claims. Each Claim described in this Section 3.25 shall include all such Claims whenever and wherever arising or asserted, whether sounding in tort, contract, warranty or any other theory of law, equity or admiralty, including without limitation all Claims by way of direct action, subrogation, allocation of fault, contribution, indemnity, alter ego, statutory or regulatory action, or otherwise, Claims for exemplary or punitive damages, for attorneys' fees and other expenses, or for any equitable remedy.

3.26 "**Channeling Injunction**" means the injunction to be issued pursuant to Section 28.5 of the Plan.

3.27 "**Chapter 11 Professionals**" means the Debtors' Professionals, the Committee's Professionals and the Unknown Claims Representative wherever they are referred to collectively in the Plan.

3.28 "**CIC**" means that certain real property located at 506 W. Historic Hwy 66, in Gallup, New Mexico and commonly known as the Catholic Indian Center, as further described in RCCDG's Schedule A, Item No. 14, at Docket No. 67.

3.29 "**Claim**" means any past, present or future claim, demand, action, requests, cause of action, suit, proceeding or liability of any kind or nature whatsoever, whether at law or equity, known or unknown, asserted or unasserted, anticipated or unanticipated, accrued or unaccrued, fixed or Contingent, which has been or may be asserted by or on behalf of any Entity (including without limitation a Direct Action Claim), whether seeking damages (including compensatory, punitive, or exemplary damages), including Tort Claims or equitable, mandatory, injunctive, or any other type of relief, including cross-claims, counterclaims, third-party claims, suits lawsuits, administrative proceedings, notices of liability or potential liability, arbitrations, actions, rights causes of action or orders, and any Claim within the definition of Bankruptcy Code § 101(5).

3.30 "**Claim Objection Deadline**" means the date by which any objections to Claims other than Tort Claims or Unknown Tort Claims, if not previously Allowed, must be filed. Unless an earlier time is fixed by order of the Bankruptcy Court, the Claim Objection

6

Deadline will be on or before the first Business Day which is one hundred eighty (180) days after the Effective Date.

3.31    "**Claim Payment Date**" means the date which is ten (10) Business Days after a Claim, other than a Tort Claim or an Unknown Tort Claim, becomes an Allowed Claim by a Final Order if such Claim is not an Allowed Claim on the Effective Date. Payment of Tort Claims and Unknown Tort Claims shall be governed by the terms of the Allocation Protocols, the Trust Agreement and the Unknown Claims Certificate.

3.32    "**Class**" means each of the classifications of Claims described in Article 6 of the Plan.

3.33    "**Class 9 Ballot**" means the Ballot that the holders of Class 9 Tort Claims will use to accept or reject the Plan and includes the releases and certifications required pursuant to the Plan, the Confirmation Order and the Trust.

3.34    "**Closing**" means the date the payments and transfers to the Trust of those Assets required to be paid and transferred in accordance with Section 23.1 of the Plan are paid and transferred.

3.35    "**CM**" means, collectively, Catholic Mutual Relief Society of America, Catholic Relief Insurance Company of America and their past, present and future parents, subsidiaries, affiliates, and divisions, each of their respective past, present, present and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of their respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, Representatives, and claims handling administrators, and each of their respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Entities acting on behalf of, by, through or in concert with them.

3.36    "**CM Settlement Agreement**" means that certain agreement between CM and the Debtors attached hereto as **Exhibit C** and incorporated herein as part of the Plan.

3.37    "**Co-Defendant**" means an Entity that is named as a defendant in a lawsuit in which one or both of the Debtors are also named as a defendant, and/or who is alleged to be fully or partially responsible for a Tort Claim, including an Unknown Tort Claim asserted, or which may be asserted in the future, against such Entity, including co-debtors as described in Bankruptcy Code § 509.  A Protected Party is not a Co-Defendant.

3.38    "**Committee**" means the Official Committee of Unsecured Creditors appointed by the United States Trustee on December 17, 2013 at Docket No. 118.

3.39    "**Committee's Professionals**" means the law firm of Pachulski, Stang, Ziehl & Jones, LLP.

3.40    "**Confirmation Date**" means the date on which the Bankruptcy Court enters the Confirmation Order on the Court's docket.

7

3.41    "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court regarding confirmation of the Plan, as such may be continued from time to time.

3.42    "**Confirmation Order**" means the Final Order confirming the Plan that is acceptable in form to the Debtors, the Committee, the Participating Parties, and the Settling Insurers on or before the Confirmation Date.

3.43    "**Contingent**" means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

3.44    "**Contribution Claim**" means any Claim by any Insurer against any other Insurer seeking contribution, equitable contribution, indemnity, equitable indemnity, subrogation, equitable subrogation, "other insurance" clauses rights, or pursuant to any other theory under law or in equity relating to the defense or payment by such paying insurer of all or any part of any Claim (a) asserted against the Diocese or the Debtors; (b) relating to the Insurance Policies; or (c) channeled to or paid, in whole or in part, by the Trust.

3.45    "**Corpus Christi**" means the Roman Catholic Diocese of Corpus Christi, in all of its capacities.

3.46    "**Corpus Christi Claims**" means every Claim the Debtors have against Corpus Christi, including, but not limited to, all Claims for contribution, indemnity, subrogation, or allocation of fault; provided, however, that nothing herein shall be construed to include any individual Tort Claimant's personal Claims against Corpus Christi within the definition of a Corpus Christi Claim.

3.47    "**CPF**" means the Catholic Peoples Foundation, a New Mexico non-profit corporation and its Representatives.

3.48    "**CPF Settlement Agreement**" means that certain agreement between CPF and the Debtors attached hereto as **Exhibit D** and incorporated herein as part of the Plan.

3.49    "**Debtors**" means the Arizona Entity and RCCDG.

3.50    "**Debtors' Professionals**" means:

  (a)    The law firm of Quarles & Brady LLP;

  (b)    The law firm of Walker & Associates, P.C.;

  (c)    The law firm of Stelzner, Winter, Warburton, Flores, Sanchez & Dawes, P.A.;

  (d)    The accounting and financial consulting firm of Keegan, Linscott & Kenon, P.C.;

  (e)    The insurance archaeologist firm of Insurance Archaeology Group;

8

(f)     The appraisal firm of Estate Valuation Consultants, Inc.;

(g)     The real estate firms of Tucson Realty & Trust Co. and Accelerated Marketing Group; and

(h)     Any and all other professionals which the Debtors retained to assist in the conduct of the Reorganization Cases or to provide professional services for a specified purpose, all in accordance with Bankruptcy Code §§ 327(a) and 327(e).

3.51    "**Diocesan Bishop**" means, as provided pursuant to Canon Law, a title of the person within the Roman Catholic Church who is appointed by the Holy See and designated as the Bishop who is to govern the Diocese and care for its people, with the cooperation and assistance of other Catholics, clerics and laity. The term "Diocesan Bishop" does not mean or include the Bishop acting in his civil capacity as the corporate sole of the Arizona Entity or RCCDG.

3.52    "**Diocese**" means the canonical entity of the Roman Catholic Church encompassing the territory of the Roman Catholic Diocese of Gallup subject to the jurisdiction of the Bishop and through which the Bishop carries out his canonical duties in accordance with Canon Law.

3.53    "**Direct Action Claim**" means any Claim by any Entity against a Settling Insurer or Participating Party identical or similar to, or relating to, any Tort Claim, whether arising by contract, in tort or under the laws of any jurisdiction, including any statute that gives a third party a direct cause of action against an insurer.

3.54    "**Disallowed Claim**" means (i) a Claim, or any portion thereof, that has been disallowed by a Final Order; (ii) a Claim that has been listed in the Schedules at zero or as Contingent, disputed, or unliquidated and as to which no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law; or (iii) a Claim that has not been listed in the Schedules and as to which no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law.

3.55    "**Disclosure Statement**" means the Disclosure Statement relating to the Plan, as it may be amended from time to time and approved by the Bankruptcy Court pursuant to the Disclosure Statement Order.

3.56    "**Disclosure Statement Order**" means that certain *Order (A) Approving the Disclosure Statement in Support of Plan of Reorganization; (B) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan; (C) Approving the Form of Ballots and the Inclusion of the Releases and Certifications Therein; (D) Approving the Form and Manner of Notice of the Insurance Settlement Agreements, Participating Party Agreements and (E) Setting the Confirmation Hearing* [Dkt. No. ___] that, among other things, approved the Disclosure Statement, approved the procedures to solicit approval of the Plan, approved the notice procedures for noticing the Confirmation Hearing, approved the forms of Ballots and established the Administrative Claim Bar Date.

9

3.57  "**Disputed Claim**" means every Claim, or portion thereof, which is subject to any defense, setoff, counterclaim, recoupment, or other adverse Claim of any kind of the Debtors or the Reorganized Debtor, or to which an objection (formal or informal) has been made and which has not yet become an Allowed Claim pursuant to a Final Order.

3.58  "**Disputed Claims Reserve**" means the reserve to be established by the Reorganized Debtor on the Effective Date, if necessary (and, thereafter, to be maintained as necessary) to hold in one or more segregated accounts, Cash or other Assets equal to the aggregate amounts thereof, that would have been distributed on an applicable Claim Payment Date on account of a Disputed Claim other than a Tort Claim or Unknown Tort Claim.  If the Disputed Claims (other than Tort Claims and Unknown Tort Claims) are less than $100,000, the Reorganized Debtor need not establish the Disputed Claims Reserve.  All Disputed Claims may be estimated by the Reorganized Debtor at an amount equal to (a) such lesser amount that is agreed to by the holder of such Claim, (b) the amount claimed if the Court has not made an estimation of such Claim or the holder of such Claim has not agreed to a lesser amount, or (c) the amount, if any, determined by the Court by Final Order pursuant to Bankruptcy Code § 502(c), as an estimate for distribution purposes.  In any event, the Estimated Amount will be the maximum amount of the Claim for distribution purposes under the Plan.  If the Disputed Claims Reserve is required to be established under the Plan, the Disputed Claims Reserve may be adjusted from time to time after the Effective Date by the Reorganized Debtor, after taking into account the anticipated recovery fraction which has been or is anticipated to be paid to the holders of Allowed Claims, after giving effect to the amount of the Disputed Claims as determined pursuant to this provision.  The Disputed Claims Reserve will not apply to the Trust, Tort Claims or Unknown Tort Claims, each of which will be governed by the terms of the Trust Agreement and the Allocation Protocols.

3.59  "**Disputed Property**" means that certain real and personal property identified in the *Complaint to Quiet Title* filed by St. Bonaventure on January 30, 2014, in adversary case number 14-01014-t commenced and later dismissed without prejudice in the Bankruptcy Court.

3.60  "**Effective Date**" means the first Business Day after the Confirmation Date on which (i) all conditions to effectiveness specified in Section 27.1 of the Plan have been satisfied or waived, and (ii) the Confirmation Order is a Final Order.

3.61  "**Entity**" means an individual, corporation, corporation sole, partnership, association, limited liability company, joint stock company, proprietorship, unincorporated association, joint venture, trust, estate, executor, legal representative, or any other organization, as well as any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency, department, board or instrumentality thereof, any other "person" within the definition of Bankruptcy Code § 101(41), any other "entity" within the definition of Bankruptcy Code § 101(15) and any successor in interest, heir executor, administrator, trustee, trustee in bankruptcy, or receiver of the foregoing.

QB\39723595.1

3.62    "**Estates**" means the bankruptcy estates of the Arizona Entity and RCCDG created under Bankruptcy Code § 541.

3.63    "**Estimated Amount**" means the maximum amount at which the Court or the district court, pursuant to Bankruptcy Code § 502(c), at the request of either of the Debtors, or any other party with standing, estimates any Claim or Class of Claims against the Debtor that is Contingent, unliquidated or disputed, but excluding any Tort Claim or any Unknown Tort Claim for the purpose of:  (a) allowance (for estimation purposes only); (b) distribution; (c) confirming the Plan pursuant to Bankruptcy Code § 1129; (d) voting to accept or reject the Plan pursuant to Bankruptcy Code § 1126 and Bankruptcy Rule 3018(a); or (e) any other proper purpose.

3.64    "**Exculpated Parties**" means the  Committee and each of its members; the Debtors, the Debtors' Professionals; the Committee's Professionals; the Unknown Claims Representative, AlixPartners LLP, Michael Murphy, and Young Kim, and all of their respective present or former members, managers, officers, directors, employees, Representatives, attorneys, and agents acting in such capacity.

3.65    "**Executory Contract**" means every unexpired lease and other contract which is subject to being assumed or rejected by the Debtors under Bankruptcy Code § 365, pursuant to the Plan or pursuant to separate motion and in which the Debtors hold either a legal Interest or an equitable interest as trustee for a Parish.

3.66    "**Extra-Contractual Claim**" means any Claim against any Settling Insurer or Participating Party relating to:  (a) allegations that any Settling Insurer or Participating Party acted in bad faith or in breach of any express or implied duty, obligation or covenant, contractual, statutory or otherwise, including any Claim on account of alleged bad faith; (b) failure to act in good faith; (c) failure to provide Insurance Coverage under any Insurance Policy; (d) violation or breach of any covenant or duty of good faith and fair dealing, whether express, implied or otherwise; (e) violation of any statute, regulation or code governing unlawful, unfair, or fraudulent competition, business, or trade practices, and/or untrue or misleading advertising, including any violation of any unfair claims practices act or similar statute, regulation, or code; (f) failure to investigate or provide a defense or an adequate defense; any type of alleged misconduct; (g) any other act or omission of any Settling Insurer or Participating Party of any type for which the claimant seeks relief other than coverage or benefits under an Insurance Policy; (h) any Settling Insurer's or Participating Party's handling of any Claim or any request for Insurance Coverage, including any request for coverage for and/or defense of any Claim, including any Tort Claim; (i) any Claim that, directly or indirectly relates to any of the Insurance Policies and any contractual duties arising therefrom, including any contractual duty to defend any of the parties thereto against any Tort Claims; and/or (j) the conduct of the parties with respect to the negotiation of any Insurance Settlement Agreement or Participating Party Agreement.

3.67    "**Final Order**" means:  any judgment or order of the Bankruptcy Court or any other court of competent jurisdiction (i) as to which the time to appeal, petition for certiorari, or move for re-argument or rehearing has expired, and as to which no appeal, petition for certiorari, or other proceedings for re-argument or rehearing will then be

pending, or as to which any right to appeal, petition for certiorari, re-argue or rehear will have been waived in writing, in form and substance satisfactory to the Debtors, or, on and after the Effective Date, in form and substance satisfactory to the Reorganized Debtor and as to the Trust, the Trustee, or in the event that an appeal, writ of certiorari, re-argument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other court of competent jurisdiction will have been determined by the highest court to which such order was appealed, or certiorari, re-argument or rehearing will have been denied, and the time to take any further appeal, petition for certiorari or move for re-argument or rehearing will have expired or (ii) the Debtors or Trustee (if after the Effective Date), the Committee (if before the Effective Date), the Settling Insurers, and the Participating Parties have all mutually agreed in writing that the order from which such appeal or review has been taken should be deemed to be a Final Order.

3.68 "**Franciscan Settlement Agreements**" means those certain settlement agreements between the Debtors on the one hand, and the Franciscans (Guadalupe) and Franciscans (St. John) and it insurer, United States Fidelity and Guaranty Company, on the other hand, each of which is attached hereto as **Exhibits E** and **F**, respectively and which are incorporated herein as part of the Plan.

3.69 "**Franciscan Settlement Payments**" means the payment to be made by the Franciscans (Guadalupe) and the payment to be made by the Franciscans (St. John) pursuant to their respective Franciscan Settlement Agreements and by which the Franciscans (Guadalupe) and the Franciscans (St. John) and its insurer, United States Fidelity and Guaranty Company, become Participating Parties.

3.70 "**Franciscans**" means, collectively, Franciscans (Guadalupe) and Franciscans (St. John).

3.71 "**Franciscans (Guadalupe)**" means the Province of Our Lady of Guadalupe of the Order of Friars Minor, in all of its capacities, including St. Michael's Mission; allied, affiliated or subsidiary missions, parishes, churches, chapels, provinces, entities and juridic persons; and any other entities owned or formed by any of them.

3.72 "**Franciscans (St. John)**" means the Province of St. John the Baptist of the Order of Friars Minor, in all of its capacities, including St. Michael's Mission; allied, affiliated or subsidiary missions, parishes, churches, chapels, provinces, entities and juridic persons; and any other entities owned or formed by any of them.

3.73 "**General Unsecured Claim**" means every Unsecured Claim against the Debtors (including, but not limited to, every such Claim arising from the rejection of an Executory Contract and every Claim which is the undersecured portion of any Secured Claim), but which is not an Administrative Claim, a Priority Unsecured Claim, a Priority Tax Claim, a General Unsecured Convenience Claim, an Other Tort and Employee Claim, an Insurance and Benefit Claim, a Claim of St. Bonaventure, a Claim of the Phoenix Diocese, a Tort Claim, an Unknown Tort Claim or a Penalty Claim, and which is classified and treated as the Plan provides for Class 7 Claims.

QB\39723595.1

3.74 "**General Unsecured Convenience Claim**" means a General Unsecured Claim in an amount of $500.00 or less, inclusive of interest accrued thereon, after the Petition Date through the later to occur on the Effective Date or the Claim Payment Date; provided that, if the holder of an Unsecured Claim in an amount greater than $500.00 makes an election to reduce such Claim to $500.00, such Claim will be treated as a General Unsecured Convenience Claim for all purposes. Such election will be made on the Ballot, completed and returned within the time fixed by order of the Court. Making this election will be deemed to be a waiver by such electing holder of any right to participate in Class 7, as to any and all Claims held by such holder.

3.75 "**General Unsecured Convenience Claim Payment**" means the lesser of $500.00 or the amount of the Allowed General Unsecured Claim if the amount of the Allowed General Unsecured Claim is less than $500.00.

3.76 "**Home Insurance**" means The Home Insurance Company in liquidation proceedings under the June 13, 2003 Order entered by the Merrimack County, New Hampshire Superior Court in its case number 03-E-0106.

3.77 "**Home Liquidation**" means the liquidation proceedings for Home Insurance under the June 13, 2003 Order entered by the Merrimack County, New Hampshire Superior Court in its case number 03-E-0106.

3.78 "**Home Liquidation Allowed Claim**" means the allowed claim in the amount of $5,600,000 in the Home Liquidation which will be allocated between the subrogation claim of NMPCIGA and the balance to the Debtors as set forth in the Home Settlement Agreement.

3.79 "**Home Settlement Agreement**" means that certain agreement between Home Insurance and the Debtors attached hereto as **Exhibit G** and incorporated herein as part of the Plan.

3.80 "**Insurance and Benefit Claims**" means any Unsecured Claim arising from or related to obligations, contributions or benefits of the Debtors pursuant to any pension or other benefit plan sponsored by either of the Debtors or for which either of the Debtors is otherwise obligated.

3.81 "**Insurance Claims**" means all Claims, Extra-Contractual Claims and enforceable rights (other than the duty to defend), against any Non-Settling Insurer whether sounding in contract, tort, or otherwise, including equity and bad faith, held by the Debtors for Insurance Coverage of a Tort Claim or Unknown Tort Claim including those for (i) indemnity and payment of any Tort Claim or Unknown Tort Claim; (ii) any Non-Settling Insurer's failure or refusal to provide Insurance Coverage under any Insurance Policy for a Tort Claim or Unknown Tort Claim against the Debtors, including the failure or refusal to provide a defense to any Tort Claim or Unknown Tort Claim against the Debtors; (iii) any Non-Settling Insurer's tortious or wrongful Claims handling including the failure or refusal of any Non-Settling Insurer to defend or timely compromise and settle any Tort Claim or Unknown Tort Claim against the Debtors pursuant to any Insurance Policy; and (iv) the

13

interpretation or enforcement of the terms of any Insurance Policy with respect to coverage of a Tort Claim or Unknown Tort Claim.

Notwithstanding the foregoing, nothing in the Plan affects the rights of a Settling Insurer or Participating Party under any agreement or contract providing reinsurance to the Settling Insurer or Participating Party, nor the rights of the Debtors or the Reorganized Debtor with respect to any Insurance Coverage for Claims other than Tort Claims or Unknown Tort Claims. All such rights are retained by the Settling Insurer, Participating Parties, the Debtors or the Reorganized Debtor.

3.82 "**Insurance Coverage**" means insurance that is available under any Insurance Policy, whether known or unknown to the Debtors or the Committee, or any party in interest that provides insurance for any portion of a Tort Claim or Unknown Tort Claim asserted against the Debtors; provided, however, that Insurance Coverage excludes any agreement or contract providing reinsurance to a Settling Insurer or Participating Party.

3.83 "**Insurance Policy**" means an insurance policy providing Insurance Coverage, including any policy providing Insurance Coverage that is identified in a settlement agreement with a Participating Party or a Settling Insurer.

3.84 "**Insurance Recoveries**" means the rights to any and all proceeds, including any interest or income earned thereon, and other relief, from (a) any Award, judgment, relief, or other determination entered or made as to any Insurance Claims; (b) any and all amounts payable by an Insurer under any settlement agreement with the Debtors, a Participating Party or a Settling Insurer with respect to Insurance Claims; and (c) any and all proceeds of any Insurance Policy paid or payable to the Debtors, a Participating Party or a Settling Insurer with respect to Insurance Claims. Insurance Recoveries do not include any recoveries of a Settling Insurer or Participating Party under any agreement or contract providing reinsurance to the Settling Insurer or Participating Party.

3.85 "**Insurance Settlement Agreements**" means, collectively or separately as the case may be, the agreements between the Debtors and any Settling Insurer that resolve Insurance Claims, including the CM Settlement Agreement, the Home Settlement Agreement, and the NMPCIGA Settlement Agreement and any similar agreement with a Settling Insurer designated as such after the Effective Date pursuant to Section 26.4 of the Plan.

3.86 "**Insured Entity**" means any Entity insured by any Settling Insurer.

3.87 "**Insurer**" means (a) any Entity that during any period of time either (i) provided Insurance Coverage to the Debtors and/or a Participating Party, its predecessors, successors, or assigns, or (ii) issued an Insurance Policy to the Debtors and/or a Participating Party, its predecessors, successors, or assigns; and (b) any Entity owing a duty to defend and/or indemnify the Debtors and/or a Participating Party under any Insurance Policy.

3.88 "**Interest**" means all liens, Claims, encumbrances, interests, and other rights of any nature, whether at law or in equity, including any rights of contribution, indemnity, defense, subrogation, or similar relief.

14

3.89 "**Liquidator**" means Roger A. Sevigny, Insurance Commissioner of the State of New Hampshire, solely in his capacity as court-appointed liquidator of Home Insurance in the Home Liquidation.

3.90 "**Medicare Beneficiary**" means a Tort Claimant or Unknown Tort Claimant who has received, applied for, or is eligible to receive Medicare or Medicaid benefits, and is asserting a Tort Claim or Unknown Tort Claim against the Debtors.

3.91 "**Medicare Claims**" means Claims for benefits paid, received or accrued to a Tort Claimant or Unknown Tort Claimant pursuant to the MMSEA or the MSPA.

3.92 "**MMSEA**" means the Medicare, Medicaid, and SCHIP Extension Act of 2007.

3.93 "**MSPA**" means the Medicare Secondary Payer Act.

3.94 "**NMPCIGA**" means the New Mexico Property and Casualty Insurance Guaranty Association.

3.95 "**NMPCIGA Settlement Agreement**" means that certain settlement agreement between the Debtors and NMPCIGA attached hereto as **Exhibit H** and incorporated herein as part of the Plan.

3.96 "**Non-Settling Insurer**" means any Insurer that is not a Participating Party or Settling Insurer, including the Arizona Fund.

3.97 "**Other Tort and Employee Claims**" means any and all Claims, demands, suits, causes of action, proceedings or any other rights or asserted right to payment heretofore, now or hereafter asserted against the Debtors, whether or not reduced to judgment, for property damage, liability or workers compensation for which either or both of the Debtors is or may be liable (directly or indirectly), whether arising from tort, contract or workers compensation for which there is Insurance Coverage, including but not limited to, any Claim for which RCCDG has a self-insured retention, but excluding Tort Claims, Unknown Tort Claims and any Claims of employees entitled to priority pursuant to Bankruptcy Code § 507.

3.98 "**Parish Settlement Agreement**" means that certain settlement agreement among the Debtors and the Parishes and affiliated entities attached hereto as **Exhibit I** and incorporated herein as part of the Plan.

3.99 "**Parishes**" means any one of the parishes, churches, and missions within the territory of the Diocese as set forth on **Exhibit J** hereto and their Representatives.

3.100 "**Participating Party**" means (i) those Entities listed on **Exhibit K** to the Plan, that are providing or will provide consideration or a portion of the funding for the Plan in exchange for (a) the release of any Claim by the Debtors against such Participating Party, (b) the benefit of the Channeling Injunction, and (c) any other benefits in favor of Participating Parties under the Plan, and (ii) the Representatives of such Entities. Pursuant

15

and subject to Section 26.3 of the Plan, and after notice and a hearing, upon the sole discretion of the Trustee pursuant to its powers under the Trust Agreement, an Entity may become a Participating Party after the Effective Date if the Bankruptcy Court approves an agreement between the Entity and the Debtors, Reorganized Debtor, or the Trustee pursuant to its retained jurisdiction. Upon the Bankruptcy Court's entry of a Final Order approving such an agreement, Exhibit K, the Plan, and the Confirmation Order will be deemed amended to include such Entity.

3.101 "**Participating Party Agreements**" means, collectively, the Franciscan Settlement Agreements, the SWIF Sale Agreement, the CPF Settlement Agreement, the St. Bonaventure Settlement Agreement, the Parish Settlement Agreement, and the Phoenix Diocese Settlement Agreement and any other agreements entered into between the Debtors, the Reorganized Debtor or the Trustee and such Entity after the Confirmation Hearing that is approved by the Bankruptcy Court after notice and hearing pursuant to which such Entity becomes a Participating Party.

3.102 "**Penalty Claims**" means any Claims for any fine, penalty, forfeiture, multiple damages, punitive damages, or exemplary damages, including, but not limited to, any such Claims not meant to compensate the claimant for actual pecuniary loss.

3.103 "**Person**" has the meaning set forth in Bankruptcy Code § 101(41).

3.104 "**Petition Date**" means November 12, 2013, which is the filing date of the voluntary Chapter 11 petitions commencing the Reorganization Cases.

3.105 "**Phoenix Diocese**" means the Roman Catholic Diocese of Phoenix in all its capacities as set forth in more detail in the Phoenix Diocese Settlement Agreement.

3.106 "**Phoenix Diocese Settlement Agreement**" means that certain agreement between the Debtors and the Phoenix Diocese attached hereto as **Exhibit L** and incorporated herein as part of the Plan.

3.107 "**Pinnacle Bank**" means The Bank of Colorado d/b/a Pinnacle Bank.

3.108 "**Pinnacle Bank Loan**" means the loan from Pinnacle Bank to RCCDG in the original principal amount of $200,000 dated June 24, 2011.

3.109 "**Pinnacle Bank Loan Documents**" means the documents evidencing the Pinnacle Bank Loan.

3.110 "**Plan**" means the "Plan of Reorganization" dated March 21, 2016, and every restatement, amendment, or modification thereof, if any, filed by the Debtors.

3.111 "**Plan Documents**" means all agreements, documents and exhibits, as the same may be amended, modified, supplemented, or restated from time to time, that are incorporated into the Plan and/or are necessary or appropriate to implement the Plan and the Trust, including the Trust Documents, Insurance Settlement Agreements and the Participating Party Agreements, provided that the Committee shall have approved each of

16

said agreements, documents and exhibits as to form and content, such approval not to be unreasonably withheld.

3.112 "**Plan Implementation Account**" means the account to be established by the Debtors on or after the Confirmation Date at a financial institution acceptable to the Committee, the Settling Insurers and the Participating Parties into which all funds necessary to fund the Plan will be deposited, including all amounts to be paid by the Settling Insurers and the Participating Parties pursuant to the respective Insurance Settlement Agreements and Participating Party Agreements. The Reorganized Debtor will fund the Trust from the proceeds of the Plan Implementation Account into such account or accounts established by the Trustee pursuant to the Trust Agreement and pursuant to written instructions from the Trustee.

3.113 "**Post-Effective Date Secured Tax Claims**" means every whole or prorated portion of a Secured Tax Claim which arises on or after the Effective Date, and which will be paid in the ordinary course of business of the Reorganized Debtor.

3.114 "**Prepetition Date Secured Tax Claims**" means every whole or prorated portion of a Secured Tax Claim which arises before and up to the Petition Date, and which will be classified and paid under the Plan, as the Plan provides for Class 2 Claims.

3.115 "**Priority Employee Unsecured Claim**" means every Unsecured Claim of an employee of RCCDG for vacation or sick leave pay, which is otherwise entitled to priority pursuant to Bankruptcy Code § 507(a)(4)(A).

3.116 "**Priority Tax Claim**" means every Unsecured Claim or portion thereof, which is entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

3.117 "**Priority Unsecured Claim**" means every Unsecured Claim or portion thereof, which is not an Administrative Claim, a Priority Tax Claim or a Priority Employee Unsecured Claim and which is entitled to priority under any applicable provision of Bankruptcy Code § 507.

3.118 "**Professional Charges**" means the Allowed interim and final professional fees and expenses charged by the Debtors' Professionals, the Committee's Professionals, and the Unknown Claims Representative.

3.119 "**Professional Charges Cap**" means a cap of $375,000 for all Professional Charges incurred by Committee's Professionals and Debtors' Professionals from the period from December 1, 2015 through the Effective Date.

3.120 "**Professional Charges Reduction**" means a reduction of $416,599.92 to be applied to Professional Charges incurred by Committee's Professionals and Debtors' Professionals from the period of the Petition Date through November 30, 2015, which reduction shall be inclusive of any other voluntary or involuntary reduction or disallowance of fees of such professionals through the Effective Date.

17

3.121 "**Proof of Claim**" means the form used by a creditor on which the specifics of a Claim are set forth as required by the Bankruptcy Code, the Bankruptcy Rules and the Bar Date Order, and which is filed in accordance with the procedures contained in the Bar Date Order.

3.122 "**Property Tax Administrative Claim**" means every Claim of any state or local governmental unit which is an Administrative Claim for unpaid real property taxes, unpaid personal property taxes, or unpaid sales taxes or leasing taxes, and every prorated portion thereof arising on and after the Petition Date until the Effective Date. Allowed Property Tax Administrative Claims will be classified and paid as Administrative Claims.

3.123 "**Property Tax Claims**" means collectively: (a) every Property Tax Administrative Claim; (b) every Prepetition Date Secured Tax Claim; and (c) every Post-Effective Date Secured Tax Claim.

3.124 "**Protected Parties**" means: (a) the Exculpated Parties; (b) the Participating Parties; (c) the Participating Parties' Representatives, provincials, priests, brothers, friars, clerics, members, affiliates, subsidiaries, parents, indirect parents, principals, shareholders, managers, claims managers, officers, directors, employees, attorneys, or agents acting in such capacity as well as the predecessors, successors, assignors and assigns of each of the foregoing (except to the extent of such predecessor's or successor's independent liability for an act or acts of Abuse other than a Tort Claim); (d) the Settling Insurers and (e) the Settling Insurers' present or former Representatives, members, parents, indirect parents, principals, shareholders, managers, claims managers, officers, directors, employees, attorneys, or agents acting in such capacity as well as the predecessors, successors, assignors and assigns of each of the foregoing to the extent their liability arises out of liabilities under Insurance Policies issued by a Settling Insurer. Protected Parties does not include: (i) an individual having personally committed one or more of the acts set forth in subparts (a)-(c) of Plan Section 3.2 giving rise to a Tort Claim; (ii) the Sisters; (iii) Corpus Christi; (iv) St. Michael School; or (v) a Co-Defendant.

3.125 "**Qualified Counsel**" means those attorneys representing Tort Claimants who have entered into written retainer or fee agreements with such Tort Claimant(s) on or before the Effective Date; provided that such attorney agrees that the attorney's receipt of Qualified Counsel Fees is credited against the fees owed by such Tort Claimant(s).

3.126 "**Qualified Counsel Fees**" means the amount to be subtracted from the balance in the Trust in an amount equal to the unpaid fees and reimbursable expenses (prepetition and postpetition through the Effective Date) payable to Qualified Counsel on account of Tort Claims under any written retainer or fee agreements with Tort Claimants who receive a distribution on account of such Tort Claims under the Plan. Before any distribution(s) to Tort Claimants from the Trust, the Trustee will subtract all Qualified Counsel Fees and shall pay such Qualified Counsel Fees to the appropriate Qualified Counsel at the time the Tort Claimant receives a distribution from the Trust.

QB\39723595.1

3.127 "**RCCDG**" means the Roman Catholic Church of the Diocese of Gallup, a New Mexico corporation sole, in all its civil capacities and a Debtor in the Reorganization Cases.

3.128 "**Related Insurance Claim**" means (i) any Claim against any Settling Insurer or Participating Party for defense, indemnity, reimbursement, contribution, subrogation, or similar relief that, directly or indirectly, relates to a Tort Claim; (ii) any Extra-Contractual Claim that, directly or indirectly, relates to any Tort Claim, including any Claim that, directly or indirectly, relates to any of the Settling Insurers' or Participating Parties' handling of any Tort Claim; (iii) any Direct Action Claim; and (iv) any Contribution Claim.

3.129 "**Released Insurance Policy**" means an Insurance Policy that is specifically (a) identified in a Participating Party Agreement, or (b) purchased and released pursuant to an applicable Insurance Settlement Agreement and the Plan.

3.130 "**Reorganization Cases**" means the jointly administered cases under Chapter 11 of the Bankruptcy Code, which was commenced by the filing of voluntary Chapter 11 petitions by the Arizona Entity and RCCDG on the Petition Date.

3.131 "**Reorganized Debtor**" means RCCDG, from and after the Effective Date and after the transfer of the Assets of the Arizona Entity to RCCDG. Unless otherwise expressly stated or the context otherwise requires, references to "the Debtors and the Reorganized Debtor" and references to "the Debtors or the Reorganized Debtor" throughout various provisions of the Plan, are an effort to anticipate whether an event may occur before or after the Effective Date. In this regard, and generally for purposes of the Plan, any written agreement made by the Debtors as part of the Plan before the Effective Date (unless provided otherwise), will survive the Confirmation Date and the Effective Date and will bind the Reorganized Debtor and every other party to such agreement (including, but not limited to, the provisions of the Plan as confirmed).

3.132 "**Representatives**" means the Liquidator, current and former provincials, priests, brothers, friars, clerics, members, parents, affiliates, subsidiaries, indirect parents, principals, shareholders, managers, claims managers, officers, directors, employees, attorneys, or agents acting in such capacity as well as the predecessors, successors, assignors and assigns of each of the foregoing of an Entity, but excluding (i) an individual having personally committed an act or acts giving rise to a Tort Claim against such Entity; (ii) the Sisters; (iii) Corpus Christi; (iv) St. Michael School; or (v) a Co-Defendant. Representatives does not include any predecessor or successor of the Debtors for Claims against such predecessor or successor for acts independent of Claims against the Debtors and if such Claims are not channeled or released pursuant to the Plan, a Participating Party Agreement or Insurance Settlement Agreement.

3.133 "**Retained Claims**" means Debtors' Claims, including, but not limited to, all Avoidance Actions and the Arizona Fund Claims, that are not otherwise settled pursuant to the Plan or agreements approved by the Bankruptcy Court on or prior to the Effective Date, all Claims against the Sisters, the Corpus Christi Claims, any rights or Claims of the Debtors

19

for indemnification, contribution, or fault allocation and other Claims of the Debtors against any Entity on account of any Claims which are or may be asserted against the Debtors. Retained Claims do not include any Claims transferred or assigned to the Trust and expressly exclude any Claims against any Entity released by the Debtors under the Plan.

3.134 "**Revested Assets**" means all Assets and/or property, real or personal, owned by the Debtors which are not transferred to the Trust.

3.135 "**Schedules**" means the Schedules of Assets and Liabilities and Statement of Financial Affairs of each of the Debtors filed pursuant to Bankruptcy Code § 521, the Official Bankruptcy Forms and the Bankruptcy Rules, including any supplements or amendments thereto through the Confirmation Date.

3.136 "**Secured Claim**" means every Claim or portion thereof, which is asserted by the creditor holding such Claim to be secured by a lien, security interest, or assignment, encumbering property in which the Debtors have an Interest and including any right to setoff asserted by a creditor that is treated as a Secured Claim under the Bankruptcy Code, but only to the extent of the validity, perfection, and enforceability of the claimed lien, security interest, or assignment, and the value of the Interest of the creditor holding such Claim against such property of the Debtors.

3.137 "**Secured Tax Claim**" means every Claim of any federal, state, or local governmental unit, which is asserted by such governmental unit holding such Claim, which is secured by property of the Estates by operation of applicable non-bankruptcy laws, including, but not limited to, every such Claim for unpaid real property taxes, unpaid personal property taxes, or unpaid sales taxes or leasing taxes, and further including, but not limited to, both the Prepetition Date Secured Tax Claims and the Post-Effective Date Secured Tax Claims, but only to the extent of the validity, perfection, and enforceability of the claimed lien, security interest, or assignment, and the value of the Interest of the governmental unit holding such Claim against the Debtors and only to the extent that such Secured Tax Claim does not relate to a Parish's real property. Any Claims for unpaid real property taxes, unpaid personal property taxes, or unpaid sales taxes or leasing taxes pertaining to a Parish or Parish's real property, will be paid by the Parish owning such real property or other property pertaining to such tax.

3.138 "**Settling Insurer Injunction**" means the injunction(s) provided in Section 28.6 of the Plan and any injunction provided in an agreement whereby an Insurer becomes a Settling Insurer after the Confirmation Date.

3.139 "**Settling Insurers**" means: (a) each of those Insurers listed on **Exhibit M** to the Plan; (b) those Insurers who become Settling Insurers after the date of the Plan pursuant to Section 26.4 of the Plan; and (c) their Representatives. For purposes of defining the scope of the releases, injunctions, exculpation provision, and other provisions and protections provided to Settling Insurers herein, the terms "Settling Insurer" and "Protected Parties" herein also include all past and present subsidiaries, parents, and affiliates, as well as all employees, officers, directors, shareholders, principals, parents, indirect parents, claims managers, agents, attorneys, and Representatives, as well as the predecessors,

QB\39723595.1

successors, assignors, and assigns of each of the foregoing, in their capacity as such to the extent that their liability arises out of, or is related to, any Insurance Policy providing Insurance Coverage that is identified in an agreement with a Participating Party or a Settling Insurer.

3.140 "**Sisters**" means the Sisters of the Blessed Sacrament, a Roman Catholic religious order, including any and all province, section, division, ministry, member, predecessor, successor, and affiliate thereof.

3.141 "**St. Bonaventure**" means Saint Bonaventure Indian Mission and School, Inc., a New Mexico non-profit corporation.

3.142 "**St. Bonaventure Settlement**" means the settlement between the Debtors and St. Bonaventure, as set forth in the St. Bonaventure Settlement Agreement.

3.143 "**St. Bonaventure Settlement Agreement**" means that certain settlement agreement between the Debtors and St. Bonaventure attached hereto as **Exhibit N** incorporated herein as part of the Plan.

3.144 "**St. Michael School**" means St. Michael Indian School, Incorporated.

3.145 "**SWIF**" means the Southwest Indian Foundation, Inc., a New Mexico non-profit corporation.

3.146 "**SWIF Sale Agreement**" means that certain agreement pertaining to, among other things, the sale of the CIC and attached hereto as **Exhibit O** and incorporated herein as part of the Plan.

3.147 "**Tort Claim**" means any and all Claims for damages, including Penalty Claims, for attorneys' fees and other expenses, fees or costs for any equitable remedy asserted against the Debtors, any Protected Parties, the Trustee, or the Trust, related to bodily injuries or personal injuries, including emotional distress, mental distress, mental anguish, shock or humiliation caused by or related to: (a) acts of Abuse committed by any cleric, employee, volunteer or other Entity associated with the Debtors, the Diocese, any Parish or any affiliated Entity within the territory of the Diocese; (b) the failure to properly hire, install and/or supervise any cleric, any volunteer, or any other employee of, or Entity associated with, the Debtors, the Diocese, a Parish or any affiliated Entity within the territory of the Diocese; (c) the processing, adjustment, defense, settlement, payment, negotiation or handling of any Claims, demands, suits, proceedings or causes of action based upon or relating in any way to the Claims made as a result of any Abuse or other Claim asserted by a Tort Claimant related to or within the territory of the Diocese; or (d) the failure to warn, disclose or provide information concerning the Abuse or other misconduct of clergy, other employees or volunteers or Entities associated with the Debtors, the Diocese, the Parishes or any affiliated entities within the territory of the Diocese. Subject to the limitations contained in the Plan and except for purposes of classification under the Plan, Tort Claims include Unknown Tort Claims when they are asserted by Unknown Tort Claimants.

3.148 "**Tort Claims Allocation Protocol**" means the allocation protocol with respect to Class 9 Tort Claims in the form attached hereto as Exhibit A.

3.149 "**Tort Claimant**" means any Person who holds or asserts a Tort Claim but excluding an Unknown Tort Claimant.

3.150 "**Trust**" means the trust to be established pursuant to the Plan and the Trust Agreement.

3.151 "**Trust Agreement**" means the agreement attached as **Exhibit P** to the Plan.

3.152 "**Trust Assets**" means all property funded to the Trust pursuant to the Plan, the Confirmation Order, the Trust Documents, and the Plan Documents.

3.153 "**Trust Documents**" means the Trust Agreement and other instruments and documents that are reasonably necessary or desirable in order to implement the provisions of the Plan that relate to the creation, administration and funding of the Trust. The Trust Documents will be subject to approval of the Debtors or the Reorganized Debtor which approval will not be unreasonably withheld.

3.154 "**Trust Subaccount**" means the subaccounts to be established by the Trustee in accordance with the terms of the Trust Agreement.

3.155 "**Trustee**" means Eric Schwarz of Omni Management Acquisition Corp., the trustee of the Trust, and any successor trustee appointed pursuant to the terms of the Plan and the Trust Agreement.

3.156 "**Unknown Claims Certificate**" means the certificate to be issued by CM as of the Effective Date in the maximum amount of $1,800,000, a copy of which is attached hereto as **Exhibit Q** and incorporated herein as part of the Plan, and which shall be used as the sole source of funding distributions to holders of Unknown Tort Claims who are entitled to an Award pursuant to the Unknown Tort Claims Allocation Protocol and the Unknown Claims Certificate pursuant to Article 16 and Article 20 of the Plan.

3.157 "**Unknown Claims Representative**" means Hon. (Ret.) Michael R. Hogan, the person appointed by the Bankruptcy Court to act as the Unknown Claims Representative pursuant to the *Order Approving Debtors' Motion for an Order Substituting Michael R. Hogan as Legal Representative to Represent the Interests of Unknown Tort Claimants, Including Minors, in the Reorganization Cases and Application to Employ Michael R. Hogan as Unknown Claims Representative; and Motion for Order Authorizing the Resignation of Michael P. Murphy* [Dkt. No. 526]. The Unknown Claims Representative represents the Interests of the Unknown Tort Claimants.

3.158 "**Unknown Tort Claim**" means any Tort Claim for which no Proof of Claim is filed or deemed filed on or before the Bar Date by a Tort Claimant (as opposed to the Proof of Claim filed by the Unknown Claims Representative) or for which a Proof of Claim is filed after the Bar Date if the Person asserting the Tort Claim:

(a)     Has a Tort Claim that was barred by the applicable statute of limitations as of the Bar Date but is no longer barred by the applicable statute of limitations for any reason, including for example the passage of legislation that revives such previously time-barred Tort Claims; or

(b)     Turns 18 on or after July 11, 2014 (the date which is thirty (30) days prior to the generally applicable Bar Date in the Reorganization Cases of August 11, 2014); or

(c)     Has a Tort Claim for which the applicable Arizona or New Mexico tort claim statute of limitations, for any reason, has not expired or has been tolled as of July 11, 2014, as determined under applicable Arizona or New Mexico federal law, but without regard to federal bankruptcy law; and

(d)     Submits a Proof of Claim in accordance with the procedures set forth in the Plan, the Confirmation Order and the Unknown Tort Claims Allocation Protocol.

3.159   "**Unknown Tort Claims Allocation Protocol**" means the allocation protocol with respect to the Unknown Tort Claims in the form attached hereto as Exhibit B.

3.160   "**Unknown Tort Claimant**" means the holder of an Unknown Tort Claim.

3.161   "**Unresolved**" means, with respect to a Claim, a Claim that has neither been Allowed or disallowed nor liquidated.

3.162   "**Unsecured Claim**" means every Claim, or portion thereof, which is not a Secured Claim, regardless of the priority of such Claim.

# ARTICLE 4

# PLAN OBJECTIVES

4.1     **Objectives.**  The Plan provides the means for settling and paying all Claims asserted against the Debtors.  The Plan also provides for Participating Parties and Settling Insurers to participate by contributing funds and property that will be used, in part, for the benefit of Tort Claimants.  The Plan provides for the creation of a Trust for the exclusive benefit of Tort Claimants and Unknown Tort Claimants.  The Trust Assets will consist of Cash from the Debtors, contributions by Participating Parties and Settling Insurers, and proceeds from the sale of certain real property of the Debtors.  Trust Assets will be used to fund the Trust's costs and expenses and payments to Tort Claimants.  The Unknown Claims Certificate to be issued by CM will provide the funds for payment of Unknown Tort Claims when and if any such Unknown Tort Claims receive Awards.  Distributions from the Trust to Tort Claimants and reserves will be determined by application of the Tort Claims Allocation Protocol.  Distributions from the Trust to the Unknown Tort Claimants will be determined pursuant to the Unknown Claims Certificate and the Unknown Tort Claims Allocation Protocol.  General Unsecured Creditors will be paid the Allowed amount of their Claims over a period of five (5) years.  The Plan also provides for restructuring of the Secured Claims against the Debtors.  The Debtors will receive the benefit of a Bankruptcy

23

Code § 1141(d) discharge as set forth in the Plan and the Confirmation Order. In consideration of their respective contributions towards funding the Plan and the Trust, the Protected Parties will receive the benefit of injunctions and releases provided under the Plan.

## ARTICLE 5

## UNCLASSIFIED CLAIMS

5.1     **Administrative Claims (other than Professional Charges).**  The holder of an Allowed Administrative Claim will receive, in full satisfaction of such Claim:  (a) a single Cash payment in the Allowed amount of the Claim on the Effective Date (or the applicable Claim Payment Date); or (b) as otherwise agreed in writing by the holder of the Allowed Claim or ordered by the Bankruptcy Court.  Every Allowed Administrative Claim for an expense of operation of the Debtors incurred in the ordinary course of such operations will be paid fully and in Cash in the ordinary course of business (including any payment terms applicable to any such expense).

5.2     **Professional Charges.**   Chapter 11 Professionals shall file final fee applications on or before forty-five (45) days after the Claim on the Effective Date for approval of Professional Charges.  The Reorganized Debtor shall pay all Allowed Professional Charges subject to the Professional Charges Reduction and the Professional Charges Cap within ten (10) Business Days of entry of a Final Order approving such Professional Charges unless otherwise agreed between the Chapter 11 Professional and the Reorganized Debtor.

5.3     **Priority Unsecured Claims.**    The holder of every Allowed Priority Unsecured Claim will be paid, in full satisfaction of such Claim:  (a) a single Cash payment in the Allowed amount of the Claim on the Effective Date (or the applicable Claim Payment Date); (b) as otherwise agreed in writing by the holder of the Allowed Claim; or (c) as ordered by the Bankruptcy Court.

5.4     **Priority Tax Claims.**  The holder of every Allowed Priority Tax Claim, will be paid, in full satisfaction of such Claim pursuant to the provisions of Bankruptcy Code § 1129(a)(9)(C): (a) in deferred Cash payments over a period of five (5) years from the Petition Date, to be paid in equal quarterly installments of principal and interest; (b) the first payment to be made on the first Business Day after the day which is ninety (90) days after the later of the Effective Date or the Claim Payment Date; and (c) each payment thereafter to be paid on the first Business Day of each succeeding quarter until paid in full; provided, however, that the entire unpaid amount of the Allowed Priority Tax Claim, together with any interest accrued thereon, will be paid in full on the date which is five (5) years after the Petition Date; or (d) as otherwise agreed in writing by the holder of the Allowed Claim or ordered by the Bankruptcy Court.

5.5     **Elimination of Claim.**  To the extent there are no amounts owing on the Effective Date for any Priority Unsecured Claims and/or any Priority Tax Claims, such treatment as set forth above will be deemed automatically eliminated from the Plan.

# ARTICLE 6

## CLASSIFICATION OF CLAIMS

6.1 **Classification.** All Claims are classified under the Plan as hereafter stated in this Article 6; provided, however, that a Claim will be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class. As of the Confirmation Hearing, any Class of Claims which does not contain any creditor's Claims will be deemed deleted automatically from the Plan, and any Class of Claims which does not contain an Allowed Claim (or a Claim temporarily or provisionally Allowed by the Bankruptcy Court for voting purposes) will be deemed automatically deleted from the Plan with respect to voting on confirmation of the Plan.

6.2 **Classes.** For purposes of the Plan, Claims against the Debtors are hereby classified in the following Classes in accordance with Bankruptcy Code § 1122(a):

Class 1 – Priority Employee Unsecured Claims (Unimpaired; Not Entitled to Vote; Deemed to Accept)

Class 2 – Prepetition Date Secured Tax Claims (Impaired; Entitled to Vote)

Class 3 –Secured Claims of Ally Bank (Impaired; Entitled to Vote)

Class 4 –Secured Claim of Pinnacle Bank (Impaired; Entitled to Vote)

Class 5 – General Unsecured Convenience Claims (Impaired; Entitled to Vote)

Class 6 – Phoenix Diocese Unsecured Claims (Impaired; Entitled to Vote)

Class 7 – General Unsecured Claims (Impaired; Entitled to Vote)

Class 8 – Other Tort and Employee Claims (Impaired; Entitled to Vote)

Class 9 – Tort Claims (Impaired; Entitled to Vote)

Class 10 – Unknown Tort Claims (Impaired; Entitled to Vote)

Class 11 – St. Bonaventure Claims (Impaired; Entitled to Vote)

Class 12 – Insurance and Benefit Claims (Impaired; Entitled to Vote)

Class 13 – Penalty Claims (Impaired; Not Entitled to Vote; Deemed to Reject)

QB\39723595.1

# ARTICLE 7

## TREATMENT OF CLASS 1 CLAIMS

### (PRIORITY EMPLOYEE UNSECURED CLAIMS)

7.1    **Distribution.**  No holder of an Allowed Priority Employee Unsecured Claim will receive any Cash on account of such Claim.  All Allowed Priority Employee Unsecured Claims will be satisfied, in full, without interest, in accordance with the policies and procedures regarding vacation and sick leave pay in effect at RCCDG at the time such Priority Employee Unsecured Claim becomes matured and liquidated; provided, however, that RCCDG reserves the right to review the policies and procedures regarding vacation and sick leave pay and to propose modifications to those policies and procedures to become a part of the Plan prior to the Confirmation Date or after the Effective Date.  To the extent RCCDG proposes any changes to such policies and procedures that become part of the Plan and would be retroactive, RCCDG will modify the Plan to include such changes and give notice to the holders of any Priority Employee Unsecured Claims at least ten (10) days before the Confirmation Hearing.  In that event, the holders of the Priority Employee Unsecured Claims will be impaired and the Plan will be modified to so state.

# ARTICLE 8

## TREATMENT OF CLASS 2 CLAIMS

### (PREPETITION DATE SECURED TAX CLAIMS)

8.1    **Distribution.**  All Class 2 Claims, as and when they are Allowed Claims, will be treated as fully Secured Claims and will be paid fully and in Cash as follows:

(a)    In order to compute the Prepetition Date Secured Tax Claims, which are the Class 2 Claims, a property tax claims pro-ration will be conducted as of the Effective Date, if necessary.  The Prepetition Date Secured Tax Claims, which are Allowed Claims, will bear interest from and after the Effective Date until they are paid in full, at the rate of two percent (2%) per annum or such other rate as ordered by the Bankruptcy Court.

(b)    The Allowed Class 2 Claims, including interest thereon from and after the Effective Date, will be paid in three (3) equal installments.  The first (1st) installment will be paid on the first Business Day which is ninety (90) days after the Effective Date or the Claim Payment Date.  The second (2nd) installment will be paid on the first Business Day after the first (1st) anniversary of the Effective Date or the applicable Claim Payment Date.  The third (3rd) and last installment will be paid on the first Business Day after the second (2nd) anniversary of the Effective Date or the applicable Claim Payment Date.

(c)    No penalties will be paid on any of the Allowed Class 2 Claims.

8.2    **Disputed Claims.**  Notwithstanding the pendency of any appeal to any state or local taxing authorities of a determination of property taxes or assessments on the Petition Date, nothing contained herein will prohibit the Debtors from exercising their rights

QB\39723595.1

pursuant to Bankruptcy Code § 505 and having the Class 2 Claim(s) determined by the Bankruptcy Court to the extent that any Class 2 Claims are Disputed Claims.

8.3 **Retention of Liens.** Each creditor holding a Class 2 Allowed Claim will retain its lien(s) on its collateral to the extent of its Class 2 Allowed Secured Claim.

8.4 **Other Claims.** The Reorganized Debtor will pay the Post-Effective Date Secured Tax Claims in the ordinary course of its business operations after the Effective Date. All Property Tax Administrative Claims will be paid as Administrative Claims pursuant to Section 5.1 of the Plan.

# ARTICLE 9

## TREATMENT OF CLASS 3 CLAIMS

## (SECURED CLAIMS OF ALLY BANK)

## (SUB CLASSES 3A, 3B, 3C AND 3D)

9.1 **Distribution.** The Secured Claims of Ally Bank will be treated as Allowed, fully Secured Claims pursuant to the values and credits determined in accordance with Section 9.3 below. Each Secured Claim of Ally Bank secured by a vehicle identified below will be classified as a subclass in Class 3 as subclass 3A, 3B, 3C, and 3D, respectively, and will be paid fully and in Cash as follows:

(a) The Allowed Class 3 Secured Claims in each subclass will bear interest from and after the Effective Date until they are paid in full at the rate of four percent (4%) per annum or such other rate as ordered by the Bankruptcy Court.

(b) Each Class 3 Secured Claim in the subclasses, including interest thereon from and after the Effective Date, will be paid in forty (40) equal monthly installments, commencing on the first Business Day which is thirty (30) days after the Effective Date or the Claim Payment Date.

(c) No penalties will be paid on any of the Allowed Class 3 Secured Claims.

(d) Except to the extent necessary to modify the current documents evidencing the Class 3 Secured Claims to conform to the treatment of the Class 3 Allowed Secured Claims under the Plan, the prepetition loan documents for each subclass of Class 3 will remain in full force and effect.

9.2 **Retention of Liens.** The holder of the Class 3 Secured Claims will retain its lien(s) on its collateral to the extent of its Class 3 Secured Claims in each subclass.

9.3 **Specific Provisions Relating to Value of Collateral:**

(a) Subclass 3A — 2012 Chevrolet Malibu; VIN: 1G1ZC5E09CF299583 — value deemed to be $12,551.61 subject to reduction for adequate protection payments made during the Reorganization Cases prior to the Effective Date for purposes of the subclass 3A Allowed Secured Claim.

27

(b)    Subclass 3B — 2011 Jeep Wrangler; VIN: 1J4BA6H11BL548106 — value deemed to be $21,198.34 subject to reduction for adequate protection payments made during the Reorganization Cases prior to the Effective Date for purposes of the subclass 3B Allowed Secured Claim.

(c)    Subclass 3C — 2012 Chevrolet Malibu; VIN: 1G1ZC5EU0CF125601 — value deemed to be $12,551.61 subject to reduction for adequate protection payments made during the Reorganization Cases prior to the Effective Date for purposes of the subclass 3C Allowed Secured Claim.

(d)    Subclass 3D — 2012 Chevrolet Malibu; VIN: 1G1ZC5EUXCF255711 — value deemed to be $12,020.31 subject to reduction for adequate protection payments made during the Reorganization Cases prior to the Effective Date for purposes of the subclass 3D Allowed Secured Claim.

# ARTICLE 10

## TREATMENT OF CLASS 4 CLAIMS

### (SECURED CLAIM OF PINNACLE BANK)

10.1    **Distribution.**  The Class 4 Claim is a Disputed Claim.  When the Class 4 Claim becomes an Allowed Secured Claim, it will be paid the amount of its Allowed Secured Claim as follows:

(a)    The Allowed amount of the Class 4 Secured Claim will be determined in accordance with Bankruptcy Code § 506.  The Allowed Class 4 Secured Claim will be paid in monthly installments of principal amortized over twenty-five (25) years from the Effective Date plus interest at the rate of three percent (3%) from the date the Class 4 Claim becomes an Allowed Secured Claim and thereafter until the tenth (10th) anniversary of the Claim Payment Date applicable to the Allowed Class 4 Secured Claim at which time all principal and accrued interest thereon will be fully due and payable.  The first payment on the Class 4 Claim when and if it becomes an Allowed Secured Claim will be due on or before the first Business Day that is ninety (90) days after the Claim Payment Date and continuing on the first (1st) day of each month thereafter until the tenth (10th) anniversary of the Claim Payment Date.

(b)    Alternatively, if Pinnacle Bank agrees to reduce its Claim to the amount of $116,000.00, the Class 4 Secured Claim will be an Allowed Secured Claim in such amount.  In that event, thirty (30) days after the Effective Date, the Reorganized Debtor will commence interest only payments at the rate of three percent (3%) per annum which will continue to be paid on the first (1st) day of each month thereafter until the collateral securing the Allowed Class 4 Claim is sold at which time the full amount of the Allowed Class 4 Secured Claim (as voluntarily reduced by the holder of the Class 4 Claim) shall be fully due and payable.

(c)     The Pinnacle Bank Loan Documents will be modified to the extent necessary to conform to the Plan.  Notwithstanding anything in the prepetition loan documents to the contrary, if Pinnacle Bank does not agree to reduce its Claim as provided in subparagraph 10.1(b) above, the Pinnacle Bank Loan Documents will be further modified to allow the Reorganized Debtor to sell the Chancery subject to the Pinnacle Bank Loan and/or to grant additional liens so long as such liens are junior and subordinate to the Pinnacle Bank Loan.  If the Chancery is sold subject to the Pinnacle Bank Loan, the repayment terms will be as provided in the Plan.

10.2     **Retention of Liens.**  The holder of the Class 4 Claim will retain its lien(s) on the Chancery to the extent of its Class 4 Claim until Pinnacle Bank is paid as provided in the Plan.

## ARTICLE 11

### TREATMENT OF CLASS 5 CLAIMS

### (GENERAL UNSECURED CONVENIENCE CLAIMS)

11.1     **Distribution.**  Every holder of an Allowed Class 5 Claim will be paid the applicable General Unsecured Convenience Claim Payment without interest in two (2) equal installments.  The first (1st) installment will be paid on the first Business Day which is six (6) days after the Effective Date or the Claim Payment Date.  The second (2nd) installment will be paid on the first Business Day after the first (1st) anniversary of the Effective Date or the applicable Claim Payment Date.

11.2     **Interest.**  There will be no interest or penalties payable on the General Unsecured Convenience Claims.

## ARTICLE 12

### TREATMENT OF CLASS 6 CLAIMS

### (PHOENIX DIOCESE UNSECURED CLAIMS)

12.1     **Distribution.**  The holder of the Class 6 Claim(s) shall pay the Class 6 Claim in full as set forth in the Phoenix Diocese Settlement Agreement, calculated upon a fully amortizing basis with a 30 year term and with interest at 1.0%.   The first payment is due on the first Business Day that is two (2) years after the Effective Date and each subsequent payment shall be made every three (3) months after the previous payment until the Class 6 Claim is satisfied.

## ARTICLE 13

### TREATMENT OF CLASS 7 CLAIMS

### (GENERAL UNSECURED CLAIMS)

13.1     **Distribution.**  Each holder of a Class 7 General Unsecured Claim, as and when such General Unsecured Claim is or becomes an Allowed Claim, will be paid fully and in Cash in five (5) annual installments with the first (1st) installment to be paid on the

29

first Business Day that is nine (9) months after the Effective Date (or the Claim Payment Date), and each installment thereafter on the first Business Day that is twelve (12) months after the previous payment pursuant to the Plan.

13.2 **Interest and Penalties.** There will be no interest or penalties payable on any Class 7 General Unsecured Claim.

**ARTICLE 14**

**TREATMENT OF CLASS 8 CLAIMS**

**(OTHER TORT AND EMPLOYEE CLAIMS)**

14.1 **Distribution.** Each holder of a Class 8 Other Tort and Employee Claim, as and when such Claim becomes an Allowed Claim, will be paid solely from any Insurance Policies, other than the Released Insurance Policies, applicable to such Other Tort and Employee Claim. To the extent that such Claims may not be satisfied in full pursuant to the applicable Insurance Policies or if such Insurance Policies have been sold and released pursuant to the applicable Insurance Policy, Participating Party Agreement or Insurance Settlement Agreement, then such Other Tort and Employee Claims, to the extent not so satisfied, will be a Disallowed Claim.

**ARTICLE 15**

**TREATMENT OF CLASS 9 CLAIMS**

**(TORT CLAIMS)**

15.1 On the Effective Date, the Trust shall assume all liability for and the Trust will pay all Class 9 Claims pursuant to the provisions of the Plan, Plan Documents, Confirmation Order, Tort Claims Allocation Protocol, and Trust Documents.

15.2 Tort Claimants shall have their Class 9 Claims treated pursuant to the Tort Claims Allocation Protocol, including review of such Tort Claims by the Abuse Claims Reviewer in accordance with the Tort Claims Allocation Protocol. **The right of any Tort Claimant to a trial by jury or otherwise against the Reorganized Debtor and any of the Protected Parties is waived and released upon the occurrence of the Effective Date, and the Tort Claim of a Tort Claimant will be solely determined by the Abuse Claims Reviewer in accordance with the Tort Claims Allocation Protocol, and shall be a Channeled Claim to be paid solely from the Trust and/or Trust Assets.**

15.3 Nothing in the Plan is intended to affect, diminish or impair any Tort Claimant's rights against any Co-Defendant but solely with respect to any direct liability of such Co-Defendant. Under no circumstances will the reservation of such Tort Claimant's rights against any Co-Defendant impair the releases, discharge or injunctions with respect to any Protected Party and the Reorganized Debtor against whom all such rights and/or Claims shall be and are hereby released and enjoined as provided in Section 28 of the Plan.

15.4 Debtors, the Reorganized Debtor and their counsel shall reasonably cooperate with the Abuse Claims Reviewer and the Trustee as requested by the Abuse

30

Claims Reviewer or the Trustee but only in connection with any reasonable inquiries by either in the administration of the Tort Claims Allocation Protocol.

15.5    No Tort Claimant may challenge the merit, validity, or amount of any Class 9 Claim.  If any objection to a Class 9 Claim is pending as of the Effective Date, such objection is deemed withdrawn with prejudice on or after the Effective Date.  The Trustee shall have the sole and exclusive right to object to a Class 9 Claim.

15.6    If a Tort Claim is denied payment pursuant to the Tort Claims Allocation Protocol, the holder of such Tort Claim will nevertheless have no rights against the Protected Parties, the Trust, the Trustee, or the Reorganized Debtor arising out of, relating to, or in connection with such Tort Claim and such Tort Claim shall be a Disallowed Claim and shall be discharged and subject to the Channeling Injunctions as provided in the Plan.

15.7    No Tort Claimant shall receive any payment on any Award unless and until such Tort Claimant has executed a written release of any and all Claims against all of the Protected Parties and the certifications set forth in the Class 9 Ballot.  The release and certifications included in the Class 9 Ballot for voting on the Plan are sufficient for this purpose.  A Tort Claimant who does not timely submit a Ballot must personally execute the release and certifications required by this Section 15.7.  The Trust shall be obligated to provide copies of the Tort Claimants' releases and certifications to any of the Protected Parties upon request.

15.8    Before any payment(s) to Tort Claimants, the Trustee will subtract all Qualified Counsel Fees from the balance of the Trust Assets in an amount equal to:  (a) the total fees payable to Qualified Counsel by the beneficiaries of the Trust based on the reserves or distributions calculated under the Tort Claims Allocation Protocol; and (b) an amount equal to the unpaid reimbursable expenses (prepetition and postpetition through the Effective Date) payable to Qualified Counsel by the beneficiaries of the Trust.  The Trust shall pay such fees to Qualified Counsel as and when the Tort Claimant receives a distribution from the Trust.

15.9    Subject to the treatment of Qualified Counsel Fees pursuant to the Plan, the fees and expenses of attorneys representing Tort Claimants who receive payments from the Trust will be borne by such Tort Claimants based on applicable state law and individual arrangements made between such Tort Claimants and their respective attorneys.  The Reorganized Debtor and the Protected Parties will not have any liability for any fees and expenses of attorneys representing any of the Tort Claimants or for any Qualified Counsel Fees.  The Trust and the Trustee will not have any liability for any fees and expenses of attorneys representing any of the Tort Claimants, except to the extent that the Trust or the Trustee is required to make payments pursuant to the provisions herein relating to Qualified Counsel Fees.

15.10   No payment or Award will be made to any Tort Claimants asserting Penalty Claims relating to Tort Claims and such Penalty Claims will be Disallowed Claims.

QB\39723595.1

15.11  A Tort Claimant may withdraw a Tort Claim at any time, without further order of the Court, on written notice to the Trustee.  If withdrawn, (a) the Tort Claim will be withdrawn with prejudice and may not be reasserted against the Reorganized Debtor, the Trust, the Trustee, or any Protected Party, including as an Unknown Tort Claim, (b) as a condition to withdrawal of the Tort Claim, any funds paid to the Tort Claimant by the Trust (inclusive of attorneys' fees and costs) shall be returned to the Trust, and (c) any reserve maintained by the Trust on account of such Tort Claim shall revert to the non-reserved assets of the Trust for distribution in accordance with the Plan and the Trust.  Withdrawal of any Tort Claim by a Tort Claimant shall be without prejudice to such Person's rights against any Co-Defendant but subject to the limitations contained in the Plan and the Confirmation Order.

## ARTICLE 16

## TREATMENT OF CLASS 10 CLAIMS

## (UNKNOWN TORT CLAIMS)

16.1  On the Effective Date, the Trust shall assume all liability for and the Trust will pay all Unknown Tort Claims pursuant to the provisions of the Plan, Plan Documents, Confirmation Order, the Unknown Tort Claims Allocation Protocols, Unknown Claims Certificate, and Trust Documents.

16.2  Unknown Tort Claimants shall have their Class 10 Claims treated pursuant to the Unknown Tort Claims Allocation Protocol, including review of such Claims by the Abuse Claims Reviewer in accordance with the Unknown Tort Claims Allocation Protocol. **The right of any Unknown Tort Claimant to a trial by jury or otherwise against the Reorganized Debtor, and any of the Protected Parties is waived and released upon occurrence of the Effective Date, and the Tort Claim of an Unknown Tort Claimant will be solely determined by the Abuse Claims Reviewer and in accordance with the Unknown Tort Claims Allocation Protocol.**

16.3  Nothing in the Plan is intended to affect, diminish or impair any Unknown Tort Claimant's rights against any Co-Defendant but solely with respect to any direct liability of such Co-Defendant.  Under no circumstances will the reservation of such Unknown Tort Claimant's rights against any Co-Defendant impair the releases, discharge or injunctions with respect to any Protected Party and the Reorganized Debtor against whom all such rights and/or Claims shall be and are hereby released and enjoined as provided in Section 28 of the Plan.

16.4  Debtors, the Reorganized Debtor and their counsel shall cooperate with reasonable requests from the Abuse Claims Reviewer and the Trustee for information reasonably requested by the Abuse Claims Reviewer or the Trustee but only with respect to reasonable inquiries regarding the determination of the Unknown Tort Claim and in the administration of the Unknown Tort Claim Allocation Protocol.

16.5  The Trustee shall have the sole and exclusive right to object to an Unknown Tort Claim.

16.6    The Trustee shall pay any awards to Unknown Tort Claimants by drawing on the proceeds of the Unknown Claims Certificate subject to the terms and conditions of the Unknown Claims Certificate. In the event all Allowed Unknown Tort Claims to be paid by the Trust pursuant to the Plan and the Unknown Claims Certificate are less than the face amount of the Unknown Claims Certificate, in the aggregate, no additional amounts will be paid to the Trust at the expiration of the Certificate. If all Allowed Unknown Tort Clams to be paid by the Trust pursuant to the Plan and the Unknown Claims Certificate are greater than the face amount of the Unknown Claims Certificate, no further payment or compensation will be paid to the Trust or to the Unknown Tort Claimants by the Debtors, the Reorganized Debtor or any other Protected Parties, including CM.

16.7    No Unknown Tort Claimant shall receive any payment on account of any Award unless and until such Unknown Tort Claimant has executed a written release of any and all Claims against all of the Protected Parties and the certifications required pursuant to the Class 9 Ballot. The release and certifications included in the Class 9 Ballot for voting on the Plan may be used for this purpose. The Trust shall be obligated to provide copies of the Unknown Tort Claimants' releases and certifications to any of the Protected Parties upon request.

16.8    If an Unknown Tort Claim is denied payment pursuant to the Unknown Tort Claims Allocation Protocol, the holder of such Unknown Tort Claim will nevertheless have no rights against the Reorganized Debtor, the Trust, Trustee, or Protected Parties arising out of, relating to, or in connection with such Unknown Tort Claim and such Unknown Tort Claim shall be a Disallowed Claim and shall be discharged and subject to the Channeling Injunctions as provided in the Plan.

16.9    The fees and expenses of attorneys representing Unknown Tort Claimants who receive payment from the Trust will be borne by such Unknown Tort Claimants based on applicable state law and individual arrangements made between such Unknown Tort Claimants and their respective attorneys. None of the Reorganized Debtor, the Trust, the Trustee, or the Protected Parties will have any liability for any fees and expenses of attorneys representing any Unknown Tort Claimants and any Claims for such fees and expenses will be disallowed.

16.10   No payment or Award will be made to any Unknown Tort Claimants asserting Penalty Claims relating to Tort Claims and such Penalty Claims will be Disallowed Claims.

16.11   An Unknown Tort Claimant may withdraw an Unknown Tort Claim at any time, without further order of the Court, on written notice to the Trustee. If withdrawn, (a) the Unknown Tort Claim will be withdrawn with prejudice and may not be reasserted against the Reorganized Debtor, the Trustee, the Trust, or any Protected Party; (b) as a condition to withdrawal of the Unknown Tort Claim, any funds paid to the Unknown Tort Claimant by the Trust (inclusive of attorneys' fees and costs) shall be returned to the Trust; and (c) any reserve maintained by the Trust on account of such Unknown Tort Claim shall revert to the non-reserved assets of the Trust for distribution in accordance with the Plan and the Trust. Withdrawal of any Unknown Tort Claim by an Unknown Tort Claimant shall be

33

without prejudice to such Entity's rights against any Co-Defendant but subject to the limitations contained in the Plan and the Confirmation Order.

## ARTICLE 17

## TREATMENT OF CLASS 11 CLAIMS

### (ST. BONAVENTURE CLAIM)

17.1 **Distribution and Sale.** In full satisfaction of all Class 11 Claims, the holder of the Class 11 Claim will be treated in accordance with the St. Bonaventure Settlement Agreement which will, among other things, provide for the Debtors to sell the Disputed Property to St. Bonaventure pursuant to a sale ordered by the Bankruptcy Court free and clear of all liens, Claims, Interests and encumbrances and further subject to the St. Bonaventure Settlement Agreement. The conveyance will be pursuant to a quit claim deed from the Debtors (or the Reorganized Debtor) to St. Bonaventure and the property will be sold "as is, where is" with no representations and warranties.

## ARTICLE 18

## TREATMENT OF CLASS 12 CLAIMS

### (INSURANCE AND BENEFIT CLAIMS)

18.1 **Distribution.** The Class 12 Claims will be treated and satisfied by the Reorganized Debtor in accordance with the past practices and policies of the Debtors.

## ARTICLE 19

## TREATMENT OF CLASS 13 CLAIMS

### (PENALTY CLAIMS)

19.1 **Distribution.** No Penalty Claims will be Allowed. All Penalty Claims will be Disallowed Claims, and there will be no distribution to the holders of any Penalty Claims.

## ARTICLE 20

## MEANS OF IMPLEMENTATION OF THE PLAN

20.1 **Establishment of Plan Implementation Account.** After the Confirmation Date, the Debtors will establish the Plan Implementation Account which will be held and administered in accordance with the Plan, the Insurance Settlement Agreements, the Participating Party Agreements and the Confirmation Order.

20.2 **Funding.** On or before the Effective Date, the following will be transferred by wire transfer to the Plan Implementation Account (or with respect to the Unknown Claims Certificate, by overnight mail delivery to counsel for the Debtors):

    (a) **Debtors' Funding.** The Debtors will transfer $3,020,000 or so much as is necessary to satisfy the Debtors' obligations under the Plan to the Plan Implementation Account. A portion of such funding may be obtained from a loan

34

that the Catholic Order of Foresters may extend to the Debtors and Reorganized Debtor, to be secured by various Revested Assets.

(b)     **CM Funding.**  Pursuant and subject to the CM Settlement Agreement between the Debtor and CM, CM will transfer $11,550,000 to the Plan Implementation Account and deliver the Unknown Claims Certificate to counsel for the Debtors.

(c)     **Franciscan Funding.**  Pursuant and subject to the Franciscan Settlement Agreements, Franciscans (Guadalupe) will transfer $300,000 to the Plan Implementation Account and Franciscans (St. John) and its insurer, United States Fidelity and Guaranty Company, will transfer a total of $1,850,000 to the Plan Implementation Account.

(d)     **Home Liquidation Allowed Claim.**  Pursuant and subject to the Home Settlement Agreement, the Liquidator will seek allowance of the Debtors' Claim in the Home Liquidation in the amount of $5,600,000, less the amount of the NMPICA Claim for subrogation of $1,850,000.  At the Trustee's direction and in the Trustee's sole discretion, the Debtors shall either (a) assign their rights under the Home Settlement Agreement to the Trust or (b) market and sell that portion of the Home Liquidation Allowed Claim payable to the Debtors and pay all the proceeds thereof to the Trust.  All costs and expenses of marketing and selling the Home Liquidation Allowed Claim will be subtracted from the proceeds received and will not otherwise be paid by the Debtors or the Reorganized Debtor.  Any distributions or dividends previously authorized by the Liquidator to be paid on account of the Home Liquidation Allowed Claim, if received by the Debtors or the Reorganized Debtor, will be paid to the Trustee.

(e)     **NMPCIGA Funding.**  Pursuant and subject to the NMPCIGA Settlement Agreement, NMPCIGA will transfer $1,850,000 to the Plan Implementation Account.

(f)     **Parish Funding.**  Pursuant and subject to the Parish Settlement Agreement, the Parishes will transfer $500,000 to the Plan Implementation Account.

(g)     **St. Bonaventure Purchase.**  Pursuant and subject to the St. Bonaventure Settlement Agreement, St. Bonaventure will transfer $550,000 to the Plan Implementation Account.

(h)     **Phoenix Diocese Funding.**  Pursuant and subject to the Phoenix Diocese Settlement Agreement, the Phoenix Diocese will transfer $300,000 to the Plan Implementation Account.

(i)     **SWIF Sale.**  Pursuant and subject to the SWIF Sale Agreement, SWIF will transfer $515,000 to the Plan Implementation Account.

(j)     **CPF Funding.**  Pursuant and subject to the CPF Settlement Agreement, CPF will transfer $665,000 to the Plan Implementation Account.

20.3     **Establishment of Disputed Claims Reserve.**  To the extent required, the Debtors shall establish and fund the Disputed Claims Reserve as of the Effective Date.

20.4     **Payment and Treatment of Claims Other Than Tort Claims and Unknown Tort Claims.**  Payments due to creditors on account of Allowed Claims other than Tort Claims or Unknown Tort Claims will be paid pursuant to the terms of the Plan from the Reorganized Debtor's Revested Assets and ongoing operations.  Payments for Allowed Professional Charges will be paid from a portion of the funding described in Section 20.2 of the Plan.

20.5     **Dissolution of Arizona Entity.**  On or before the Effective Date, the Arizona Entity will assign all its Assets (including without limitation any contractual rights) to the Reorganized Debtor.  Any obligations of the Arizona Entity will be paid, channeled, assigned, or discharged under the Plan, and the Arizona Entity will be dissolved.

20.6     **Retained Claims.**  On or before the Effective Date, all Retained Claims will be assigned by the Debtors to the Reorganized Debtor.  The Reorganized Debtor may pursue any Retained Claims at the discretion of the Reorganized Debtor and will retain the proceeds of all such Retained Claims, if any.  The Arizona Fund Claim will be transferred to the Trust upon request of the Trustee.

20.7     **Unknown Claims Certificate.**  On or before the Effective Date, the Unknown Claims Certificate shall be delivered to the Trustee and be effective.

20.8     **Approval of Financing and 363 Sales.**  On or before the Effective Date, the Court shall have approved under Bankruptcy Code § 364 the financing the Debtors intend to obtain from the Catholic Order of Foresters.  The Court shall have also approved the sale under Bankruptcy Code § 363, free and clear of all liens, Claims, encumbrances, and Interests, of (i) any Insurance Policies to be purchased by a Settling Insurer pursuant to the requirements of the applicable Insurance Settlement Agreement, and (ii) any property to be purchased by a Participating Party under a Participating Party Agreement, and the Court shall have granted the purchasers the protections available under Bankruptcy Code § 363(m).  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Bankruptcy Code § 364 financing, Bankruptcy Code § 363 sales and grant of Bankruptcy Code § 363(m) protections.

20.9     **Approval of Settlement Agreements.**  Pursuant to Bankruptcy Code § 105 and in consideration for the classification, distributions and other benefits provided under the Plan, including, *inter alia*, (i) the commitment by the Debtors to fund the Debtors' obligations under the Plan to the Plan Implementation Account; (ii) the CM Settlement Agreement; (iii) the Franciscan Settlement Agreements; (iv) the Home Settlement Agreement; (v) the NMPCIGA Settlement Agreement; (vi) the Parish Settlement Agreement; (vii) the St. Bonaventure Settlement Agreement; (viii) the Phoenix Diocese Settlement Agreement; (ix) the SWIF Sale Agreement; (x) the CPF Settlement Agreement;

QB\39723595.1

and (xi) the Debtors' non-monetary commitment to healing and reconciliation as set forth in Section 20.12 of the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims against the Debtors. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the global compromise and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, Participating Parties, Settling Insurers, Tort Claimants, Unknown Tort Claimants and other parties in interest, and are fair, equitable and within the range of reasonableness.

20.10 **Debtors' Waiver and Release of Claims Against Settling Insurers.** As required in the Insurance Settlement Agreements, upon the occurrence of the Effective Date and payment by each Settling Insurer of such Settling Insurer's settlement amount pursuant to the applicable Insurance Settlement Agreement, the Debtors on behalf of themselves, their Estates, their current and former successors and assigns, subsidiaries, affiliates, officers and directors, fully, finally, and completely remise, release, acquit, and forever discharge and release the corresponding Settling Insurer (and any property thereof) and any of their reinsurers or retrocessionaires from any and all past or present Claims, causes of action, rights and remedies, including all Claims that relate to Tort Claims and Unknown Tort Claims, the Insurance Policies issued by such Settling Insurer, or any other binder, certificate, or policy of insurance issued by such Settling Insurer, including any Channeled Claims, all Extra-Contractual Claims and all Related Insurance Claims that, directly or indirectly, arise from, relate to, or are in connection with the Debtors or their property or the Reorganization Cases. This release specifically includes all Unknown Tort Claims that are based in whole or in part on the Tort Claims, the Insurance Policies, or any other binder, certificate, or policy of insurance or certificate issued by such Settling Insurer, with all Tort Claims and Unknown Tort Claims channeled to the Trust, pursuant to the Plan, and with no liability to such Settling Insurer; provided, however, that nothing in this Section is intended to affect or release any obligations arising from the Unknown Claims Certificate. Notwithstanding the foregoing release, if any Insurance Policies or Insurance Coverage is reserved and not released or sold in an applicable Insurance Settlement Agreement, then this release shall only apply to those Insurance Policies and/or Insurance Coverage specifically exhausted, sold or released under an applicable Insurance Settlement Agreement. Also, if there is any conflict between an Insurance Settlement Agreement and the Plan (including the foregoing release), the terms of the applicable Insurance Settlement Agreement shall prevail.

20.11 **Debtors' Waiver and Release of Participating Parties and Settling Insurers.** In consideration of the terms of the Participating Party Agreements, the Insurance Settlement Agreements and other consideration, upon the Effective Date and the Participating Party's or Settling Insurer's performance under their respective Participating Party Agreement or Insurance Settlement Agreement, including without limitation delivery of any dismissal orders or stipulations that may be required thereunder, the Debtors, on behalf of themselves, their Estates, their current and former successors and assigns, subsidiaries, and affiliates, officers and directors fully, finally, and completely remise, release, acquit, and forever discharge and release each Participating Party and Settling Insurer and any of their reinsurers or retrocessionaires (and any property thereof) from any and all past and present Claims that arise from or relate to Tort Claims, Unknown Tort

Claims or Channeled Claims, and any Extra-Contractual Claims and Related Insurance Claims.

20.12 **Non-Monetary Commitment to Healing and Reconciliation.** In order to further promote healing and reconciliation, and in order to continue its efforts to prevent Abuse from occurring in the Diocese in the future, the Reorganized Debtor agrees that beginning within thirty (30) days after the Effective Date (unless a different date is provided below), it will undertake the commitments set forth in **Exhibit R** attached hereto and incorporated herein.

20.13 **Procedure for Determination of Claims Other Than Tort Claims or Unknown Tort Claims.** The following procedures will be used for purposes of allowance and disallowance of creditors' Claims that are **not** Tort Claims or Unknown Tort Claims:

(a) **Objections to Claims.** Notwithstanding the occurrence of the Effective Date, and except as to any Claim that has been Allowed prior to the Effective Date, all objections to Claims must be filed by the Claim Objection Deadline, provided, however, that nothing contained in the Plan will affect the right of the Debtors to seek estimation of any Claims, including Tort Claims and Unknown Tort Claims, on any grounds permitted by the Bankruptcy Code at any time.

(b) **Disputed Claims.** No payments or other distributions will be made to the holders of Disputed Claims unless and until such Claims are Allowed Claims pursuant to a Final Order. If a Disputed Claim is not an Allowed Claim by the Effective Date, or when payment is otherwise due under the Plan, payment on the Allowed Claim (plus interest, if any if provided for in the Plan) will commence on the Claim Payment Date.

(c) **Treatment of Contingent Claims.** Until such time as a Contingent Claim or a Contingent portion of an Allowed Claim becomes fixed or absolute or is disallowed, such Claim will be treated as a Disputed Claim for all purposes related to distributions under the Plan. The holder of a Contingent Claim will only be entitled to a distribution under the Plan when and if such Contingent Claim becomes an Allowed Claim, subject, however, to the provisions of Bankruptcy Code § 502(e), and, provided that if such Contingent Claim is for reimbursement, indemnification or contribution at the time of allowance or disallowance, it will be disallowed pursuant to Bankruptcy Code § 502(e)(1)(B).

20.14 **Payments Effective Upon Tender.** Whenever the Plan requires payment to be made, such payment will be deemed made and effective upon tender thereof by the Trustee, Debtors, or the Reorganized Debtor to the creditor to whom payment is due. If any creditor refuses a tender, the amount tendered and refused will be held by the Debtors or the Reorganized Debtor for the benefit of that creditor pending final adjudication of the dispute. However, when and if the dispute is finally adjudicated and the creditor receives the funds previously tendered and refused, the creditor will be obliged to apply the funds in accordance with the Plan as of the date of the tender; and while the dispute is pending and after adjudication thereof, the creditor will not have the right to claim interest or other

charges or to exercise any other rights which would be enforceable by the creditor, if the Debtors or the Reorganized Debtor failed to pay the tendered payment.

20.15 **Preservation of Debtors' Claims, Demands, and Causes of Action.** Except as otherwise provided in the Plan, all Claims, demands, and causes of action of any kind or nature whatsoever held by, through, or on behalf of the Debtors and/or the Estates against any other Entity, including but not limited to, the Retained Claims arising before the Effective Date which have not been resolved or disposed of prior to the Effective Date, are hereby preserved in full for the benefit of the Reorganized Debtor, except for such Claims or causes of action, cross-claims, and counterclaims which: (a) have been released hereunder or pursuant to any applicable Insurance Settlement Agreement, Participating Party Agreement or a Final Order prior to the Effective Date; and (b) which have been or are being transferred to the Trustee. Claims or causes of action, cross-claims and counterclaims which are being transferred to the Trustee, if any, are preserved under the Plan for the benefit of the Trust. To the extent necessary, the Reorganized Debtor is hereby designated as the estate representative pursuant to, and in accordance with, Bankruptcy Code § 1123(b)(3)(B). Furthermore, in accordance with Bankruptcy Code § 1123(b)(3), after the Effective Date, the Reorganized Debtor will own and retain, and may prosecute, enforce, compromise, settle, release, or otherwise dispose of, any and all Claims, defenses, counterclaims, setoffs, and recoupments belonging to the Debtors or their Estates, including, but not limited to the Retained Claims. The Debtors and the Reorganized Debtor will also be entitled to assign their rights under the Plan (except to the extent they are prohibited from doing so pursuant to the express terms of any applicable agreement for Insurance Coverage or Participating Party Agreement). On the Effective Date, and except as otherwise specifically provided in the Plan, including but not limited to Retained Claims which are specifically retained by the Debtors and assigned to the Reorganized Debtor, the Trustee is hereby designated as the estate representative, pursuant to and in accordance with, Bankruptcy Code § 1123(b)(3) with respect to any and all Claims, defenses, counterclaims, setoffs, and recoupments belonging to the Debtors or their Estates with respect to Tort Claims and Unknown Tort Claims.

20.16 **Special Provisions Governing Unimpaired Claims.** Except as otherwise provided in the Plan, nothing will affect the Debtors' or the Reorganized Debtor's rights and defenses with respect to any unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to, or setoffs or recoupments against, such unimpaired Claims.

20.17 **Operative Documents.** The Debtors or the Committee will prepare any documents which the Debtors, the Reorganized Debtor and/or the Committee deem are necessary or appropriate to execute the Plan or are provided for under the Plan, including, but not limited to, the Plan Documents. If there is any dispute regarding the reasonableness or propriety of any such documents after reasonable and good faith efforts by the Debtors to negotiate and obtain approval of the documents by the other affected Entity, any such dispute will be presented to the Bankruptcy Court for determination, at or in conjunction with the Confirmation Hearing.

20.18    **Return of Deposits.**  To the extent that the Debtors were required to and did pay deposits to any creditors after the Petition Date, as a condition of or as security for continued service after the Petition Date, including, but not limited to, deposits paid to utility companies for adequate assurance pursuant to Bankruptcy Code § 366, then, upon satisfaction of the Claims of such creditor pursuant to the Plan or if such creditor did not have any Claims against the Debtors, any such deposits, together with any interest or other income earned thereon, if any, will be refunded to the Reorganized Debtor within fifteen (15) days of demand by the Reorganized Debtor for return of such deposit.

20.19    **Delivery of Distributions (Except to Tort Claims and Unknown Tort Claims).**  Distributions will be made by the Debtors or the Reorganized Debtor as follows:

    (a)        At the addresses set forth in the Proofs of Claim (and if both a claimant's address and a claimant's counsel are listed on the Proof of Claim then to counsel's address) filed by holders of Claims or the last known addresses of such holders if no Proof of Claim is filed or if the Debtors, the Reorganized Debtor, the Trustee has not been notified of a change of address;

    (b)        At the addresses set forth in written notices of address change delivered to the Debtors, the Trustee or the Reorganized Debtor after the date of any related Proof of Claim; or

    (c)        At the addresses reflected in the Schedules filed in the Reorganization Cases if no Proof of Claim has been filed, and the Debtors, the Trustee or the Reorganized Debtor has not received a written notice of change of address.

20.20    **Transmittal of Distributions to Tort Claimants and Unknown Tort Claimants.**  Except as otherwise provided in the Plan, in the Plan Documents, or in an order of the Bankruptcy Court, distributions to Tort Claimants and Unknown Tort Claimants will be made by the Trustee and distributions to all other creditors will be made by the Reorganized Debtor.  Distributions to Tort Claimants and Unknown Tort Claimants will be made in accordance with the Trust Documents.

20.21    **Efforts Regarding Absence of Address or Returned Mail.**  If a claimant's distribution is not mailed or is mailed but returned to the Reorganized Debtor or Trustee because of the absence of a proper mailing address, the Reorganized Debtor or Trustee, as the case may be, shall make a reasonable effort to locate or ascertain the correct mailing address for such claimant from information generally available to the public and from such party's own records, but shall not be liable to such claimant for having failed to find a correct mailing address.  The Trustee shall have no liability to a Tort Claimant on account of distributions made to the client trust account of a Tort Claimant's attorney.

## ARTICLE 21

### TRUST

21.1    **Establishment of Trust.**  On the Confirmation Date, the Trust shall be established in accordance with the Trust Documents.  The Trust shall qualify as a "Qualified

Settlement Fund" pursuant to Section 468B of the Internal Revenue Code and the Treasury Regulations promulgated thereunder. The Trust Documents, including the Trust Agreement, are incorporated herein by reference.

21.2 **Reserve Accounts.** As set forth in the Trust Agreement, the Trustee shall establish reserves for various purposes.

21.3 **No Execution.** All property transferred to the Trust will remain property of the Trust until such time as the property actually has been paid to and received by an Entity entitled to receive payment pursuant to the terms of the Plan, Plan Documents, Confirmation Order and Trust Documents. Except as expressly provided in the Plan, Plan Documents, Confirmation Order and the Trust Documents, the Trust shall not be responsible for administration of payment of any Claims against the Debtors.

21.4 **Trust Distributions.** No Tort Claimant shall receive any payment from the Trust unless and until the Tort Claimant has executed a written release of any and all past, present, and future Claims in the form  and the certifications provided for in the Class 9 Ballot, against all of the Protected Parties, any Entity insured by any of the Settling Insurers or Participating Parties, and all of the Settling Insurers' or Participating Parties' reinsurers or retrocessionaires; provided, however, that, subject to Section 15.3 of the Plan, nothing in this Section 21.4 shall require any Tort Claimant to release any Claims against any Co-Defendants. The Trust shall be obligated to provide copies of the Tort Claimants' releases and certifications to any of the Protected Parties that request them.

21.5 **Special Distribution Conditions.** In connection with the implementation of the Plan, the Trustee shall obtain prior to remittance of funds to Tort Claimants' counsel or to a Tort Claimant, if pro se, in respect of any Tort Claim, a certification from the Tort Claimant to be paid from the Trust that said Tort Claimant has or will provide any information necessary to comply with reporting obligations arising under the MSPA or MMSEA, and has or will provide for the payment and/or resolution of any obligations owing or potentially owing under the MSPA relating to such Tort Claim or distribution from the Trust; otherwise the Trustee shall withhold from any payment directly or indirectly to the Tort Claimant funds sufficient to assure that any obligations owing or potentially owing under the MSPA relating to such Tort Claim are paid.

21.6 The Trust shall defend, indemnify and hold harmless the Reorganized Debtor and the Protected Parties from any Claims related to Medicare Claims reporting and payment obligations, whether relating to past conditional payments made, future payments to be made, or otherwise arising out of, relating to, or in connection with Tort Claims, including any obligations owing or potentially owing under MMSEA or MSPA, and any Claims related to the Trust's obligations under the Plan, the Trust Documents, and the Plan Documents. The Trust shall not create a reserve for this potential obligation.

21.7 Subject to the provisions of the Plan and the Trust Agreement, the Trust Assets shall also be used for payment of indemnity and expenses relating to reimbursing the United States government or its contractors for conditional payments made pursuant to the MSPA applicable to any given Medicare Beneficiary, Tort Claimants and Unknown Tort

41

Claimants.  Except for the payment of amounts payable under any Insurance Settlement Agreement, none of the Protected Parties shall be obligated to make any other payments for this purpose, including any payments to the Trust.

21.8    The Trust shall terminate and the Trustee shall have no further obligations under the Plan or the Trust as set forth in the Trust.

## ARTICLE 22

## TREATMENT OF EXECUTORY CONTRACTS

22.1    **Assumption and Rejection of Executory Contracts.**  On the Effective Date, except as otherwise provided herein, all Executory Contracts of the Debtors, that have not been previously rejected or terminated, will be assumed in accordance with the provisions and requirements of Bankruptcy Code §§ 365 and 1123, other than those Executory Contracts that:  (a) have already been assumed by Final Order of the Bankruptcy Court; (b) are subject to a motion to reject Executory Contracts that is pending on the Effective Date (subject to the Debtors right to request rejection retroactive to an earlier date; or (c) are subject to a motion to reject an Executory Contract pursuant to which the requested effective date of such rejection is after the Effective Date.  Approval of any motions to assume Executory Contracts pending on the Confirmation Date or thereafter will be approved by the Bankruptcy Court on or after the Confirmation Date by a Final Order. Each Executory Contract assumed pursuant to this Article 22 will revest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption or applicable law.

22.2    **Claims Based on Rejection of Executory Contracts.**  Every Claim asserted by a creditor arising from the rejection of an Executory Contract pursuant to the Plan must be filed with the Bankruptcy Court no later than the first Business Day which is thirty (30) days after the Effective Date or the first Business Day that is thirty (30) days after entry of the Final Order of the Bankruptcy Court approving rejection, if such Final Order is entered after the Effective Date.  Every such Claim which is timely filed, as and when it becomes an Allowed Claim, will be treated under Class 7 of the Plan.  Every such Claim which is not timely filed by the deadline stated above will be forever barred, unenforceable, and discharged, and the creditor holding the Claim will not receive or be entitled to any distribution under the Plan on account of such Claim.

22.3    **Indemnification of Members, Managers, Officers, and Employees.**  The obligation of the Debtors to indemnify any individual serving at any time on or prior to the Effective Date as one of its officers, employees, council members or volunteers by reason of such individual's service in such capacity, to the extent provided in any of the Debtors' constituent documents or by a written agreement with the Debtors or under the laws of the States of Arizona or New Mexico, as applicable, pertaining to the Debtors, will be deemed and treated as Executory Contracts that are assumed by the Reorganized Debtor, pursuant to the Plan and Bankruptcy Code § 365 as of the Effective Date.  Obligations of the Debtors to indemnify any such individual that are assumed will survive unimpaired and unaffected by entry of the Confirmation Order, irrespective of whether such indemnification is owed for an

QB\39723595.1

act or event occurring before or after the Petition Date unless such individual is a Protected Party. Notwithstanding the foregoing, under no circumstances will the Debtors or the Reorganized Debtor assume or be responsible for any alleged indemnification obligations of the Franciscans or any priests or others against whom the Debtors have determined or may, in the future, determine, that there are credible allegations of Abuse asserted against such individual(s) or such Entity has or may have engaged in some other conduct that would excuse the Reorganized Debtor from providing any indemnification to such individual or Entity.

## ARTICLE 23

## OTHER POST-EFFECTIVE DATE OBLIGATIONS

23.1 **Closing.** Closing will be conducted at such location designated by the Debtors and the Committee, as soon as reasonably practicable following the Effective Date for the purpose of the Reorganized Debtor executing and delivering the Plan Documents and completing those actions necessary for the Reorganized Debtor to establish and fund the Trust and make other distributions required to be made upon, or promptly following, the Effective Date and in accordance with the terms of the respective Insurance Settlement Agreements and the Participating Party Agreements. As soon as practicable after conditions set forth in Section 27.1 have been satisfied or waived in accordance with Section 27.2, the Trustee shall file notice of the Closing and the Reorganized Debtor will file notice of the occurrence of the Effective Date.

23.2 **Obligations of the Reorganized Debtor.**

(a) Subject to Sections 23.1 and 27.1 of the Plan, the Reorganized Debtor will:

(i) In the exercise of its respective business judgment, review all Claims filed against the Estates except for Tort Claims and Unknown Tort Claims and, if advisable, object to such Claims;

(ii) Honor the Debtors' obligations arising under each Participating Party Agreement and Insurance Settlement Agreement and any other agreement that has been approved by the Bankruptcy Court as part of the Plan;

(iii) Transfer the Home Liquidation Allowed Claim to the Trust;

(iv) Transfer $17,606,241.04 from the Plan Implementation Account to the Trustee within two (2) Business Days after the Effective Date and such other funds received and which are to be paid to the Trust pursuant to the terms of the Plan within three (3) Business Days after receipt thereof;

(v) Transfer any proceeds received by the Debtors on account of the Home Liquidation Allowed Claim; and,

(vi)    Perform all of its obligations under the Plan and Plan Documents, in each case, as and when the same become due or are to be performed.

23.3    **No Professional Fees or Expenses.**    No professional fees or expenses incurred by a claimant will be paid by the Reorganized Debtor, the Protected Parties, the Trust, or the Trustee with respect to any Claim except as specified in the Plan or the Trust Documents.

23.4    **Closing of the Case.**    As soon as practicable after the Effective Date, when the Reorganized Debtor deems appropriate, the Reorganized Debtor will seek authority from the Bankruptcy Court to close the Reorganization Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules; provided, however, that entry of a final decree closing the Reorganization Cases shall, whether or not specified therein, be without prejudice to the right of the Reorganized Debtor, the Trustee, or any other party in interest to reopen the Reorganization Case(s) for any matter over which the Bankruptcy Court or the U.S. District Court for the District of New Mexico has retained jurisdiction under the Plan.  Any order closing these Reorganization Cases will provide that the Bankruptcy Court or the U.S. District Court for the District of New Mexico, as appropriate, will retain (a) jurisdiction to enforce, by injunctive relief or otherwise, the Confirmation Order, any other orders entered in the Reorganization Cases, and the obligations created by the Plan and the Plan Documents; (b) all other jurisdiction and authority granted to it under the Plan and the Plan Documents; and (c) provide that the Trust may be terminated and the Trustee discharged as ordered by the Bankruptcy Court without reopening either or both of the Reorganization Cases.

# ARTICLE 24

## INSURANCE MATTERS

24.1    **Settlement with Non-Settling Insurers.**    Following the Effective Date, the Reorganized Debtor shall not enter into a settlement agreement affecting any Insurance Policy with any Non-Settling Insurer solely with respect to any Insurance Coverage for Tort Claims without the express written consent of the Trustee, which consent may be granted or withheld at the Trustee's sole and absolute discretion.  Following the Effective Date, the Reorganized Debtor authorizes the Trustee to exclusively act on its behalf to negotiate a settlement with any Non-Settling Insurer on account of such Insurance Claims for Tort Claims.  Such settlements may provide for the Non-Settling Insurer to become a Settling Insurer.

24.2    **Insurance Neutrality.**

(a)    Nothing in the Plan, the Confirmation Order or in any Plan Document modifies any of the terms of any:  (i) Non-Settling Insurer's Insurance Policies, (ii) those Insurance Policies issued by a Settling Insurer with respect to the Debtors that are not Released Insurance Policies pursuant to an Insurance Settlement Agreement, or (iii) statutory liability of the Arizona Fund.

44

(b)     Subject only to Sections 24.1 and 24.3 of the Plan, nothing in the Plan, the Confirmation Order or any Plan Document shall impair or diminish any Non-Settling Insurer's legal, equitable, or contractual obligations relating to the Insurance Policies, or the Insurance Claims against the Non-Settling Insurers in any respect.  Subject to collateral estoppel and res judicata, in the event that any court determines that any provision of the Plan impairs or diminishes any Non-Settling Insurer's obligations with respect to Insurance Claims, Insurance Recoveries or Insurance Policies, such provision of the Plan shall be given effect only to the extent that it shall not cause such impairment or diminishment.

(c)     Except as otherwise provided in the Insurance Settlement Agreements or the Plan, the fact that the Trust is liquidating and paying or reserving monies on account of the Tort Claims and Unknown Tort Claims shall not be construed in any way to diminish any obligation of any Insurer under any Insurance Policy to provide Insurance Coverage to the Debtors, the Debtors' Estates or the Reorganized Debtor for Tort Claims or Unknown Tort Claims.  The duties and obligations, if any, of the Non-Settling Insurers under each Non-Settling Insurer's Insurance Policy shall not be impaired, altered, reduced or diminished by:  (a) the discharge granted to the Debtors under the Plan pursuant to Bankruptcy Code § 1141(d), (b) the exonerations, exculpations and releases contained in the Plan or (c) the Channeling Injunction.

(d)     Neither the Trust's payment or reservation of monies on account of the Tort Claims nor the Abuse Claims Reviewer's review of an Tort Claim or Unknown Tort Claim shall:  (1) constitute a trial, an adjudication on the merits or evidence of liability or damages in any litigation with Non-Settling Insurers or (2) constitute, or be deemed, a determination of the reasonableness of the amount of any Tort Claim or Unknown Tort Claim, either individually or in the aggregate with other Tort Claims or Unknown Tort Claims, in any litigation of Insurance Claims with any Non-Settling Insurers.

(e)     Notwithstanding any other provision in the Plan, the Confirmation Order or any Plan Document, the transfer of rights or the appointment of the Trustee as a representative to enforce Insurance Claims and obtain Insurance Recoveries as to any Non-Settling Insurers with respect to Tort Claims or Unknown Tort Claims, as the case may be, shall not be asserted as a defense to coverage under any Non-Settling Insurer's Insurance Policy.

(f)     Subject to Section 24.3 of the Plan, no provision of the Plan, the Confirmation Order or any Plan Document shall diminish or impair the rights of any Non-Settling Insurer under its Insurance Policy or the rights of a Non-Settling Insurer to assert any defense to any Insurance Claim.

(g)     A Non-Settling Insurer's obligations, with respect to any Tort Claim or Unknown Tort Claim, shall be determined by and in accordance with the terms of the Insurance Policies and with applicable non-bankruptcy law.

QB\39723595.1

(h)     Nothing in the Plan, Confirmation Order or any Plan Document, shall impose any obligation on any Insurer to provide a defense for, settle, or pay any judgment with respect to, any Tort Claim or Unknown Tort Claim.

(i)     Nothing in the Plan, Confirmation Order or any Plan Document shall grant to any Entity any right to sue any Insurer directly, in connection with a Tort Claim, Unknown Tort Claim or any Insurance Policy (including a Released Insurance Policy).  To the extent that an Insurance Policy continues in effect after the Effective Date because it is not a Released Insurance Policy, the terms of the Insurance Policy and applicable non-bankruptcy law will govern the rights and obligations of the such Entity; provided, however, that pursuant to the Plan and the Insurance Settlement Agreements, no Entity shall have any right to sue any Settling Insurer or Participating Party directly or indirectly in connection with a Tort Claim, Unknown Tort Claim, or a Released Insurance Policy.

(j)     Subject to Section 24.3 of the Plan, nothing in the Plan, Confirmation Order, or in any Plan Document shall constitute a finding or determination that any Debtor and/or third party is a named insured, additional insured or insured in any other way under any Insurance Policy; or that any Insurer has any defense or indemnity obligation with respect to any Tort Claim or Unknown Tort Claim.  Subject to Section 24.3 of the Plan, no defense, denial or position of a Non-Settling Insurer shall be impaired or prejudiced in any insurance coverage dispute.

(k)     Nothing in this Section 24.2 negates or undoes the voluntary alteration of an Insurer's rights should it elect to become a "Settling Insurer" under the Plan.

(l)     Nothing in the Plan is intended to affect the governing law of any Insurance Policy.

24.3    **Judgment Reduction.**  In connection to any action by the Trust to enforce Insurance Claims with respect to an Insurance Policy issued by a Non-Settling Insurer, in the event that any Insurer obtains a judicial determination or binding arbitration award that, but for Article 28 of the Plan, it would be entitled to obtain a sum certain from a Settling Insurer or Participating Party as a result of a Contribution Claim, or a Claim for subrogation, indemnification, or other similar Claim against a Settling Insurer or Participating Party for such Settling Insurer's or Participating Party's alleged share or equitable share, or to enforce subrogation rights, if any, of the defense and/or indemnity obligation of such Settling Insurer or Participating Party for any Claims released or resolved pursuant to any settlement agreement with a Settling Insurer or Participating Party, the Debtors, the Trustee, or other Participating Party or Settling Insurer, as applicable, shall be deemed to have reduced its judgment or Claim against, or settlement with, such other Insurer to the extent necessary to satisfy such contribution, subrogation, indemnification, or other Claims against such Settling Insurer or Participating Party.  To ensure that such a reduction is accomplished, and in addition to invoking the protection afforded it under Article 28 of the Plan in the Bankruptcy Court, such Settling Insurer or Participating Party shall be entitled to assert this Section 24.3 as a defense to any action against it brought by any other Insurer for any such portion of the judgment or Claim and shall be entitled to request that the court or appropriate tribunal issue

46

such orders as are necessary to effectuate the reduction to protect such Settling Insurer or Participating Party and the other Protected Parties pursuant to a settlement agreement with a Settling Insurer or Participating Party from any liability for the judgment or Claim. Moreover, if a Non-Settling Insurer asserts that it has a Claim for contribution, indemnity, subrogation, or similar relief against a Settling Insurer or Participating Party, such Claim may be asserted as a defense against the Trust or Debtors in any litigation of Insurance Claims (and the Trust, the Debtors or Reorganized Debtor may assert the legal and equitable rights of such Settling Insurer or Participating Party in response thereto); and to the extent such a Claim is determined to be valid by the court presiding over such action, the liability of such Non-Settling Insurer to the Trust, the Debtors or other Participating Party shall be reduced dollar for dollar by the amount so determined. The Debtors and the Trust further agree that, in order to effectuate this clause in any action against a Non-Settling Insurer where the Settling Insurers or Participating Parties are not parties, the Debtors, the Reorganized Debtor or the Trust, as applicable, shall obtain a finding from that court of what amount the Settling Insurers or Participating Parties would have been required to pay such Non-Settling Insurer under its Contribution Claim, before entry of judgment against such Non-Settling Insurer. The Bankruptcy Court shall retain non-exclusive jurisdiction to determine the amount, if any, of any judgment reduction pursuant to the terms of this Section 24.3. In addition, any court of competent jurisdiction may determine the amount, if any, of any judgment reduction pursuant to the terms of this Section 24.3.

24.4    Notwithstanding any other provision of the Plan, Sections 24.2 and 24.3 of the Plan shall not (i) affect or be construed to restrict or limit the scope or application of the Settling Insurer Injunction or (ii) alter, impair, or diminish any of the protections afforded to Settling Insurers or Participating Parties under the Plan and Confirmation Order, the Insurance Settlement Agreements, the Participating Party Agreements, or the orders approving such settlement agreements.

## ARTICLE 25

## LITIGATION

25.1    **Preservation of Retained Claims.**

(a)      The Reorganized Debtor shall retain and exclusively enforce the Retained Claims, whether arising before or after the Petition Date, in any court or other tribunal, including, without limitation, a bankruptcy court adversary proceeding filed in these Reorganization Cases. The Reorganized Debtor shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such Retained Claims, without obtaining Bankruptcy Court approval.

(b)      Except for Tort Claimants or Unknown Tort Claimants, any Entity to whom the Debtors have incurred an obligation (whether on account of the provision of goods, services or otherwise), or who has received goods or services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that such obligation, transfer, or transaction may be

47

reviewed by the Reorganized Debtor, subsequent to the Effective Date and may, if appropriate, be the subject of an action after the Effective Date, regardless of whether (i) such Entity has filed a Proof of Claim against the Debtors in these Reorganization Cases; (ii) such Entity's Proof of Claim has been objected to; (iii) such Entity's Claim was included in the Schedules; or (iv) such Entity's scheduled Claims have been objected to or have been identified as disputed, Contingent, or unliquidated.

## ARTICLE 26

## LIQUIDATION OF TORT CLAIMS AND UNKNOWN TORT CLAIMS

26.1 **Liquidation and Payment of Tort Claims.**The Trust shall pay Tort Claims in accordance with the terms of the Plan, Confirmation Order, Plan Documents and Trust Documents and without regard to the Debtor against which the Tort Claimant or Unknown Tort Claimants filed his/her Proof of Claim.

(b) The amount of the Trust's distributions/reserves on account of the Tort Claims shall not be binding upon any Non-Settling Insurer or any Co-Defendant in connection with a Co-Defendant's liquidation of any contribution or indemnity claim.

(c) Nothing in the Trust Documents shall (i) impose any costs, directly or indirectly, upon the Estates, the Reorganized Debtor, any Participating Party or any Settling Insurer relating to the treatment of Tort Claims or (ii) otherwise modify the rights or obligations of the Estates, the Reorganized Debtor, any Participating Party or Settling Insurer as otherwise set forth in the respective Insurance Settlement Agreement, Participating Party Agreement, Unknown Claims Certificate, the Plan or a Plan Document.

(d) Because Tort Claims are being paid by the Trust without regard to whether those Claims are covered by Insurance Policies issued by Settling Insurers or Participating Parties: (a) the Trust shall be deemed to be subrogated to the Claims of the Tort Claimants paid by the Trust to the extent of those payments and (b) the Trust may pursue such subrogation Claim and any Contribution Claim unless such Claim is against the Reorganized Debtor or any Protected Party. The Trust may not bring any action against the Reorganized Debtor, any Protected Party, and/or their respective Assets; provided, however, that the Trust may bring an action against any of the foregoing Entities to enforce the Plan or Plan Documents.

26.2 **Effect of No Award on Tort Claims.** If a Tort Claim or Unknown Tort Claim is denied payment pursuant to the respective Tort Claims Allocation Protocol or Unknown Tort Claims Allocation Protocol, the holder of such Tort Claim or Unknown Tort Claim will have no further rights against the Debtors, Reorganized Debtor, Participating Parties, Settling Insurers, the Trust or Trustee relating to such Tort Claim or Unknown Tort Claims and such Tort Claim or Unknown Tort Claims shall be a Disallowed Claim and subject to all provisions of Article 28 below.

48

26.3 **Supplementing Exhibit K to Add to List of Participating Parties.** After the Effective Date and notwithstanding any present exclusionary language contained in the Plan, upon the consent of the Reorganized Debtor and the Trustee, any Entity may become a Participating Party pursuant to a Participating Party Agreement. After the Effective Date, the Trustee or the Reorganized Debtor, as the case may be, shall have the authority to seek, upon motion to the Bankruptcy Court, the Bankruptcy Court's approval of a Participating Party Agreement. Upon the Bankruptcy Court's entry of a Final Order approving such agreement, Exhibit K will be amended by the Trustee or the Reorganized Debtor to include such Entity. For the purposes of defining a Participating Party, the Entities listed on Exhibit K shall include their respective Representatives, predecessors, successors, and assigns, or their respective employees, officers, agents, attorneys and directors unless specifically provided otherwise in the applicable Participating Party Agreement.

(b)     Any Entity becoming a Participating Party under the Plan shall have all of the rights, remedies and obligations of a Participating Party notwithstanding that such Entity originally may have been excluded as a Participating Party under any provision of the Plan, including without limitation, the terms and conditions of the Channeling Injunction.

(c)     The Bankruptcy Court's retained jurisdiction to approve a Participating Party Agreement under this Section shall include jurisdiction to determine the adequacy of notice of a motion to approve such a Participating Party Agreement.

26.4 **Supplementing Exhibit M to Add to List of Settling Insurers.**

(a)     After the Effective Date, upon the consent of the Trustee, an Entity may become a Settling Insurer if the Bankruptcy Court, after notice and hearing, approves the agreement between the Entity and the Trustee. Notwithstanding the occurrence of the Effective Date, the Reorganized Debtor shall have standing to object to approval of such agreement. Upon the Bankruptcy Court's entry of a Final Order approving such an agreement, Exhibit M will be amended by the Trustee to include such Entity.

(b)     Any Entity becoming a Settling Insurer under this Section 26.4 shall have all of the rights, remedies and duties of a Settling Insurer notwithstanding that such Entity originally may have been excluded as a Settling Insurer under any provision of the Plan. Such rights, remedies and duties shall include, but not be limited to, the terms and conditions of the Channeling Injunction.

(c)     The Bankruptcy Court's retained jurisdiction to approve an agreement under this Section shall include jurisdiction to determine the adequacy of notice of a motion to approve such an agreement.

# ARTICLE 27

## CONDITIONS PRECEDENT

27.1    **Conditions to Occurrence of the Effective Date.**  The Effective Date will occur when each of the following conditions have been satisfied or waived in accordance with Section 27.2 of the Plan:

> (a)    The Bankruptcy Court shall have entered a Final Order or Final Orders approving all Insurance Settlement Agreements and any appropriate judgments consistent therewith, in form and substance reasonably acceptable to the Settling Insurer with respect to that Settling Insurer's Insurance Settlement Agreement and consistent with the requirements of the such Settling Insurer's applicable Insurance Settlement Agreement, and no stay of such orders is in effect;

> (b)    The Bankruptcy Court shall have entered a Final Order or Final Orders approving all Participating Party Agreements and any appropriate judgments consistent therewith, in form and substance reasonably acceptable to the Participating Party with respect to that Participating Party's Participating Party Agreement and consistent with the requirements of the such Participating Party's applicable Participating Party Agreement, and no stay of such orders is in effect;

> (c)    The Bankruptcy Court shall have entered the Confirmation Order in form and substance that is reasonably acceptable to the Reorganized Debtor, the Committee, the Settling Insurers, the Participating Parties and the Confirmation Order is a Final Order;

> (d)    The Trustee and the Reorganized Debtor have signed the Trust Agreement;

> (e)    All of the Settling Insurers and the Participating Parties have transferred their applicable amounts into the Plan Implementation Account;

> (f)    CM shall have delivered the Unknown Claims Certificate to the Debtors (by delivery to counsel for the Debtors); and

> (g)    The Debtors have transferred $17,606,241.04 from the Plan Implementation Account to the Trust.

27.2    **Waiver of Conditions.**  Any condition set forth in Section 27.1 of the Plan may be waived by the mutual written consent of the Debtors, the Committee, the Settling Insurers with respect to any conditions affecting such Settling Insurer's obligations and the Participating Parties with respect to any conditions affecting such Participating Party's obligations.

27.3    **Non-Occurrence of Effective Date.**  Subject to further order of the Bankruptcy Court, in the event that the Effective Date does not occur within ninety (90) days of entry of the Confirmation Order (as a Final Order) or the Final Order approving an Insurance Settlement Agreement or Participating Party Agreement (as the case may be), the

50

Plan shall become null and void unless agreed otherwise by the Debtors, the Committee, the Settling Insurers and the Participating Parties. A statement shall be filed with the Court within three (3) Business Days after the occurrence of any event that renders the Plan null and void.

## ARTICLE 28

### EFFECTS OF CONFIRMATION

28.1 **Discharge.** Except as otherwise expressly provided in the Plan or in the Confirmation Order, on the Effective Date, the Debtors and the Diocese will be discharged from and their liability will be extinguished completely in respect of any Claim and debt, whether reduced to judgment or not, liquidated or unliquidated, Contingent or noncontingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or future, that arose from any agreement of the Debtors or the Diocese entered into or obligation of the Debtors or the Diocese incurred before the Confirmation Date, or from any conduct of the Debtors or the Diocese prior to the Confirmation Date, or that otherwise arose before the Confirmation Date, including, without limitation, all interest, if any, on any such Claims and debts, whether such interest accrued before or after the Petition Date, and including all Claims and debts of the kind specified in Bankruptcy Code §§ 502(g), 502(h), and 502(i), whether or not a Proof of Claim is filed or is deemed filed under Bankruptcy Code § 501, such Claim is Allowed under Bankruptcy Code § 502, or the holder of such Claim has accepted the Plan.

28.2 **Vesting.** Except as otherwise expressly provided in the Plan or in the Confirmation Order, on the Effective Date, the Reorganized Debtor will be vested with all of the Assets, including all property of the Estates free and clear of all Claims, liens, encumbrances, charges and other Interests of creditors, including, without limitation, all Assets of the Arizona Entity and the Reorganized Debtor will, thereafter, hold, use, dispose or otherwise deal with such property, operate its business and conduct its ministry and mission free of any restrictions imposed by the Bankruptcy Code or by the Court. All Retained Claims are hereby preserved for the benefit of the Reorganized Debtor. Any Claims, causes of action or demands transferred to the Trust are preserved for the benefit of the Trustee under the Trust.

28.3 **Exculpation and Limitation of Liability. Except as expressly provided in the Plan, none of the Protected Parties will have or incur any liability to, or be subject to any right of action by, any claimant, any other party in interest, or any of their respective Representatives, financial advisors, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Reorganization Cases, including the exercise of their respective business judgment and the performance of their respective fiduciary obligations, the pursuit of confirmation of the Plan, or the administration of the Plan or the property to be distributed under the Plan or the Trust created hereunder, except for their willful misconduct or gross negligence and in all respects such parties will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan or the Reorganization Cases. Without limiting the generality of the foregoing, the Debtors**

and its financial advisors and other professionals shall be entitled to and granted the benefits of Bankruptcy Code § 1125(e).

28.4 **Limitation of Liability.** The Protected Parties, the Trust, the Trustee, and professionals employed by the foregoing shall not have any liability to any Entity, including any governmental entity or insurer, on account of payments made to a Tort Claimant, including any liability under the MSPA.

28.5 **Channeling Injunction.** In consideration of the undertakings of the Protected Parties hereunder and other consideration, and to further preserve and promote the agreements between and among the Participating Parties, the Settling Insurers, and the Debtors which also benefit the Tort Claimants and Unknown Tort Claimants and the protections afforded the Protected Parties under the Bankruptcy Code, including Bankruptcy Code § 105:

(a) Any and all Channeled Claims are channeled into the Trust and shall be treated, administered, determined, and resolved under the procedures and protocols and in the amounts as established under the Plan, the Unknown Claims Certificate, the Allocation Protocols and the Trust Documents as the sole and exclusive remedy for all holders of Channeled Claims; and

(b) All Entities who have held or asserted, hold or assert, or may in the future hold or assert, any Channeled Claim are hereby permanently stayed, enjoined, barred and restrained from taking any action, directly or indirectly, for the purposes of asserting, enforcing, or attempting to assert or enforce any Channeled Claim against any of the Protected Parties, including:

(i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any Channeled Claim against any of the Protected Parties or against the property of any of the Protected Parties;

(ii) enforcing, attaching, collecting or recovering, by any manner or means, from any of the Protected Parties, or from the property of any of the Protected Parties, with respect to any such Channeled Claim, any judgment, Award, decree, or order against any of the Protected Parties;

(iii) creating, perfecting or enforcing any lien of any kind against any Protected Parties, or the property of any of the Protected Parties with respect to any such Channeled Claim;

(iv) asserting, implementing or effectuating any Channeled Claim of any kind against:

(1) any obligation due any of the Protected Parties;

(2) any Protected Party; or

52

(3)     the property of any Protected Party.

(v)     taking any act, in any manner, in any place whatsoever that does not conform to, or comply with, the provisions of the Plan; and

(vi)    asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against any obligation due any of the Protected Parties or the property of any of the Protected Parties.

The provisions of this Section 28.5 will further operate, as between all Protected Parties, as a mutual release of all Claims relating to the Debtors, the Claims against the Debtor and the Insurance Policies, which any Protected Party may have against another Protected Party except as may specifically be reserved or set forth in a Participating Party Agreement, an Insurance Settlement Agreement or the Plan. The foregoing channeling provisions are an integral part of the Plan and are essential to its implementation. For purposes of Section 28.5(a) only, the definition of Protected Parties does not include the Committee and each of its members; the Committee's Professionals; the Unknown Claims Representative, AlixPartners LLP, Michael Murphy, and Young Kim, and all of their respective present or former members, managers, officers, directors, employees, Representatives, attorneys, and agents acting in such capacity.

28.6    **Supplemental Injunction Preventing Prosecution of Claims Against Settling Insurers.** Pursuant to Bankruptcy Code §§ 105(a) and 363 and in consideration of the undertakings of the Settling Insurers pursuant to the Insurance Settlement Agreements, including any of the Settling Insurers' purchases of Insurance Policies free and clear of all Interests pursuant to Bankruptcy Code § 363(f), any and all Entities who have held, now hold or who may in the future hold any Interests (including all debt holders, all equity holders, all Entities holding a Claim, governmental, tax and regulatory authorities, lenders, trade and other creditors, Tort Claimants, Unknown Tort Claimants, perpetrators, Non-Settling Insurers, and all others holding Interests of any kind or nature whatsoever, including those Claims released or to be released pursuant to the Insurance Settlement Agreements) against any of the Protected Parties, Insured Entities, or the Insurance Policies, which, directly or indirectly, relate to, any of the Insurance Policies, any Tort Claims or any Related Insurance Claims, are hereby permanently stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, to assert, enforce or attempt to assert or enforce any such Interest against the Settling Insurers, Insured Entities, and/or the Insurance Policies, including:

(a)     Commencing or continuing in any manner any action or other proceeding against the Settling Insurers or the Insured Entities or the property of the Settling Insurers or the Insured Entities;

(b)     Enforcing, attaching, collecting, or recovering, by any manner or means, any judgment, Award, decree or order against the Settling Insurers

or the Insured Entities or the property of the Settling Insurers or the Insured Entities;

(c)     Creating, perfecting, or enforcing any lien of any kind against the Settling Insurers or the Insured Entities or the property of the Settling Insurers or the Insured Entities;

(d)     Asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against any obligation due the Settling Insurers or the Insured Entities or the property of the Settling Insurers or the Insured Entities; and,

(e)     Taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan.

28.7     **Permanent Injunction Against Prosecution of Released and Channeled Claims.** Except as otherwise expressly provided in the Plan and the Unknown Claims Certificate, for the consideration described herein, or described in any agreement by which an Entity becomes a Settling Insurer or a Participating Party, or if such Entity is a Protected Party on the Effective Date, all Entities who have held, hold, or may hold Channeled Claims or Claims against the Protected Parties, whether known or unknown, and their respective civil law and Canon Law officers, directors, officials, Representatives, council members, employees, accountants, agents, attorneys, and all others acting for or on their behalf, will be permanently enjoined on and after the Effective Date from:  (a) commencing or continuing in any manner, any action or any other proceeding of any kind with respect to any Claim, including, but not limited to, any Tort Claim or any Unknown Tort Claim against the Protected Parties or the property of the Protected Parties; (b) asserting a Claim against any Entity if as a result of such Claim such Entity has or may have a Claim against one or more of the Protected Parties; (c) seeking the enforcement, attachment, collection or recovery by any manner or means of any judgment, Award, decree, or order against the Protected Parties or the property of the Protected Parties, with respect to any discharged Claim or Channeled Claim; (d) creating, perfecting, or enforcing any encumbrance of any kind against the Protected Parties or the property of the Protected Parties with respect to any discharged Claim or Channeled Claim; (e) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Parties with respect to any discharged Claim or Channeled Claim; and (f) taking any act, in any manner and in any place whatsoever, that does not conform to or comply with provisions of the Plan or the Plan Documents, including, the Trust Agreement.  Any and all currently pending court proceedings, the continuation of which would violate the provisions of this Section, shall be dismissed with prejudice.  The foregoing injunctive provisions are an integral part of the Plan and are essential to its implementation.

28.8     **Term of Injunctions or Stays and Confirmation of Settlements.  On the Effective Date, the injunctions provided for in the Plan shall be deemed issued, entered, valid and enforceable according to their terms and shall be permanent and**

**irrevocable.  All injunctions and/or stays provided for in the Plan, the injunctive provisions of Bankruptcy Code §§ 524 and 1141, and all injunctions or stays protecting any Settling Insurer that has purchased its Insurance Policies in a Bankruptcy Code § 363 sale, are permanent and will remain in full force and effect following the Effective Date and are not subject to being vacated or modified.**

## ARTICLE 29

## MODIFICATION OF PLAN

29.1    **Non-Material Modification of Plan.**    The Plan may be modified by the Debtors and the Committee or the Reorganized Debtor (as applicable) from time to time in accordance with, and pursuant to, Bankruptcy Code § 1127.  The Plan may be modified by the Debtors and the Committee at any time before the Confirmation Date, provided that the Plan, as modified, meets the requirements of Bankruptcy Code §§ 1122 and 1123, and the Debtors have complied with Bankruptcy Code § 1125.  Each holder of a Claim that has accepted the Plan will be deemed to have accepted such Plan as modified if the proposed alteration, amendment or modification does not adversely change the treatment of the Claim of such holder.  Each holder of a Claim that votes in favor of the Plan authorizes the Debtors to modify, at any time prior to the Effective Date and without the requirement of further solicitation, the treatment provided to the Class of Claims such Claims are classified in, provided that the Bankruptcy Court determines that such modification is not material.

29.2    **Additional Documentation; Non-Material Modifications of Plan Documents.**    From and after the Effective Date, the Trustee, the Reorganized Debtor, Participating Parties and the Settling Insurers shall be authorized to enter into, execute, adopt, deliver and/or implement all contracts, leases, instruments, releases, and other agreements or documents necessary to effectuate or memorialize the settlements contained in the Plan, and Plan Documents without further order of the Bankruptcy Court. Additionally, the Trustee, the Reorganized Debtor, Participating Parties and the Settling Insurers may make technical and/or immaterial alterations, amendments, modifications or supplements to the terms of any settlement, subject to Bankruptcy Court approval, provided that the amendment or modification does not materially and adversely change the treatment of any holder of a Class 9 Claim without the prior written agreement of such holder.  A Class of Claims that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified or supplemented hereunder, if the proposed alteration, amendment, modification or supplement does not materially and adversely change the treatment of the Claims within such Class.

29.3    **No Re-Solicitation**.    An order of the Bankruptcy Court approving any amendment or modification made pursuant to this Article 29 shall constitute an order in aid of consummation of the Plan and shall not require the re-solicitation of votes on the Plan.

## ARTICLE 30

## RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan and the occurrence of the Effective Date, the Bankruptcy Court will retain jurisdiction for the following purposes:

30.1 **In General.** The Bankruptcy Court will retain jurisdiction to determine the allowance and payment of any Claims upon any objections thereto (or other appropriate proceedings) by the Debtors, by the Reorganized Debtor, or by any other party in interest entitled to proceed in that manner. As part of such retained jurisdiction, the Bankruptcy Court will continue to determine the allowance of Administrative Claims and any request for payment thereof, including Administrative Claims for Professional Charges. The Bankruptcy Court will not retain or obtain jurisdiction to determine any internal disputes between or among the Debtors (or the Diocese), a Parish, or any other related Entity that, under applicable Canon Law, would be determined in a specialized religious court.

30.2 **Tort Claims and Unknown Tort Claims.** Subject to the limitations set forth in Section 30.1 above, the Bankruptcy Court will retain jurisdiction to hear and determine and take such actions as are necessary or appropriate with respect to the payment or disallowance of Tort Claims or Unknown Tort Claims so long as such retained jurisdiction is consistent with the terms of the Plan, or the Trust.

30.3 **Plan Disputes and Enforcement.** Subject to the limitations set forth in the Plan, the Bankruptcy Court will retain jurisdiction to determine any dispute which may arise regarding the interpretation of any provision of the Plan. The Bankruptcy Court will also retain jurisdiction to enforce any provisions of the Plan and any and all Plan Documents, including, but not limited to, any actions to enforce the discharge, releases and injunctions provided for in Article 28 of the Plan. The Bankruptcy Court will also retain jurisdiction over any matter relating to the implementation, effectuation, and/or consummation of the Plan as expressly provided in any provision of the Plan.

30.4 **Further Orders.** Subject to the limitations set forth in Section 30.1 above, the Bankruptcy Court will retain jurisdiction to facilitate the performance of the Plan by entering, consistent with the provisions of the Plan, any further necessary or appropriate order regarding enforcement of the Plan, the Plan Documents and any provisions thereof, and to protect the Debtors, the Reorganized Debtor, and the Protected Parties from actions prohibited under the Plan. In addition, the Bankruptcy Court will retain jurisdiction to facilitate or implement the allowance, disallowance, treatment, or satisfaction of any Claim, or any portion thereof, pursuant to the Plan (other than Tort Claims or Unknown Tort Claims, except to the extent that any retained jurisdiction is consistent with the Plan, and the Trust) to which an objection has not been filed prior to the Effective Date.

30.5 **Retained Debtor Claims.** Subject to the limitations set forth in Section 30.1 above, and to the extent the Bankruptcy Court would otherwise have jurisdiction over such Claims, the Bankruptcy Court will retain jurisdiction with respect to any Claims not otherwise compromised or settled by the Debtors prior to the Effective Date.

30.6 **Post-Confirmation Agreements.** The Bankruptcy Court will retain jurisdiction to approve and enter appropriate orders regarding any Participating Party Agreements entered into between the Debtors (or Reorganized Debtor) and a Participating Party or among the Debtors (or Reorganized Debtor), the Trust and any Non-Settling Insurers who become a Settling Insurers after the Confirmation Date.

56

30.7     **Governmental Units or Regulatory Agencies.**  The Bankruptcy Court will retain jurisdiction to adjudicate any dispute or to hear and determine any action taken, proposed, or threatened by any state, federal, or local governmental regulatory agency or unit having or asserting jurisdiction or power over the conduct of the business of the Debtors and/or the Reorganized Debtor.

30.8     **Final Decree.**  The Bankruptcy Court will retain jurisdiction to enter an appropriate final decree in the Reorganization Cases; provided, however, that the Bankruptcy Court will retain jurisdiction to enter an order terminating the Trust and discharging the Trustee in accordance with the terms of the Trust notwithstanding the issuance of the Final Decrees and closing of the Reorganization Cases and without the necessity of reopening any one or both of the Reorganization Cases.

30.9     **Appeals.**  In the event of an appeal of the Confirmation Order or any other kind of review or challenge to the Confirmation Order, and provided that no stay of the effectiveness of the Confirmation Order has been entered, the Bankruptcy Court will retain jurisdiction to implement and enforce the Confirmation Order and the Plan according to their terms, including, but not limited to, jurisdiction to enter such orders regarding the Plan or the performance thereof as may be necessary to effectuate the reorganization of the Debtors.

30.10   **Executory Contracts.**  The Bankruptcy Court will retain jurisdiction to determine any and all motions regarding assumption or rejection of Executory Contracts and any and all Claims arising therefrom.

30.11   **Claims.**  Subject to the limitations set forth in Section 30.1 above, the Bankruptcy Court will retain jurisdiction:

(a)     To hear and determine any Claim or cause of action by or against the Debtors, the Debtors' officers, officials, employees or Representatives, the Chapter 11 Professionals, and the Reorganized Debtor (except with respect to any internal disputes between and among RCCDG, the Diocese, any other Diocese or religious order (including without limitation the Franciscans), a Parish or any other related Entity that, under applicable Canon Law, would be determined in a specialized religious court);

(b)     To adjudicate any causes of action or other proceeding currently pending or otherwise referenced here or elsewhere in the Plan, including, but not limited to, the adjudication of the Retained Claims and any and all "core proceedings" under 28 U.S.C. § 157(b) which may be pertinent to the Reorganization Cases and which the Debtors or the Reorganized Debtor may deem appropriate to initiate and prosecute before the Bankruptcy Court in aid of the implementation of the Plan;

(c)     To approve any settlements between or among the Debtors, the Committee, the Trustee and the party against whom the Debtors, the Committee and/or the Trustee asserts a Retained Claim, and

57

(d)     To hear objections to Tort Claims prior to the Effective Date.

30.12   **Modification of the Plan.**  The Bankruptcy Court will retain jurisdiction to modify the Plan pursuant to the provisions of the Plan.

30.13   **Failure of Court to Exercise Jurisdiction.**  If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction or is otherwise without jurisdiction over any matter arising out of the Reorganization Cases, including matters set forth in this Article 30, such lack of jurisdiction will not diminish, control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

# ARTICLE 31
## REORGANIZATION OF DEBTORS

31.1   **Dissolution of Arizona Entity.**  After assigning all of its Assets or the transfer of such Assets pursuant to the Confirmation Order, the Arizona Entity will be dissolved and shall no longer have any corporate existence.

31.2   **Continued Corporate Existence of RCCDG and Operation of the Reorganized Debtor.**  RCCDG will, as a Reorganized Debtor, continue to exist after the Effective Date as a separate legal entity, with all powers of a religious corporation sole under the laws of the State of New Mexico and without prejudice to any right to alter or terminate such existence under applicable state law but subject to applicable Canon Law. RCCDG will take appropriate steps to register to do business in Arizona.  On and after the Effective Date, the Reorganized Debtor and the Diocese may operate their respective businesses and carry on the ministry and the mission of the Roman Catholic Church and may use, acquire, or dispose of property, and compromise or settle any Claims without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.

31.3   **Management of Reorganized Debtor.**  From and after the Effective Date, the Reorganized Debtor will continue to be managed in accordance with the principles of Canon Law and applicable state law.

31.4   **Reorganization of Parishes.**  Prior to the Effective Date, but after the Confirmation Date and after consultation with the Parishes, all real property, legal title to which is held in the name of the Debtors in trust for the benefit of the Parishes will be transferred into a separate express trust.  At that time or thereafter, the civil structure of the Parishes may be further reorganized.  Notwithstanding the structure of such reorganization, such reorganization will comply, in all respects, with Canon Law.  Any disputes regarding the interpretation and governance of the legal structure and operation of a Parish will be referred for determination to the appropriate agency or tribunal provided for under Canon Law.  Notwithstanding the foregoing, the transfer contemplated by this Section 31.4 may occur after the Effective Date but will be approved in the Confirmation Order.  The reorganization of the Parishes pursuant to this Section 31.4 is not a condition precedent to the Effective Date.

QB\39723595.1
Case 13-13676-t11    Doc 567    Filed 05/03/16    Entered 05/03/16 01:20:02 Page 61 of 65

## ARTICLE 32

### GENERAL PROVISIONS

32.1 **Election Pursuant to Bankruptcy Code § 1129(b).** If necessary, the Debtors hereby request confirmation of the Plan pursuant to Bankruptcy Code § 1129(b) if the requirements of all provisions of Bankruptcy Code § 1129(a), except Section (a)(8) thereof, are met with regard to the Plan.

32.2 **Current Insurance Coverage.** Except as expressly set forth in any Insurance Settlement Agreement, the Plan and Confirmation Order have no effect on any Insurance Coverage under any certificates or policies of insurance issued to the Debtors and are not otherwise released or sold pursuant to an applicable Insurance Settlement Agreement.

32.3 **Extension of Payment Dates.** If any payment date falls due on any day which is not a Business Day, then such due date will be extended to the next Business Day.

32.4 **Notices.** Any notice required or permitted to be provided under the Plan will be in writing and served by regular first class mail, electronic mail, overnight delivery, or hand-delivery.

32.5 **Closing of the Case.** At such time as the Plan has been fully administered and/or the Plan has been substantially consummated, the Reorganized Debtor will file an application for Final Order showing that the Plan has been fully administered or substantially consummated upon notice to only those creditors and parties that, after the Effective Date, have specifically requested, after which an order approving the Reorganized Debtor's final report and closing the Reorganization Cases may be entered.

32.6 **Interest.** Whenever interest is to be computed under the Plan, interest will be simple interest and not compounded.

32.7 **Additional Assurances.** The Debtors, the Reorganized Debtor, the Trustee and the creditors holding Claims herein, including Tort Claims and Unknown Tort Claims will execute such other further documents as are necessary to implement any of the provisions of the Plan.

32.8 **Confirmation by Nonacceptance Method.** The Debtors hereby request, if necessary, confirmation of the Plan pursuant to Bankruptcy Code § 1129(b) with respect to any impaired Class of Claims which does not vote to accept the Plan.

32.9 **Withdrawal of Plan.** The Plan may be withdrawn or revoked prior to entry of the Confirmation Order in which event the provisions of Sections 32.14 will apply.

32.10 **Severability and Reformation.** It is the Debtors' intention to comply fully with the Bankruptcy Code and applicable non-bankruptcy law in proposing the Plan. Therefore, if any provision of the Plan is determined by the Bankruptcy Court to be contrary to the Bankruptcy Code or applicable non-bankruptcy law, that provision will be deemed severed and automatically deleted from the Plan, if it cannot be reformed or the provision or

59

its interpretation will be deemed reformed to ensure compliance; _provided_, _however_, that nothing contained in this Section will prevent the Debtors or the Committee from modifying the Plan in any manner whatsoever in accordance with and as set forth in the Plan. Pursuant to any ruling by the Bankruptcy Court regarding the subject matter of this Section, any such severance or reformation will be stated specifically in the Confirmation Order, which then will control notwithstanding any contrary or inconsistent provisions of the Plan.

32.11 **Prohibition Against Prepayment Penalties.** If the Debtors or the Reorganized Debtor choose, in their sole and absolute discretion, to prepay any obligation on which deferred payments are provided for under the Plan, the Debtors or the Reorganized Debtor will not be liable or subject to the assessment of any prepayment penalty thereon unless otherwise ordered by the Bankruptcy Court.

32.12 **Fractional Dollars.** Notwithstanding any other provision of the Plan, no payments or distributions under the Plan of or on account of fractions of dollars will be made. When any payment or distribution of or on account of a fraction of a dollar to any holder of an Allowed Claim would otherwise be required, the actual payment or distribution made will reflect a rounding of such fraction to the nearest whole number (up or down).

32.13 **Payment of Statutory Fees and Filing of Quarterly Reports.** All fees payable pursuant to 28 U.S.C. § 1980 as determined by the Bankruptcy Court at or in conjunction with the Confirmation Hearing, will be paid on or before the Effective Date and, thereafter, in accordance with applicable bankruptcy law. All quarterly reports of disbursements required to be filed by applicable bankruptcy law will be filed in accordance with applicable bankruptcy law.

32.14 **Reservation of Rights.** Except as expressly provided herein, the Plan will have no force or effect unless the Confirmation Order is entered by the Bankruptcy Court and the Effective Date has occurred. None of the filing of the Plan, any statement or provision contained herein, or the taking of any action by the Debtors with respect to the Plan will be nor will it be deemed to be an admission or waiver of any rights of the Debtors or the Committee with respect to the holders of Claims prior to the Effective Date or with respect to any matter which is pending before or may come before the Bankruptcy Court or any other court for determination in the Reorganization Cases or any other case.

32.15 **No Professional Fees or Expenses.** No professional fees or expenses will be paid by the Debtors or the Reorganized Debtor with respect to any Claim except as specified in the Plan or as Allowed by Final Order of the Court.

32.16 **Dissolution of Committee.** Upon the occurrence of the Effective Date, the Committee will be dissolved; _provided_, _however_, that Committee may continue to exist after the Effective Date with respect to any and all applications for Professional Charges but not for any other purpose.

32.17 **Headings.** The headings of the articles, paragraphs, and sections of the Plan are inserted for convenience only and will not affect the interpretation hereof.

32.18  **Section 1146 Exemption.**  Pursuant to Bankruptcy Code § 1146(c), any transfers of property pursuant hereto will not be subject to any document, recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment in the United States, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

32.19  **Successors and Assigns.**  The rights, benefits and obligations of any Entity named or referred to in the Plan will be binding upon, and will inure to the benefit of, the heirs, executors, administrator, successors or assigns of such Entity.

RESPECTFULLY SUBMITTED this __3rd__ day of May, 2016.

ROMAN CATHOLIC CHURCH OF THE
DIOCESE OF GALLUP, a New Mexico religious
corporation sole,

and

BISHOP OF THE ROMAN CATHOLIC CHURCH
OF THE DIOCESE OF GALLUP, an Arizona
religious corporation sole

By    _____
      Bishop James S. Wall

Responsible Person for the Roman Catholic Church
of the Diocese of Gallup and the Bishop of the
Roman Catholic Church of the Diocese of Gallup

Prepared and Submitted By:

/s/ *Susan G. Boswell*
Susan G. Boswell (AZ Bar No. 004791)
Lori L. Winkelman (AZ Bar No. 021400)
Elizabeth S. Fella (AZ Bar No. 025236)
*Admitted Pro Hac Vice*
QUARLES & BRADY LLP
One S. Church Ave., Suite 1700
Tucson, Arizona 85701
-and-
Thomas D. Walker
WALKER & ASSOCIATES, P.C.
500 Marquette N.W., Suite 650
Albuquerque, New Mexico 87102

*Counsel for the Debtors*