# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

| | |
|---|---|
| In re:<br><br>ROMAN CATHOLIC CHURCH OF THE DIOCESE OF GALLUP, a New Mexico corporation sole,<br><br>Debtor. | Chapter 11<br><br>Case No. 13-13676-t11<br><br>**Jointly Administered with:** |
| Jointly Administered with:<br><br>BISHOP OF THE ROMAN CATHOLIC CHURCH OF THE DIOCESE OF GALLUP, an Arizona corporation sole.<br><br>This pleading applies to:<br><br>☒ All Debtors.<br>☐ Specified Debtor. | Case No. 13-13677-t11 |

## UNKNOWN CLAIMS REPRESENTATIVE'S REPORT AND RECOMMENDATIONS

Michael R. Hogan, the undersigned Unknown Claims Representative ("UCR"), makes the following Report and Recommendations.

The undersigned UCR was appointed on December 12, 2015 by the United States Bankruptcy Court for the District of Mexico as the UCR in the above-entitled jointly administered proceedings (the "UCR Order") (Dkt. 526). Such proceedings seek to reorganize the Roman Catholic Church of the Diocese of Gallup, a New Mexico corporation sole ("RCCDG"), and the Bishop of the Roman Catholic Church of the Diocese of Gallup, an Arizona corporation sole ("the Arizona Entity" and with RCCDG, the "Debtors") under Chapter 11 of the United States Bankruptcy Code. The bankruptcy proceedings were filed to resolve child sex abuse claims. Over 50 such claims were filed during the chapter 11 cases. On March

21, 2016, the Debtors filed the Debtors' Plan of Reorganization Dated March 21, 2016 (as the same may be amended or modified, the "Plan") (Dkt. 540). The Debtors anticipate that Unknown Tort Claimants (as defined in the Plan) may assert Unknown Tort Claim (as defined in the Plan) after the expiration of the Bar Date (as defined in the Plan).

I have been retained to represent the interests of Unknown Tort Claimants in accordance with the UCR Order. As part of my duties, I have undertaken to estimate the likely number of Unknown Tort Claims. In a comprehensive effort to anticipate the expected number of Unknown Tort Claims and determine the amount of a fair and appropriate unknown claims trust fund, among other things:

1. I have reviewed the experiences of several other dioceses that have reorganized under Chapter 11 of the Bankruptcy Code in response to large numbers of child sex abuse claims;

2. I have reviewed the excellent and extensive research and analysis by Michael P. Murphy, of Alix Partners, a global services company, who previously served as UCR in these cases;

3. I have studied the outreach efforts of principal plaintiff's counsel in relevant areas of New Mexico and Arizona;

4. I have studied the pattern of claims, the timing of claims, and the timing of claims in regard to alleged incidents of abuse;

5. I have considered the number and pattern of claims filed since the bankruptcy petitions were filed and since the August 11, 2014 bar date established by the Bankruptcy Court;

6. I have considered the efforts of the Bishop of the Diocese of Gallup to encourage abused parishioners to file claims;

7. I have read each of the 58 multi-page claim forms and attached materials submitted by the claimants;

8. I have considered the 2004 report and the 2011 report by the John Jay College of Criminal Justice concerning sexual abuse of minors;

9. I have considered possible defenses that may be available for Unknown Tort Claims, but which are not available for present claimants because of the aggregate nature of the proposed settlement of the claims.

The reorganization cases here were filed on November 12, 2013. Thirty-nine abuse claims were settled before the bankruptcy petitions were filed. Several lawsuits alleging sexual abuse were pending when the bankruptcy petition was filed. Fifty-eight proofs of claim were filed after the bankruptcy petitions were filed. Six of those claims acknowledge pre-petition settlements and releases and one is an amended claim, leaving a net fifty-one claims. All the claims except one were filed between April 14, 2014 and August 14, 2014. The last claim was filed October 14, 2014 without the aid of an attorney.

Most of the sexual abuse alleged in these claims occurred from the late 1950s through the early 1980s. The serial perpetrators are either retired or have died.

One claim of abuse is alleged to have occurred in 2014, but that is the only claim for abuse after the 1980s, and it does not appear to be strong.

One claim of abuse appears to be alleged against an Episcopalian priest, who was not affiliated with the Debtors.

There has been significant outreach by principal plaintiff's counsel to the relevant communities. In addition, in accord with the the court's order, there were extensive public place notifications of the bar date. Multiple notices were also posted in Indian Pueblos and Chapter Houses, in parishes, in post offices, and on the Internet. Paid notices were also placed in many newspapers and radio stations over a four-month period. In addition, notice of confirmation and the amount available through settlements and contribution from the Debtors have been widely publicized the past few months and no additional claimants have come forward.

Under the Unknown Claims Protocol, some claims may be subject to affirmative defenses that are not applicable to previously filed claims because of the terms of the aggregate settlement for the original plaintiffs. These include:

1. Potential liability on the basis of negligence requires a finding of foreseeability, and the following questions may be raised: Would a prudent person see abuse as likely to occur, possibly from a 1950s or 1960s perspective? Would a finding of liability be appropriate only after a finding of custody or control?
2. Would respondeat superior liability require a finding that abuse has been committed in the course and scope of employment or through a special relationship?
3. Does the doctrine of laches limit certain claims?
4. Did a claimant mitigate damages?
5. Is some evidence of claims excluded under the First Amendment to the Constitution?
6. Has a claimant filed a bankruptcy petition in the past, which may result in the claim belonging to a bankruptcy trustee?

Studies conducted by the John Jay College of Criminal Justice in 2004 and 2011 provide

support for the position that most claims against the Diocese of Gallup have already been brought. "The Nature and Scope of Sexual Abuse of Minors by Catholic Priests and Deacons in the United States 1950-2002" (the "2004 Report") includes the following statistics:

1. Over 70% of sexual abuse allegations against Catholic dioceses were made within 30 years after the alleged abuse began.
2. 75% of the events of alleged abuse occurred between 1960 and 1980.
3. One-third of all allegations were made in 2002 and 2003 alone.
4. More abuse occurred in the 1970s than any other decade.
5. As estimated from the study data, 2.7% of all priests in religious ministry were accused of alleged sexual abuse.
6. 89.5% of all alleged abusers were born before 1950.
7. Only 5.5% of all alleged abusers committed their first offense at the age of 60 or older.
8. The average age of a priest at the first incident or allegation of abuse is 39, and the median age is 35.
9. 149 priests with 10+ victims account for 26% of all incidents reported in the study.
10. A precipitous decline of incidents of abuse by year of occurrence took place in 1985.

"The Causes and Context of Sexual Abuse of Minors by Catholic Priests in the United States, 1950-2010" ("the 2011 Report") contains, *inter alia*, the following relevant findings:

1. Researchers could not point to one single cause, as neither celibacy nor homosexuality were the causes of the abuse. Social and cultural changes in the 1960s and 1970s manifested in increased levels of deviant behavior in the general society and also among priests.

2. The count of incidents per year increased steadily from the mid-1960s through the late 1970s, then declined in the 1980s and continues to remain low.

3. New reports (post-2002) have confirmed initial estimates that the distribution of incidents is stable.

4. At the time of the peak and subsequent decline in sexual abuse incidents, there was a substantial increase in knowledge and understanding in American society about victimization and the harm of child sexual abuse. Changes were made in statutes related to rape and sexual abuse of children and in reporting requirements of child abuse and neglect, an understanding of the cause of sexual offending advanced, and research related to the treatment of sexual abusers was expanded.

The undersigned was a principal mediator for a similar proceeding concerning the Diocese of Portland several years ago, which was handled a bit differently than this proposed settlement in that most of the money to pay claims was recovered through the settlement of ten insurance coverage cases and each of approximately 150 claims was settled individually. I am also serving as the Future Claims Reviewer for the Diocese of Spokane, Washington, as the Future Claims Representative for the Diocese of Helena, Montana, and am also serving as the Future Claims Representative for Bergen High School, a school affiliated with the Irish Christian Brothers, located in Hackensack, New Jersey. I have also mediated hundreds of child sex abuse claims involving a wide spectrum of defendants.

It has been proposed that the unknown claims trust be funded by a Certificate providing protection for unknown claimants issued by the Catholic Mutual Relief Society of America ("Catholic Mutual"). The Certificate has a proposed Aggregate Limit of $1,800,000 and the coverage period under the Certificate is the earlier of eight years from its effective date or

exhaustion of the amount of the Certificate. The Certificate provides funding within its limits and terms to the Trust for payments to future unknown claimants.

I have reviewed the form of the Certificate and believe it satisfactory, and have also reviewed the 2014 and 2015 financial statements of Catholic Mutual and believe it is easily able to fund the Certificate.

The Debtors estimate that approximately $19,000,000 will be available to holders of Tort Claims upon the effective date of the plan.

**Recommendations:**

The undersigned Unknown Claims Representative makes the following recommendations with regard to establishing the future claims trust, the estimate of the future claims and the adequacy of the Unknown Claims Certificate, and other parameters. The Unknown Claims Representative specifically reserves the right to revise these recommendations and to modify them after full review of any changes to the Disclosure Statement and Plan, and the provisions of any such Unknown Claims Certificate.

1. In several other recent Diocesan or Religious order cases, the debtors have established trust funds for unknown or future claims in the range of five percent to ten percent of the amount of the fund for timely-filed claims. It is fair and appropriate for the Unknown Claims Certificate to be in the amount of ten and one-half percent of the fund available to timely filed claims..

2. The Unknown Claims Representative acknowledges that while there has been no final resolution of a number of matters or confirmation of a Disclosure Statement and Plan, it

is likely that funding will occur in the amount of $19,000,000 for the filed claims, subject to the adjudicative process provided for in the Disclosure Statement and Plan. The Unknown Claims Representative believes it is fair and reasonable to recommend an Unknown Tort Claims Certificate with sufficient availability to handle the amount of claims equivalent to eight to ten percent of presently-filed claims. Experience, including the experiences in these matters, and my awareness of other similar cases, teaches that the settlement value of Unknown Tort Claims may be substantially less than earlier-filed claims; however, giving Unknown Tort Claimants the benefit of the doubt, and assuming the final count of presently-filed claims herein is in the range of between 50 and 58, and given the other factors considered, an amount equal to approximately ten percent of the overall claims fund is ample, fair and appropriate.

3. The Unknown Claims Representative recommends that the Future Claims Certificate provide for payment of up to $1,800,000 based upon the above recommendations, and that the certificate and Unknown Tort Claims be administered in the manner described in the Plan.

4. The Unknown Claims Representative further recommends that the adjudication of said Unknown Tort Clams be handled by the same means and manner, and by the same adjudicator, as is handling the adjudication of timely-filed claims, assuming said adjudicator is willing and able to serve.

5. Based upon the Unknown Claims Representative's evaluation of previous future claims resolutions in other cases, the Future Claims Representative recommends that the Unknown Claims Certificate have a termination date of the earlier of eight years from the effective date of the Plan or exhaustion of the amount of the Certificate.

6. The Unknown Claims Representative specifically reserves the right to modify these recommendations based upon facts and circumstances brought to the attention of the Unknown Claims Representative, principally in the Disclosure Statement and Plan, as well as any information provided by parties in interest in the case, including, but not limited to the Debtor, the Official Unsecured Creditors Committee, the insurance carriers, the U.S. Trustee, or any other party in interest.

Respectfully submitted this 16th day of June, 2016.

_____
MICHAEL R. HOGAN